IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-03029-WJM-CBS

UNITED STATES ex rel,
MARTHA L. BAKER,

Plaintiff-Relator

v.

BANNER HEALTH and BANNER
MEDICAL GROUP COLORADO,

Defendants.

---

**DEFENDANTS' MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND FOR STAY OF PROCEEDINGS**

---

Defendants Banner Health and Banner Medical Group Colorado (hereinafter Defendants), by and through their counsel, Caplan and Earnest LLC, submit this Motion for Reconsideration, or in the alternative, Certification for Interlocutory Appeal, as set forth below.

Pursuant to D.C.COLO.LCivR 7.1, undersigned counsel has conferred with Relator's counsel, who opposes this motion.

This litigation concerns Relator's allegations that Defendants violated the False Claims Act, 31 U.S.C. § 3729-3733 (2012). (ECF No. 38.) On January 15, 2015, Relator filed an Early Motion for Partial Summary Judgment. (ECF No. 51.) Subsequently, the Defendants filed a Response (ECF No. 52) and Relator a Reply (ECF No. 53). On May

28, 2015, this Court issued an Order granting Relator's Early Motion for Partial Summary Judgment finding, in essence, that nonphysician practitioners cannot supervise the delivery of external beam radiation therapy in accordance with 42 C.F.R. § 410.27(a)(1)(iv)(C) (2014) because, under Colorado law, nonphysician practitioners are not authorized users of therapeutic radiation machines and therefore cannot prescribe radiation therapy pursuant to a written directive. (ECF No. 56.)

As the Court notes, "[t]his case turns largely on the meaning of 42 C.F.R. § 410.27," which reads in relevant part as follows:

> (a) Medicare Part B pays for therapeutic hospital or CAH services and supplies furnished incident to a physician's or nonphysician practitioner's service, which are defined as all services and supplies furnished to hospital or CAH outpatients that are not diagnostic services and that aid the physician or nonphysician practitioner in the treatment of the patient, including drugs and biologicals which are not usually self-administered, if –
>
> (1) They are furnished—
>
> * * *
>
> (iv) Under the direct supervision . . . of a physician or a nonphysician practitioner as specified in paragraph (g) of this section, subject to the following requirements:
>
> (A) For services furnished in the hospital or CAH . . . "direct supervision" means that the physician or nonphysician practitioner must be immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician or nonphysician practitioner must be present in the room when the procedure is performed;
>
> * * *
>
> (C) Nonphysician practitioners may provide the

> required supervision of services that they may personally furnish in accordance with State law . . . ;
>
> * * *
>
> (g) For purposes of this section, "nonphysician practitioner"' means a clinical psychologist, licensed clinical social worker, physician assistant, nurse practitioner, clinical nurse specialist, or certified nurse-midwife.

(ECF No. 56 at 4-5).

In granting Relator's Early Motion for Partial Summary Judgment, the Court conflates the concept of "personally furnishing" a daily dose of external beam radiation therapy with the concept of "prescribing" a multi-week course of radiation therapy pursuant to a written directive, leading to an erroneous legal conclusion. (ECF No. 56 at 5-6, 10.) The Defendants respectfully request that the Court reconsider its ruling.

Alternatively, Defendants request that the Court certify the Order for appeal pursuant to 28 U.S.C. § 1292(b). The Court has taken a position that exceeds CMS' own requirements, thereby impacting the ability of Colorado hospitals to provide outpatient radiation oncology treatment to patients.

## I. REQUEST FOR RECONSIDERATION

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. When a party files a motion for reconsideration prior to the entry of judgment, the motion falls within a court's plenary power to revisit and amend an interlocutory order as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980). A motion to reconsider is appropriate where there is: "(1) an intervening change in the controlling law, (2) new

evidence that was previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000). "A motion to reconsider is only appropriate if it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *National Business Brokers, Ltd. v. Jim Williamson Products, Inc.,* 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000).

Defendants recognize that a motion to reconsider is "not a vehicle for a losing party to revisit issues already addressed," *Servants of the Paraclete,* 204 F.3d at 1012, but request that the Court reconsider its finding that "the portion of 42 C.F.R. § 410.27 that states '[non]physician practitioners may provide the required supervision of services that they may personally furnish in accordance with State law' does not currently apply in Colorado because Colorado law does not allow nonphysician practitioners to personally furnish radiation therapy services." (ECF No. 56 at 10.) Defendants respectfully request that the Court reconsider its ruling because the Order uses the terms "personally furnish" and "prescribe" interchangeably, leading to an erroneous legal conclusion because prescribing radiation therapy and delivering a dose of external beam radiation are separate services.

