UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES ex rel. MARTHA L. BAKER,<br><br>Plaintiff-Relator,<br><br>v.<br><br>BANNER HEALTH and BANNER MEDICAL GROUP COLORADO,<br><br>Defendants. | Civil Action No. 12-CV-3029-WJM-CBS |

**RELATOR'S RESPONSE IN OPPOSITION TO MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS**

Pursuant to this Court's June 12, 2015 Order, Plaintiff-Relator Martha L. Baker ("Relator") hereby files this response to Defendants' motion asking that the Court certify its summary judgment ruling for interlocutory appeal and stay proceedings. For the reasons discussed below, the motion should be denied.

**1. Legal standards.**

28 U.S.C. § 1292(b) states as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

In considering requests for interlocutory appeal, courts should be mindful that "there is a long-established policy preference in the federal courts disfavoring piecemeal appeals." *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1382 (10th Cir. 2009). Interlocutory appeal should be

"'limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action.'" *Utah by & Through Department of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994), *quoting* S. Rep. 2434, 85th Cong., 2d Sess. 1 (1958), reprinted in 1958 U.S.C.C.A.N. 5255, 5262. *See also Horton v. Travelers Indem. Co. of Am.*, 2013 U.S. Dist. LEXIS 157006, *7 (D. Colo. Nov. 1, 2013) ("Section 1292(b) is meant to be used sparingly and interlocutory appeals under this section are rare.").

It is widely recognized that an interlocutory appeal is not appropriate where a party claims that material issues of fact exist that preclude summary judgment; rather, it is intended to apply to cases where the Court of Appeals can rule on a pure question of law. *See Horton, supra* at *5-6 (denying interlocutory appeal because "[t]hese are not pure questions of law" and appellate court would have to "make an extensive review of the record"); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258-59 (11th Cir. 2004); *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991); *Ahrenholz v. Board of Trustees of Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2000).

**2. <u>There is not substantial ground for difference of opinion</u>.**

Nowhere in the motion do Defendants provide any reason to believe that there is a substantial ground for difference of opinion as to the Court's ruling. Although Defendants try to obfuscate the issues, the analysis is really quite simple and straightforward, as the Court recognized in its prior opinion.[1] Federal law states that "[n]onphysician practitioners may

---

[1] *See* Opinion, Doc. 56, p. 6 ("Given these regulations, [Relator] argues that only a physician with the foregoing credentials may 'personally furnish' radiation therapy 'in accordance with

provide the required supervision of services that they may **personally furnish** in accordance with State law and all additional requirements." 42 C.F.R. § 410.27(a)(1)(iv)(C) (emphasis added). Thus, to be payable by Medicare, nonphysician practitioners cannot "supervise" radiation therapy services unless they can "personally furnish" such services in accordance with state law.

In their summary judgment response, Defendants did not contend that their advanced practice nurses could "personally furnish" radiation therapy services under Colorado law, but simply that that they could "supervise" the furnishing of such services by others.[2] However, as federal law makes clear, supervising a service is not the same as personally furnishing such service. *See* 42 C.F.R. 410.75(e)(1) ("Supervision of other nonphysician staff by a nurse practitioner does not constitute personal performance of a professional service by a nurse practitioner.").[3] Thus, Defendants essentially sought to rewrite the language of 42 C.F.R. § 410.27(a)(1)(iv)(C) to state that "[n]onphysician practitioners may provide the required supervision of services that they may ~~**personally furnish**~~ ***supervise*** in accordance with State law and all additional requirements."

---

State law.' 42 C.F.R. § 410.27(a)(1)(iv)(C). [Relator's] interpretation is straightforward and appears correct on its face.").

[2] *See* Doc. 52-1, Ceilley Affidavit, ¶ 9 ("an advanced practice nurse would directly supervise the delivery of daily fractions of external beam radiation therapy").

