**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Health Care Financing Administration**

**42 CFR Parts 409, 410, 411, 412, 413, 419, 424, 489, 498, and 1003**

**[HCFA–1005–FC]**

**RIN 0938–AI56**

# Office of Inspector General; Medicare Program; Prospective Payment System for Hospital Outpatient Services

**AGENCY:** Health Care Financing Administration (HCFA), HHS, and Office of Inspector General (OIG), HHS.

**ACTION:** Final rule with comment period.

**SUMMARY:** This final rule with comment period implements a prospective payment system for hospital outpatient services furnished to Medicare beneficiaries, as set forth in section 1833(t) of the Social Security Act. It also establishes requirements for provider departments and provider-based entities, and it implements section 9343(c) of the Omnibus Budget Reconciliation Act of 1986, which prohibits Medicare payment for nonphysician services furnished to a hospital outpatient by a provider or supplier other than a hospital, unless the services are furnished under an arrangement with the hospital. In addition, this rule establishes in regulations the extension of reductions in payment for costs of hospital outpatient services required by section 4522 of the Balanced Budget Act of 1997, as amended by section 201(k) of the Balanced Budget Refinement Act of 1999.

**DATES:** *Effective date:* July 1, 2000, except that the changes to § 412.24(d)(6), new § 413.65, and the changes to § 489.24(h), § 498.2, and § 498.3 are effective October 10, 2000.

*Applicability date:* For Medicare services furnished by all hospitals, including hospitals excluded from the inpatient prospective payment system, and by community mental health centers, the applicability date for implementation of the hospital outpatient prospective payment system is July 1, 2000.

*Comment date:* Comments on the provisions of this rule resulting from the Balanced Budget Refinement Act of 1999 will be considered if we receive them at the appropriate address, as provided below, no later than 5 p.m. on June 6, 2000. We will not consider comments concerning provisions that remain unchanged from the September 8, 1998 proposed rule or that were revised based on public comment.

See section VIII for a more detailed discussion of the provisions subject to comment.

**ADDRESSES:** Mail written comments (one original and three copies) to the following address ONLY: Health Care Financing Administration, Department of Health and Human Services, Attention: HCFA–1005–FC, P.O. Box 8013, Baltimore, MD 21244–8013.

If you prefer, you may deliver, by courier, your written comments (one original and three copies) to one of the following addresses:

Room 443–G, Hubert H. Humphrey Building, 200 Independence Avenue, SW., Washington, DC 20201, or

C5–14–03, Central Building, 7500 Security Boulevard, Baltimore, MD 21244–1850.

Comments mailed to those addresses may be delayed and could be considered late.

Because of staffing and resource limitations, we cannot accept comments by facsimile (FAX) transmission. In commenting, please refer to file code HCFA–1005–FC.

Comments received timely will be available for public inspection as they are received, generally beginning approximately 3 weeks after publication of a document, in Room 443–G of the Department's offices at 200 Independence Avenue, SW., Washington, DC, on Monday through Friday of each week from 8:30 a.m. to 5 p.m. (Phone (202) 690–7890).

For comments that relate to information collection requirements, mail a copy of comments to:

Health Care Financing Administration, Office of Information Services, Security and Standards Group, Division of HCFA Enterprise Standards, Room N2–14–26, 7500 Security Boulevard, Baltimore, MD 21244–1850, Attn: John Burke, HCFA–1005–FC; and

Lauren Oliven, HCFA Desk Officer, Office of Information and Regulatory Affairs, Room 3001, New Executive Office Building, Washington, DC 20503.

*Copies:* To order copies of the **Federal Register** containing this document, send your request to: New Orders, Superintendent of Documents, P.O. Box 371954, Pittsburgh, PA 15250–7954. Specify the date of the issue requested and enclose a check or money order payable to the Superintendent of Documents, or enclose your Visa or Master Card number and expiration date. Credit card orders can also be placed by calling the order desk at (202) 512–1800 or by faxing to (202) 512–2250. The cost for each copy is $8. As an alternative, you can view and photocopy the **Federal Register** document at most libraries designated as Federal Depository Libraries and at many other public and academic libraries throughout the country that receive the **Federal Register**.

**FOR FURTHER INFORMATION CONTACT:**

Janet Wellham, (410) 786–4510 or Chuck Braver, (410) 786–6719 (for general information)

Joel Schaer (OIG), (202) 619–0089 (for information concerning civil money penalties)

Kitty Ahern, (410) 786–4515 (for information related to the classification of services into ambulatory payment classification (APC) groups)

George Morey (410) 786–4653 (for information related to the determination of provider-based status)

Janet Samen (410) 786–9161 (for information on the application of APCs to community mental health centers)

**SUPPLEMENTARY INFORMATION:** To assist readers in referencing sections contained in this document, we are providing the following table of contents. Within each section, we summarize pertinent material from our proposed rule of September 8, 1998 (63 FR 47552) followed by public comments and our responses.