**A. The Court erred by treating the terms "personally furnish" and "prescribe" as interchangeable.**

Raising the argument for the first time in her Reply in Support of her Early Motion for Partial Summary Judgment, Relator incorrectly equates the ability to "personally furnish" with the ability to "prescribe." (ECF No. 53.) These abilities are not interchangeable on their face. Moreover, "personally furnishing" a daily dose of external

beam radiation therapy is a separate and distinct service from “prescribing” a multi-week course of radiation therapy through a written directive.

In her Reply Brief, Relator takes the position that because a nonphysician practitioner cannot “prescribe” a multi-week course of radiation therapy through a written directive, a nonphysician practitioner cannot “personally furnish” a daily session of radiation therapy treatment. (ECF No. 53.) The Court summarizes Relator’s logic as follows:

> Baker’s argument focuses on the statement in subparagraph (a)(1)(iv)(C) that “direct supervision” can come through a nonphysician practitioner if the nonphysician practitioner “may personally furnish [the relevant service] in accordance with State law.” Baker argues that Colorado does not permit nonphysician practitioners to “furnish” radiation therapy services. Baker specifically points to regulations promulgated by the Colorado state board of health stating that “[n]o individual shall be exposed to the useful beam [i.e., therapeutic radiation] except for medical therapy purposes pursuant to a written directive by an authorized user.” 6 Colo. Code Regs. § 1007-1:24.3.8. “Authorized user” means “a physician who has a current active State of Colorado license” who has been certified by certain accrediting organizations in radiology, therapeutic radiology, radiation oncology, or similar disciplines. *Id.*, App’x 2K. Such a physician must also complete 700 hours of specified education and training, as well as three years of supervised clinical practice. *Id*.
>
> Given these regulations, Baker argues that only a physician with the foregoing credentials may “personally furnish” radiation therapy “in accordance with state law.” 42 C.F.R. § 410.27(a)(1)(iv)(C). Baker’s interpretation is straightforward and appears correct on its face.

(ECF No. 56 at 5-6.)

The fatal error in Relator’s argument is that the “foregoing credentials” referenced above only dictate who may qualify as an authorized user of a therapeutic radiation machine for the purposes of *prescribing* a course of radiation therapy pursuant to a written directive; the credentials do not dictate who may *personally furnish* a daily dose

of external beam radiation therapy. Defendants agree that Colorado regulations are clear that only an authorized user can "expose [an individual] to the useful beam [i.e., therapeutic radiation] . . . pursuant to a written directive." 6 Colo. Code Regs. § 1007-1:24.3. But the issue is not who may order exposure to a multi-week course of radiation therapy pursuant to a written directive; the issue is who may *personally furnish* a daily dose of external beam radiation therapy. Nevertheless, the Court treats these two separate and distinct services interchangeably throughout the Order.

First, the Court states that "Banner claims that Colorado law actually does allow an advanced practice nurse to *prescribe* radiation therapy. (ECF No. 52 at 15-21.)" (ECF No. 56 at 6) (emphasis added). However, Defendants neither claimed nor intended to imply that a nonphysician practitioner can *prescribe* radiation therapy. Rather, Defendants claimed that a nonphysician practitioner can *personally furnish* the service of a dose of external beam radiation therapy. Specifically, Defendants claimed that the rules promulgated pursuant to C.R.S. § 25-11-104 regarding the regulation of radiation-emitting machines cannot prohibit nonphysician practitioners from *personally furnishing* radiation therapy.[1] (ECF No. 52 at 16-18.) Thus, while Colorado statutes and regulations clearly dictate the qualifications of an authorized user for the purposes of determining who may create a written directive (i.e., *prescribe* radiation therapy),

---

[1] The rules adopted by C.R.S. § 25-11-104(1)(a) are those relied upon by the Relator, and Defendants intended to articulate this when they stated in their response brief: "relying on statutory authority, the state board of health has promulgated regulations related to radiation control." (ECF No. 52 at 17.) That sentence should have read: relying on "this" statutory authority, the state board of health has promulgated regulations related to radiation control."

Colorado statutes and regulations are silent as to who can *personally furnish* or apply the delivery of a dose of external beam radiation therapy. Moreover, the Centers for Medicare & Medicaid Services ("CMS") has acknowledged that for services such as radiation therapy, technicians operate the machinery, and that operating the machinery is not the service that the supervisor must be able to "personally perform." Centers for Medicare & Medicaid Services, Dep't of Health & Human Services, Medicare Benefit Policy (CMS Pub. 100-02), Transmittal 169, Ch. 6, 20.5.2 (Mar. 1, 2013).