[3] Indeed, CMS has been consistent in explaining that a nonphysician practitioner can only "supervise" those services that she can personally "perform" herself. *See* 74 Fed. Reg. 60316, 60587 ("we are finalizing our proposal to allow … nonphysician practitioners to directly supervise services **that they may perform themselves** under their State license and scope of practice and hospital-granted or CAH-granted privileges"); 74 Fed. Reg. 35232, 35368 (nonphysician practitioner must have "the ability to **perform** the services being **supervised**").

In its summary judgment opinion, the Court properly noted that Defendants' proposed interpretation of the regulations was "nonsense." *See* Order, Doc. 56, p. 8. As the Court noted:

> But this effectively rewrites the regulation to address "the required supervision of supervision that nonphysician practitioners may personally furnish in accordance with State law," which is nonsense. Thus, whether advanced practice nurses may supervise radiation therapy sessions does not inform whether they may "personally furnish" radiation therapy under § 410.27.

*Id.* Because Defendants' nonsensical interpretation would rewrite the clear language of the regulations, and would be contrary to consistent and repeated guidance from CMS as to how the regulations should be interpreted, there is no basis to say that there are "substantial" grounds for a difference of opinion. *Grimes v. Cirrus Indus., Inc.*, 2010 U.S. Dist. LEXIS 60889, *8 (W.D. Okla. June 18, 2010) ("While it is possible that other courts could disagree, TCM has not presented a persuasive argument that there is a *substantial* ground for disagreement.") (emphasis in original).

In their motion for reconsideration, Defendants try to draw a distinction between "prescribing" external beam radiation therapy and "personally furnishing" such therapy.[4] However, this argument gets Defendants nowhere, because Banner's advanced practice nurses cannot do **either** of these things. As Relator showed in the summary judgment motion, there is literally **nothing** about the performance of external beam radiation therapy that an advanced practice nurse may be said to "personally furnish." She cannot issue an order that a patient receive external beam radiation therapy, because she is not an authorized user. She cannot

---

[4] This distinction is disingenuous, because CMS has made it clear that one aspect of being able to "perform" a service is the ability to "redirect the procedure," to "change a procedure or the course of treatment," to "change the plan of care should the need arise," and to "provide additional orders." 74 Fed. Reg. 60316, 60584; 75 Fed. Reg. 71800, 72012.

formulate or approve a radiation therapy treatment plan, which dictates the manner in which the radiation machine delivers radiation to the patient, because she is not an authorized user. She cannot make changes to a radiation treatment plan, and thus change how the radiation machine delivers radiation to the patient, because she is not an authorized user. And she cannot actually deliver the radiation to the patient, because she cannot operate the radiation treatment machine (which can only be operated by an authorized user or a certified radiation therapist).[5] If there is **any** part of external beam radiation therapy that can be said to be "personally furnished" by a nonphysician practitioner such as those employed by Banner, Defendants have not identified it.[6]

As the Court noted in its opinion, CMS has **already** considered and rejected Banner's argument that CMS should "consider the direct supervision requirement to be met for diagnostic

---

[5] *See* Exhibit 1 (answer to Interrogatory No. 6) (identifying radiation therapists, but not advanced practice nurses, as qualified to operate radiation therapy machine).

[6] In a desperate attempt to argue that nonphysician practitioners can "personally furnish" external beam radiation therapy services (an argument they did not make previously), Defendants are reduced to asserting that (i) they can decide not to treat the patient at all (presumably by canceling the day's treatment), and (ii) they can treat the patient for side effects resulting from the radiation, such as dehydration, pain, or shortness of breath. Doc. 60, p. 8-9. With respect to the first point, it is absurd to suggest that a person "personally furnishes" external beam radiation therapy by **not** providing such therapy. (If that was true, then a hospital administrator or medical physicist who decided to close the facility for the day, perhaps because of maintenance issues with the machines, could be said to personally furnish radiation therapy services). With respect to the second point, Defendants may raise a semantic quibble about whether treating such side effects constitutes an "emergency," but it is abundantly clear what treating such side effects is **not** – it is not the furnishing of external beam radiation therapy. And indeed, Defendants themselves acknowledge as much in their summary judgment response. Doc. 52, p. 21 ("In this sense, he or she does not furnish the test. Rather, a physician or non-physician practitioner is present to clinically manage the needs of the patient should they arise"). Although a nurse practitioner may be able to give orders for things **other** than external beam radiation treatment, that says nothing about her ability to "personally furnish" (and thus be qualified to supervise) the radiation treatment itself. As Relator has shown, there is **no** part of external beam radiation treatment – order, planning, delivery, or overall control and direction – that a non-authorized user nonphysician practitioner is authorized to "personally furnish."