## Table of Contents

I. Background
A. General and Legislative History
B. Summary of Provisions of the Balanced Budget Act of 1997 (the BBA 1997)
1. Prospective Payment System (PPS)
2. Elimination of Formula-Driven Overpayment
3. Extension of Cost Reductions
C. The September 8, 1998 Proposed Rule
D. Overview of Public Comments
E. Summary of Relevant Provisions in the Balanced Budget Refinement Act of 1999 (the BBRA 1999)
1. Outlier Adjustment
2. Transitional Pass-Through for Additional Costs of Innovative Medical Devices, Drugs, and Biologicals
3. Budget Neutrality Applied to New Adjustments
4. Limitation on Judicial Review
5. Inclusion in the Hospital Outpatient PPS of Certain Implantable Items
6. Payment Weights Based on Mean Hospital Costs
7. Limitation on Variation of Costs of Services Classified Within a Group
8. Annual Review of the Hospital Outpatient PPS Components
9. Coinsurance Not Affected by Pass-Throughs

EXHIBIT B

drugs, and biologicals, the insignificant cost determination for these items, the duration of the additional payment or portion of the PPS payment amount associated with particular devices, drugs, or biologicals, and any pro rata reduction.

5. Inclusion in the Hospital Outpatient PPS of Certain Implantable Items

Section 201(e) of the BBRA 1999 amends section 1833(t)(1)(B) of the Act to include as covered outpatient services implantable prosthetics and DME and diagnostic x-ray, laboratory, and other tests associated with those implantable items.

6. Payment Weights Based on Mean Hospital Costs

Section 201(f) of the BBRA 1999 amends section 1833(t)(2)(C) of the Act, which specifies data requirements for establishing relative payment weights, to allow the Secretary the discretion to base the weights on either the median or mean hospital costs determined by data from the most recent available cost reports.

7. Limitation on Variation of Costs of Services Classified Within a Group

Section 201(g) of the BBRA 1999 amends section 1833(t)(2) of the Act to limit the variation of costs of services within each payment classification group by providing that the highest median (or mean cost, if elected by the Secretary) for an item or service within the group cannot be more than 2 times greater than the lowest median (or mean) cost for an item or service within the group. The provision allows the Secretary to make exceptions in unusual cases, such as for low volume items and services.

8. Annual Review of the Hospital Outpatient PPS Components

Section 201(h) of the BBRA 1999 amends redesignated section 1833(t)(8) of the Act to require at least annual review of the groups, relative payment weights, and the wage and other adjustments made by the Secretary to take into account changes in medical practice, the addition of new services, new cost data, and other relevant information and factors. That section of the Act is further amended to require the Secretary to consult with an expert outside advisory panel composed of an appropriate selection of provider representatives who will review the clinical integrity of the groups and weights and advise the Secretary accordingly. The panel may use data other than those collected or developed by the Department of HHS for the review and advisory purposes.

9. Coinsurance Not Affected by Pass-Throughs

Section 201(i) of the BBRA 1999 amends redesignated section 1833(t)(7) of the Act to provide that the beneficiary coinsurance amount will be calculated as if the outlier and transitional pass-throughs had not occurred; that is, there will be no coinsurance collected from beneficiaries for the additional payments made to hospitals by Medicare for these adjustments.

10. Extension of Cost Reductions

Section 201(k) of the BBRA 1999 amends section 1861(v)(1)(S)(ii) of the Act to extend until the first date that the hospital outpatient PPS is implemented, the 5.8 and 10 percent reductions for hospital operating and capital costs, respectively.

11. Clarification of Congressional Intent Regarding Base Amounts Used in Determining the Hospital Outpatient PPS

Section 201(l) of the BBRA 1999 provides that, "With respect to determining the amount of copayments described in paragraph (3)(A)(ii) of section 1833(t) of the Social Security Act, as added by section 4523(a) of the BBA, Congress finds that such amount should be determined without regard to such section, in a budget neutral manner with respect to aggregate payments to hospitals, and that the Secretary of Health and Human Services has the authority to determine such amount without regard to such section." Pursuant to this provision, we are calculating the aggregate PPS payment to hospitals in a budget neutral manner.