Next, after referencing C.R.S. § 25-11-104, the Court states that "Banner takes this to mean that, by statute, a practitioner of the healing arts (including an advanced practice nurse) cannot be prohibited from *furnishing* radiation therapy . . . yet "[i]t is not clear that this statute governs qualifications for *prescribing* radiation therapy." (ECF No. 56 at 7) (emphasis added). Again, the Court conflates the two services. The Court's subsequent finding that "Banner's argument implicitly reduces to an assertion that the Colorado regulations on which Baker relies conflict with Colorado statute" stems directly from the substitution of "prescribe" for "personally furnish." *Id.*

Further, the Court states that "Banner points out that a radiation *prescription* is meticulously developed through cooperation between a radiation oncologist, a dosimetrist, a medical physicist, and a radiation therapist . . . By raising these facts Banner appears to be saying that it is unnecessary for radiation therapy sessions to be supervised by the type of physician that may *personally furnish* radiation services under Colorado law . . . ." (ECF No. 56 at 8-9) (emphasis added). Again, the Court collapses the concept of "personally furnishing" a daily dose of external beam radiation therapy

with the concept of “prescribing” a multi-week course of radiation therapy through a written directive.

Based on the foregoing, the Court’s Order imposes supervision requirements that are neither explicit nor implicit in Federal or State statutes or regulations. Neither CMS rules nor Colorado law prohibit a nonphysician practitioner from furnishing a daily dose of external beam radiation therapy.

**B. The evidence on the record creates an issue of disputed fact as to whether a nonphysician practitioner could redirect and furnish assistance and direction through the procedure should developments require a change in the course of treatment in order to ensure a therapeutic outcome for the patient for that therapy session.**

The Court found that CMS has already rejected Defendants’ argument that a nonphysician practitioner can directly supervise the delivery of a dose or fraction of external beam radiation therapy because CMS noted in a comment:

> We do not believe it is sufficient or consistent with our rules for direct supervision for the individual on site to be capable of only emergency management. The supervisory practitioner or nonphysician practitioner who is physically present should have the training and knowledge to clinically redirect the service or provide additional orders.

75 Fed. Reg. 71800, 72012 (Nov. 24, 2010). However, there is no evidence on the record that treating a patient for dehydration, pain control, or helping with a shortness of breath is considered an emergency. The nonphysician practitioners that Defendants use to supervise the delivery of external beam radiation are qualified by licensure and scope of practice to clinically redirect therapy sessions (i.e., deciding not to treat) and providing additional orders (such as ordering an I.V. or medication to address side

effects) with or without consulting with a radiation oncologist. At a minimum, this is a disputed issue of fact that should be resolved with either a full record or by a finder of fact.[2]

## II. IN THE ALTERNATIVE, DEFENDANTS REQUEST CERTIFICATION NECESSARY TO PERMIT AN APPEAL UNDER 28 U.S.C. § 1292(b).

Under 28 U.S.C. § 1292(b), a district court may certify an interlocutory order for appeal when three criteria are met: (1) the order involves a controlling question of law as to which; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *In re Grand Jury Proceedings June 1991*, 767 F. Supp. 222, 223 (D. Colo. 1991)*.* Interlocutory appellate review pursuant to 28 U.S.C. § 1292(b) is discretionary. *Swint v. Chambers Cnty. Comm'n,* 514 U.S. 35, 47 (1995). Only exceptional circumstances warrant interlocutory appeals under § 1292(b). *See, e.g.*, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978); *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 84 (1981) (interlocutory appeals are generally prohibited unless litigants can show that an order will have serious consequences that can only be prevented by immediate appeal rather than appeal after judgment).

---

[2] As the Court notes in the Order, (ECF No. 56 at 2), "[i]n analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987)."

**A. The issue for appeal involves a "controlling question of law."**

Certification under 28 U.S.C. § 1292(b) requires the order proposed for certification involve a "question of law" that is "controlling." A question of law is a "pure" question that the reviewing court could decide quickly and cleanly without having to study the record. *Pack v. Investools, Inc.,* 2011 WL 2161098, at *1 (D. Utah June 1, 2011). A question of law is controlling if interlocutory reversal would terminate the action or substantially affect the course of litigation. *Id.*; *Sokaogon Gaming Enter. Corp. v. Tushie–Montgomery Assocs., Inc.,* 86 F.3d 656, 659 (7th Cir. 1996) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so.").

In its Order, this Court recognizes that the question presented by Relator is a pure question of law. (ECF No. 56 at 3.) In addition, the Court notes that if Baker's interpretation of whether a nonphysician practitioner can personally furnish radiation therapy in accordance with state law as is required by 42 C.F.R. § 410.27(a)(1)(iv)(C) "... is correct, it would significantly clarify Banner's potential liability. If Banner is correct, it would apparently eviscerate Baker's case." (ECF No.56 at 4.) Therefore, should the Tenth Circuit find in favor of Defendants, it could terminate the action and would certainly affect the course of litigation.