or therapeutic radiation oncology services if a non-specialist practitioner who can handle an emergency provides the direct supervision and also has access by phone or other telemedicine link to a specialist who is able to change the plan of care should the need arise." *See* Order, Doc. 56, p. 9, discussing 75 Fed. Reg. 71800, 72012. As the Court noted,

> Banner does not argue that CMS did not have authority to interpret its regulation in such a manner, or that its interpretation is unreasonable, or that the interpretation deserves no deference. Accordingly, although Banner's explanation of the practical realities of radiation therapy raises an interesting question about why CMS requires supervision by a highly trained specialist, the fact remains that CMS specifically considered and rejected a lesser requirement.

Order, Doc. 56, p. 9-10. Defendants provide no rebuttal to this self-evident point, and thus present no "substantial" grounds for difference of opinion.

Like all parties faced with an adverse ruling, it is unsurprising that Defendants take the position that the ruling is incorrect. However, as discussed above and in Relator's summary judgment pleadings, the analysis is clear and straightforward, and it cannot be said that there are substantial grounds for difference of opinion such as would justify an interlocutory appeal.

**3. <u>Interlocutory appeal would not materially advance the ultimate termination of the litigation</u>.**

An interlocutory appeal of the Court's ruling would also not materially advance the ultimate termination of this litigation, which the Tenth Circuit has recognized is the primary purpose of § 1292(b). *See Kennecott Corp.*, *supra*, 14 F.3d at 1495 (interlocutory appeal should be "'limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action.'"). To begin with, the claims for supervision are not the only claims in this case. Relator has also alleged, among other things, that (i) Defendants submitted claims for weekly treatment

management (CPT code 77427) for which there is no record of the required face-to-face meeting with the physician; (ii) Defendants submitted claims for special treatment procedures (CPT 77470) that were not supported by the medical record; and (iii) Defendants upcoded simulations (CPT 77280-77295) to a higher level of complexity. *See* First Amended Complaint, Doc. 38, ¶¶ 38-64. Thus, regardless of the ruling on the supervision issue, there would still need to be a trial on the other issues.

Moreover, an appeal of the Court's ruling would not even materially advance the ultimate resolution of the supervision claims. Even if the 10th Circuit somehow reversed the grant of partial summary judgment in favor of Relator, that would not result in a victory for Defendants. Rather, the dispute would simply shift from a question of law (i.e., whether a non-authorized user advanced practice nurse in Colorado can **ever** supervise radiation therapy services billed to Medicare) to a question of fact (i.e., whether the **particular** advanced practice nurses used by Banner to supervise radiation therapy services possessed the skill and training to do so).[7]

CMS has made it clear that not even all physicians are qualified to supervise all procedures. *See* 75 Fed. Reg. 71800, 72007 ("we have been clear that we require the supervisory practitioner to be knowledgeable enough about the service to be able to furnish assistance and direction, and not merely manage an emergency. Therefore, not all practitioners are qualified to supervise services of any specialty."). Even if it is theoretically possible for a non-authorized user nurse practitioner to supervise radiation therapy services, therefore, it still must be shown that the **particular** individuals employed by Banner were competent to do so. *See* 74 Fed. Reg. 60316, 60584 ("It would be unreasonable to think that a physician or nonphysician practitioner

[7] Indeed, Relator believes that she would be entitled to summary judgment on this factual question as well.

could competently assist and direct a procedure for which they do not have sufficient knowledge and skills to perform or redirect the procedure or service.").