12. Transitional Corridors for Application of Outpatient PPS

Section 202 of the BBRA 1999 amends section 1833(t) of the Act by redesignating paragraphs (7) through (11) as paragraphs (8) through (12), and adding a new paragraph (7), which provides for a transitional adjustment to limit payment reductions under the hospital outpatient PPS. More specifically, for the years 2000 through 2003, a provider, including a CMHC, will receive an adjustment if its payment-to-cost ratio for outpatient services furnished during the year is less than a set percentage of its payment-to-cost ratio for those services in its cost reporting period ending in 1996 (the base year). Two categories of hospitals, rural hospitals with 100 or fewer beds and cancer hospitals, will be held harmless under this provision. Small rural hospitals, for services furnished before January 1, 2004, will be maintained at the same payment-to-cost ratio as their base year cost report if their PPS payment-to-cost ratio is less. The hold-harmless provision applies permanently to cancer centers. Section 202 also requires the Secretary to make interim payments to affected hospitals subject to retrospective adjustments and requires that the provisions of this section do not affect beneficiary coinsurance. Finally, this provision is not subject to budget neutrality.

13. Limitation on Coinsurance for a Procedure

Section 204 of the BBRA 1999 amends redesignated section 1833(t)(8) of the Act to provide that the coinsurance amount for a procedure performed in a year cannot exceed the hospital inpatient deductible for that year.

14. Reclassification of Certain Hospitals

Section 401 of the BBRA 1999 adds section 1886(d)(8)(E) to the Act to permit reclassification of certain urban hospitals as rural hospitals. Section 401 adds section 1833(t)(13) to the Act to provide that a hospital being treated as a rural hospital under section 1886(d)(8)(E) also be treated as a rural hospital under the hospital outpatient PPS.

## II. Prohibition Against Unbundling of Hospital Outpatient Services

### *A. Background*

Sections 9343(c)(1) and (c)(2) of OBRA 1986 amended sections 1862(a)(14) and 1866(a)(1)(H) of the Act, respectively. As revised, section 1862(a)(14) of the Act prohibits payment for nonphysician services furnished to hospital patients (inpatients and outpatients), unless the services are furnished by the hospital, either directly or under an arrangement (as defined in section 1861(w)(1) of the Act). As revised, section 1866(a)(1)(H) of the Act requires each Medicare-participating hospital to agree to furnish directly all covered nonphysician services required by its patients (inpatients and outpatients) or to have the services furnished under an arrangement (as defined in section 1861(w)(1) of the Act). Section 9338(a)(3) of OBRA 1986 affected implementation of the bundling mandate by amending section 1861(s)(2)(K) of the Act to permit services of physician assistants to be covered and billed separately. Sections 4511(a)(2)(C) and (D) of the BBA 1997 further revised sections 1862(a)(14) and 1866(a)(1)(H) of the Act, respectively, to exclude services of nurse practitioners

setting as meaning that the physician must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure. The definition at § 410.32(b)(3)(ii) goes on to state that ''direct supervision'' does not mean that the physician must be present in the room when the procedure is performed.

Our intention in the proposed rule was to define ''direct supervision'' of hospital outpatient services incident to physician services when they are furnished at a department of a hospital to mean that a physician must be present on the premises of the entity accorded status as a department of the hospital and, therefore, immediately available to furnish assistance and direction for as long as patients are being treated at the site. By ''direct supervision'' we do not mean that the physician must physically be in the room where a procedure or service is furnished. Nor does the supervising physician necessarily have to be of the same specialty as the procedure or service that is being performed. We emphasize that our proposed amendment of § 410.27 to require direct supervision of hospital services furnished incident to a physician service to outpatients applies to services furnished at an entity that is located off the campus of a hospital that we designate as having provider-based status as a department of a hospital in accordance with the provisions of § 413.65. Our proposed amendment of § 410.27 to require direct supervision of hospital services furnished incident to a physician service to outpatients does not apply to services furnished in a department of a hospital that is located on the campus of that hospital. For hospital services furnished incident to a physician service to outpatients in a department of a hospital that is located on the campus of the hospital, we assume the direct supervision requirement to be met as we explain in section 3112.4(A) of the Intermediary Manual. The requirement at § 410.27 does not affect the definition of physician supervision in section 3112.4(A) of the Intermediary Manual. In response to these comments, we have revised our definition of ''direct supervision by a physician'' in the final regulation.