The importance of this issue will have an impact on the ability of all Colorado hospitals to provide outpatient radiation oncology to patients. It will especially impact the ability to deliver radiation therapy in rural areas, thereby limiting patient access to care. It may also have an impact in other states, depending on the qualifications of those who

can prescribe radiation therapy. As the State of Colorado itself noted, "Given the desperate need for qualified providers, Colorado cannot afford to arbitrarily limit the scope of practice of its APNs." *Office of Policy, Research and Regulatory Reform, Department of Regulatory Agencies, 2008 Sunset Review: Colorado Board of Nursing 50 (2008)*.[3]

Therefore, the magnitude of this issue as well as the ambiguous and inconsistent commentary provided by CMS regarding the use of nonphysician practitioners dictates that the interests of justice weigh in favor of certifying the May 28, 2015 Order (ECF No. 56) for interlocutory review at this time.

**B. There is a "substantial ground for difference of opinion."**

Section 1292(b) requires that there be a substantial ground for a difference of opinion regarding the controlling question of law. *Pack v. Investools, Inc*., 2011 WL 2161098, at *2. The level of uncertainty necessary "to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case. If proceedings that threaten to endure for several years depend on an initial question of jurisdiction . . . or the like, certification may be justified at a relatively low threshold of doubt." *16 Charles Alan Wright, et al.*, Federal Practice & Procedure § 3930 (2d ed. 2012).

Here, there is substantial ground for difference of opinion. As a matter of Colorado law, advanced practice nurses can care for patients who are undergoing a session of external beam radiation therapy. *See* 6 Colo. Code Regs. § 1007-1:24.3.2.1 (requiring

---

[3] The *2008 Sunset Review: Colorado Board of Nursing* led to legislative changes to the Nurse Practice Act.

only general supervision by an authorized user). Additionally, as a matter of Federal law, a nonphysician practitioner who is authorized by State law can supervise the delivery of external beam radiation therapy. 42 C.F.R. § 410.27. Nevertheless, Relator argues that when Colorado law and Federal law are combined, a nonphysician practitioner cannot act as the direct supervisor of the delivery of external beam radiation therapy because the nonphysician practitioner cannot *prescribe* radiation under Colorado law.

Prescribing radiation therapy and delivering a dose of external beam radiation are separate services. Therefore, a nonphysician practitioner need not be able to prescribe radiation therapy in order to furnish patient care during the delivery of external beam radiation therapy. This forms a substantial ground for difference of opinion.

**C. An immediate appeal will "materially advance" this litigation.**

Certification for an interlocutory appeal is only proper if immediate appeal from the order may materially advance the ultimate termination of the litigation. This requirement is "closely tied to the requirement that the order involve a controlling question of law." Wright, *supra*, at § 3930.

Because the Court has ruled on a controlling issue of law, and for the reasons already set forth above, immediate appeal may materially advance the ultimate termination of litigation.

**D. It is appropriate to stay the proceedings.**

The Court has discretion to determine whether to stay proceedings pending disposition of an interlocutory appeal. *See United States ex rel. Drake v. NSI, Inc.*, 736 F. Supp. 2d 489, 503 (D. Conn. 2010) ("When issuing a certificate of appealability, the

court also has the discretion to stay the proceedings . . . ."). Here, an interlocutory appeal is warranted in part because it may obviate the need for lengthy and costly phases of discovery and trial, and it is therefore appropriate to stay the proceedings in this Court pending resolution of any appeal from the May 28, 2015 Order (ECF No. 56).

WHEREFORE, respectfully requests that the Court grant Defendants' Motion for Reconsideration.

Respectfully submitted this 12th day of June, 2015.

CAPLAN AND EARNEST LLC

*s/ Linda L. Siderius*

Linda L. Siderius, #12931
Meghan E. Pound, #33915
Gregory S. Lindquist, #42780
1800 Broadway, Suite 200
Boulder, CO 80302
Phone: 303-443-8010
Facsimile: 303-440-3967
Email: lsiderius@celaw.com
mpound@celaw.com
glindquist@celaw.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202

G. Mark Simpson, Esq.
Simpson Law Firm, LLC
110 Habersham Drive, suite 108
Fayetteville, GA 30214

Jamie M. Bennett, Esq.
ASHCRAFT & GEREL, LLP
4301 Garden City Drive, Suite 301
Landover, MD 20785

Nathan M. Peak, Esq.
ASHCRAFT & GEREL, LLP
4301 Garden City Drive, Suite 301
Landover, MD 20785

Andrew M. Stone, Esq.
Stone Law Firm, LLC
437 Grant Street
Suite 1806
Pittsburgh, PA 15219

*s/ Rhonda L. Bender*
Rhonda L. Bender, Paralegal