On that issue, there will be substantial evidence that the advanced practice nurses employed by Banner did not possess the knowledge and skills to furnish radiation therapy, and thus were not competent to supervise the furnishing of such therapy by others. Indeed, one of them admitted as much in an April 21, 2011 email to her superiors, stating that "I cannot take over giving a radiation treatment because I am not trained or certified." *See* Exhibit 2. Notably, this ability to "take over" a procedure is exactly what CMS has made clear is required in order to supervise any type of service, including radiation therapy. *See* 74 Fed. Reg. 60316, 60584 ("the supervising physician or nonphysician practitioner must be prepared to **step in and perform the service**, not just to respond to an emergency. This includes the **ability to take over performance of a procedure** and, as appropriate to both the supervisory physician or nonphysician practitioner and the patient, to change a procedure or the course of treatment being provided to a particular patient."). Defendants also admit that none of their advanced practice nurses have received any certifications in the fields of radiology, therapeutic radiology, radiation oncology, or radiation therapy. *See* Exhibit 1 (response to Interrogatory No. 7, noting that "[t]here are no certifications for (ii) Helene Christner, (iii) Sheryl Ehrman, (iv) Pamola Gale, that are responsive to this interrogatory"). Moreover, Defendants admit that their advanced practice nurses were not qualified to operate a radiation therapy machine. *See id.* (response to Interrogatory No. 6). And Banner's own consultant, Revenue Cycle, noted in its April 2011 report that:

> It is understood the nurse practitioners are trained to handle emergencies, radiation side effects and general medical needs, but it is not with their training or scope of work to prescribe, adjust or administer radiation therapy services.

*See* Exhibit 3. Thus, an interlocutory appeal of the Court's ruling would not resolve the question of whether the particular nurse practitioners employed by Banner had the skills and training to furnish radiation therapy services, and would therefore not materially advance the ultimate termination of this litigation. To the contrary, it would simply ensure that the resulting trial is focused on factual issues (and thus longer), and would not take place until after the resolution of lengthy appellate proceedings. Far from advancing the termination of the litigation, therefore, a piecemeal appeal would simply ensure that the litigation continues even longer. *See Horton*, *supra*, 2013 U.S. Dist. LEXIS 157006 at *6-7 ("An appeal at this juncture will only serve to delay a matter that has been pending for over three years."); *Grimes*, *supra*, 2010 U.S. Dist. LEXIS 60889 at *11 (noting that appeal would, at most, result in dismissal of a single defendant, and would not result in any time savings at trial, and that "[c]onsequently, an immediate appeal in this case, even if successful, will do nothing to advance the ultimate termination of the action.").

## CONCLUSION

For the reasons discussed above, the motion for a certificate of interlocutory review and to stay proceedings should be denied.

This 25th day of June, 2015.

Respectfully submitted,

/s/ G. Mark Simpson
G. Mark Simpson
Georgia Bar No. 647725
Simpson Law Firm, LLC

110 Habersham Drive, Suite 108
Fayetteville, GA 30214
(770) 371-5008
(678) 302-8721 (fax)
mark@marksimpsonlaw.com

/s/ Jamie M. Bennett
Jamie M. Bennett
Ashcraft & Gerel
4301 Garden City Drive
Landover, Md. 20785
(301) 459-8400
(301) 459-1364
jbennett@ashcraftlaw.com

/s/ Andrew M. Stone
Andrew M. Stone
(Pa. #35176)
Stone Law Firm, LLC
437 Grant Street Suite 1806
Pittsburgh, PA 15219
Phone: (412) 391-2005
Fax: (412) 391 -0853
astone@stone-law-firm.com
Attorneys for Plaintiff-Relator

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

This 25th day of June, 2015.

/s/ G. Mark Simpson