*Comment:* A major trade association asserted that requiring a physician to be on-site at a provider-based entity throughout the performance of all ''incident to'' services would be burdensome and costly for hospitals where there are a limited number of physicians available to provide coverage, particularly in rural settings. Another commenter believes that entities with provider-based status should not be subject to physician supervision requirements that are more stringent than those applicable to free-standing facilities. A third commenter believes that this requirement is unnecessary because the requirements for integration with the hospital and other requirements for provider-based status include adequate checks and balances to ensure quality care. The commenter recommended that this proposal be omitted from the final rule with the potential for a separate, better defined, proposal at a later date.

*Response:* We disagree with commenters who believe the proposed supervision requirement is not necessary or that it would be burdensome to the hospital. First, the supervision requirement is separate from and independent of the provider-based requirements, and hospitals and physicians already have to meet a direct supervision of ''incident to'' services requirement that is unrelated to provider-based issues. That is, we require that hospital services and supplies furnished to outpatients that are incident to physician services be furnished on a physician's order by hospital personnel and under a physician's supervision (Intermediary Manual, section 3112.4(A)). We assume the physician supervision requirement is met on hospital premises because staff physicians would always be nearby within the hospital. The effect of the regulations in this final rule is to extend this assumption to a department of a provider that is located on the campus of a hospital. However, the regulation *does not* extend the assumption of supervision to a department of a hospital that is located off the campus of the hospital. We would not extend this assumption to a provider-based entity, regardless of its location, because the ''incident to'' requirement in § 410.27(a)(1)(iii) applies only to hospitals. Also, as we state above, satisfying the requirements to be designated provider-based is unrelated to our requirement that hospital services furnished incident to a physician service to outpatients at an entity that has provider-based status be under the direct supervision of a physician. Finally, this supervision requirement is entirely consistent with the direct supervision requirements currently set forth in the Medicare Carriers Manual, Part 3, section 2050.1(B).

*Comment:* One commenter suggested that partial hospitalization services furnished by a hospital to its outpatients be exempt from the outpatient department ''incident to'' requirements, or that other requirements be drafted that would, in the commenter's opinion, be more appropriate to the nature of this care.

*Response:* Section 1861(s)(2)(B) restricts coverage of partial hospitalization services furnished by a hospital to its outpatients to services that meet ''incident to'' requirements. We do not have the discretion to ignore this statutory restriction.

*Comment:* One commenter asked that we provide an exception to the direct supervision requirement in the case of physical therapy services. The commenter questioned why therapists who furnish the same services in a provider-based entity that they would furnish in an independent practice should be subject to direct physician supervision in one setting and not the other.

*Response:* The provision on coverage for outpatient physical therapy and occupational therapy services does not require that they be ''incident to'' physician services (see section 1861(s)(2)(D) of the Act). Therefore, there is no need to exempt them from the supervision requirement for outpatient hospital services incident to a physician service that is furnished at a provider-based entity. We therefore made no change in the final regulation based on this comment.

*Comment:* One commenter suggested that we modify our proposed regulation to waive the direct supervision requirement in entities with provider-based status for certain procedures for which we already waive the direct supervision requirement when the procedures are performed on homebound patients, as set forth in section 2051 of the Medicare Carriers Manual. The commenter believes that general supervision is sufficient for these waived services, for example, the physician need not be present, but the services must be performed under a physician's overall supervision and control, and ordered by a physician.

*Response:* Under section 2050.2 of the Medicare Carriers Manual, subject to certain requirements, we waive the direct supervision requirement when the following services are furnished to homebound patients: injections; venipuncture; EKGs; therapeutic exercises; insertion and sterile irrigation of a catheter; changing of catheters and collection of catheterized specimen for urinalysis and culture; dressing changes, for example, the most common chronic conditions that may need dressing changes are decubitus care and gangrene; replacement and/or insertion of nasogastric tubes; removal of fecal

(6) Certified nurse mid-wife services, as defined in section 1861(gg) of the Act.

(7) Qualified psychologist services, as defined in section 1861(ii) of the Act.

(8) Services of an anesthetist, as defined in § 410.69 of this chapter.

## PART 410—SUPPLEMENTARY MEDICAL INSURANCE (SMI) BENEFITS

B. Part 410 is amended as set forth below:

1. The authority citation for part 410 continues to read as follows:

**Authority:** Secs. 1102 and 1871 of the Social Security Act (42 U.S.C. 1302 and 1395hh).

## Subpart A—General Provisions

2. In § 410.2, the introductory text is republished, the definition of ''Community mental health center (CMHC)'' is revised, and the definitions of ''Encounter'' and ''Outpatient'' are added in alphabetical order to read as follows:

### § 410.2 Definitions.

As used in this part—

*Community mental health center (CMHC)* means an entity that—

(1) Provides outpatient services, including specialized outpatient services for children, the elderly, individuals who are chronically mentally ill, and residents of its mental health service area who have been discharged from inpatient treatment at a mental health facility;

(2) Provides 24-hour-a-day emergency care services;

(3) Provides day treatment or other partial hospitalization services, or psychosocial rehabilitation services;

(4) Provides screening for patients being considered for admission to State mental health facilities to determine the appropriateness of this admission; and

(5) Meets applicable licensing or certification requirements for CMHCs in the State in which it is located.

*Encounter* means a direct personal contact between a patient and a physician, or other person who is authorized by State licensure law and, if applicable, by hospital or CAH staff bylaws, to order or furnish hospital services for diagnosis or treatment of the patient.

* * * * *

*Outpatient* means a person who has not been admitted as an inpatient but who is registered on the hospital or CAH records as an outpatient and receives services (rather than supplies alone) directly from the hospital or CAH.

* * * * *

## Subpart B—Medical and Other Health Services

3. In § 410.27:

A. The section heading is revised;

B. The introductory text to paragraph (a) is revised;

C. The introductory text to paragraph (a)(1) is republished;

D. The word ''and'' at the end of paragraph (a)(1)(i) is removed; and

E. New paragraphs (a)(1)(iii), (e), and (f) are added to read as follows:

### § 410.27 Outpatient hospital services and supplies incident to a physician service: Conditions.

(a) Medicare Part B pays for hospital services and supplies furnished incident to a physician service to outpatients, including drugs and biologicals that cannot be self-administered, if—

(1) They are furnished—

* * * * *

(iii) In the hospital or at a location (other than an RHC or an FQHC) that HCFA designates as a department of a provider under § 413.65 of this chapter; and

* * * * *

(e) Services furnished by an entity other than the hospital are subject to the limitations specified in § 410.42(a).

(f) Services furnished at a location (other than an RHC or an FQHC) that HCFA designates as a department of a provider under § 413.65 of this chapter must be under the direct supervision of a physician. ''Direct supervision'' means the physician must be present and on the premises of the location and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed.

4. In § 410.28, paragraph (a)(4) is removed, paragraph (c) is redesignated as paragraph (d), and new paragraphs (c) and (e) are added to read as follows:

### § 410.28 Hospital or CAH diagnostic services furnished to outpatients: Conditions.

* * * * *

(c) Diagnostic services furnished by an entity other than the hospital or CAH are subject to the limitations specified in § 410.42(a).

* * * * *

(e) Medicare Part B makes payment under section 1833(t) of the Act for diagnostic services furnished at a facility (other than an RHC or an FQHC) that HCFA designates as having provider-based status only when the diagnostic services are furnished under the appropriate level of physician supervision specified by HCFA in accordance with the definitions in § 410.32(b)(3)(i), (b)(3)(ii), and (b)(3)(iii). Under general supervision at a facility accorded provider-based status, the training of the nonphysician personnel who actually perform the diagnostic procedure and the maintenance of the necessary equipment and supplies are the continuing responsibility of the facility.

5. A new § 410.42 is added to read as follows:

### § 410.42 Limitations on coverage of certain services furnished to hospital outpatients.

(a) *General rule.* Except as provided in paragraph (b) of this section, Medicare Part B does not pay for any item or service that is furnished to a hospital outpatient (as defined in § 410.2) during an encounter (as defined in § 410.2) by an entity other than the hospital unless the hospital has an arrangement (as defined in § 409.3 of this chapter) with that entity to furnish that particular service to its patients. As used in this paragraph, the term ''hospital'' includes a CAH.

(b) *Exception.* The limitations stated in paragraph (a) of this section do not apply to the following services:

(1) Physician services that meet the requirements of § 415.102(a) of this chapter for payment on a fee schedule basis.

(2) Physician assistant services, as defined in section 1861(s)(2)(K)(i) of the Act.

(3) Nurse practitioner and clinical nurse specialist services, as defined in section 1861(s)(2)(K)(ii) of the Act.

(4) Certified nurse mid-wife services, as defined in section 1861(gg) of the Act.

(5) Qualified psychologist services, as defined in section 1861(ii) of the Act.

(6) Services of an anesthetist, as defined in § 410.69.

(7) Services furnished to SNF residents as defined in § 411.15(p) of this chapter.

6. In § 410.43, paragraph (b) is revised to read as follows:

### § 410.43 Partial hospitalization services: Conditions and exclusions.

* * * * *

(b) The following services are separately covered and not paid as partial hospitalization services:

(1) Physician services that meet the requirements of § 415.102(a) of this chapter for payment on a fee schedule basis.