EXHIBIT 5

35232 **Federal Register** / Vol. 74, No. 137 / Monday, July 20, 2009 / Proposed Rules

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Centers for Medicare & Medicaid Services**

**42 CFR Parts 410, 416, and 419**

**[CMS–1414–P]**

**RIN 0938–AP41**

# Medicare Program: Proposed Changes to the Hospital Outpatient Prospective Payment System and CY 2010 Payment Rates; Proposed Changes to the Ambulatory Surgical Center Payment System and CY 2010 Payment Rates

**AGENCY:** Centers for Medicare & Medicaid Services (CMS), HHS.

**ACTION:** Proposed rule.

**SUMMARY:** This proposed rule would revise the Medicare hospital outpatient prospective payment system (OPPS) to implement applicable statutory requirements and changes arising from our continuing experience with this system. In this proposed rule, we describe the proposed changes to the amounts and factors used to determine the payment rates for Medicare hospital outpatient services paid under the prospective payment system. These changes would be applicable to services furnished on or after January 1, 2010.

In addition, this proposed rule would update the revised Medicare ambulatory surgical center (ASC) payment system to implement applicable statutory requirements and changes arising from our continuing experience with this system. In this proposed rule, we set forth the applicable relative payment weights and amounts for services furnished in ASCs, specific HCPCS codes to which these proposed changes would apply, and other pertinent ratesetting information for the CY 2010 ASC payment system. These proposed changes would be applicable to services furnished on or after January 1, 2010.

**DATES:** To be assured consideration, comments on all sections of this proposed rule must be received at one of the addresses provided in the **ADDRESSES** section no later than 5 p.m. EST on August 31, 2009.

**ADDRESSES:** In commenting, please refer to file code CMS–1414–P. Because of staff and resource limitations, we cannot accept comments by facsimile (FAX) transmission.

You may submit comments in one of four ways (no duplicates, please):

1. *Electronically.* You may submit electronic comments on this regulation to *http://www.regulations.gov.* Follow the instructions for ''Comment or Submission'' and enter the file code to find the document accepting comments.

2. *By regular mail.* You may mail written comments (one original and two copies) to the following address ONLY: Centers for Medicare & Medicaid Services, Department of Health and Human Services, Attention: CMS–1414–P, P.O. Box 8013, Baltimore, MD 21244–1850.

Please allow sufficient time for mailed comments to be received before the close of the comment period.

3. *By express or overnight mail.* You may send written comments (one original and two copies) to the following address ONLY: Centers for Medicare & Medicaid Services, Department of Health and Human Services, Attention: CMS–1414–P, Mail Stop C4–26–05, 7500 Security Boulevard, Baltimore, MD 21244–1850.

4. *By hand or courier.* If you prefer, you may deliver (by hand or courier) your written comments (one original and two copies) before the close of the comment period to one of the following addresses:

a. Room 445–G, Hubert H. Humphrey Building, 200 Independence Avenue, SW., Washington, DC 20201.

(Because access to the interior of the HHH Building is not readily available to persons without Federal Government identification, commenters are encouraged to leave their comments in the CMS drop slots located in the main lobby of the building. A stamp-in clock is available for persons wishing to retain a proof of filing by stamping in and retaining an extra copy of the comments being filed.)

b. 7500 Security Boulevard, Baltimore, MD 21244–1850.

If you intend to deliver your comments to the Baltimore address, please call the telephone number (410) 786–9994 in advance to schedule your arrival with one of our staff members.

Comments mailed to the addresses indicated as appropriate for hand or courier delivery may be delayed and received after the comment period.

For information on viewing public comments, see the beginning of the **SUPPLEMENTARY INFORMATION** section.

**FOR FURTHER INFORMATION CONTACT:**
Alberta Dwivedi, (410) 786–0378, Hospital outpatient prospective payment issues.

Dana Burley, (410) 786–0378, Ambulatory surgical center issues.

Michele Franklin, (410) 786–4533, and Jana Lindquist, (410) 786–4533, Partial hospitalization and community mental health center issues.

James Poyer, (410) 786–2261, Reporting of quality data issues.

**SUPPLEMENTARY INFORMATION:**

*Submitting Comments:* We welcome comments from the public on all issues set forth in this proposed rule to assist us in fully considering issues and developing policies. You can assist us by referencing file code CMS–1414–P for all issues on which you wish to comment.

*Inspection of Public Comments:* All comments received before the close of the comment period are available for viewing by the public, including any personally identifiable or confidential business information that is included in a comment. We post all comments received before the close of the comment period on the following Web site as soon as possible after they have been received: *http://www.regulations.gov.* Follow the search instructions on that Web site to view public comments.

Comments received timely will also be available for public inspection as they are received, generally beginning approximately 3 weeks after publication of a document, at the headquarters of the Centers for Medicare & Medicaid Services, 7500 Security Boulevard, Baltimore, MD 21244, on Monday through Friday of each week from 8:30 a.m. to 4 p.m. EST. To schedule an appointment to view public comments, phone 1–800–743–3951.

## Electronic Access

This **Federal Register** document is also available from the Federal Register online database through *GPO Access*, a service of the U.S. Government Printing Office. Free public access is available on a Wide Area Information Server (WAIS) through the Internet and via asynchronous dial-in. Internet users can access the database by using the World Wide Web; the Superintendent of Documents'' home page address is *http://www.gpoaccess.gov/index.html,* by using local WAIS client software, or by telnet to swais.access.gpo.gov, then login as guest (no password required). Dial-in users should use communications software and modem to call (202) 512–1661; type swais, then login as guest (no password required).

## Alphabetical List of Acronyms Appearing in This Proposed Rule

ACEP American College of Emergency Physicians
AHA American Hospital Association
AHIMA American Health Information Management Association
AMA American Medical Association
AMP Average manufacturer price
AOA American Osteopathic Association
APC Ambulatory payment classification
ASC Ambulatory Surgical Center
ASP Average sales price

immediately available where the services are being furnished. The physician must also be able to furnish assistance and direction throughout the performance of the services, which would include medical consultations and medical emergencies. For a complete discussion of the current and proposed requirements for the direct supervision of hospital outpatient therapeutic services, we refer readers to section XII.D. of this proposed rule.

Section 144 of Public Law 110–275 also states that in the case of items and services furnished under such a CR, ICR, or PR program in a hospital, physician availability shall be presumed. As we have stated in the CY 2009 OPPS/ASC final rule with comment period (73 FR 68702 through 68704), the longstanding presumption of direct physician supervision for hospital outpatient services means that direct physician supervision is the standard for supervision of hospital outpatient therapeutic services covered and paid by Medicare in hospitals and PBDs of hospitals, and we expect that hospitals are providing services in accordance with this standard.

We note that in section XII.D. of this proposed rule, we are also proposing that nonphysician practitioners, defined for the purpose of proposed revised § 410.27 of the regulations as clinical psychologists, physician assistants, nurse practitioners, clinical nurse specialists, and certified nurse-midwives, may directly supervise all hospital outpatient therapeutic services that they may perform themselves within their State scope of practice and hospital-granted privileges, provided that they meet all additional requirements, including any collaboration or supervision requirements as specified in §§ 410.71, 410.74, 410.75, 410.76, and 410.77. However, in the CY 2010 MPFS proposed rule and in the corresponding proposed regulation text, we proposed a different requirement for the direct supervision of CR, ICR, and PR services. We proposed that services provided in CR, ICR, and PR programs must be supervised by a doctor of medicine or osteopathy, as defined in section 1861(r)(i) of the Act. In addition, we proposed specific requirements for the expertise and licensure of physicians supervising CR and ICR services. It would not be in accordance with the proposed regulations for a nonphysician practitioner to supervise services furnished in a CR, ICR, or PR program. The physician supervision and expertise requirements proposed in the coverage policy and regulations for CR, ICR, and PR services must be met for those services to be covered and, therefore, paid by Medicare in hospital outpatient settings.

*C. Stem Cell Transplant*

Stem cell transplantation is a treatment in which stem cells that are harvested from either a patient's or a donor's bone marrow or peripheral blood are later infused into that patient to treat an illness. Autologous stem cell transplantation is a technique for providing additional stem cells using the patient's own previously harvested stem cells. Allogeneic stem cell transplantation is a procedure in which stem cells from a healthy donor are acquired and prepared to provide a patient with new stem cells.

We recently revised section 90.3.3 of Chapter 3 of the Medicare Claims Processing Manual (Pub. 100–04) and created new section 231.10 of Chapter 4 of the Medicare Claims Processing Manual in order to clarify billing under Medicare for autologous and allogeneic stem cell transplant services. As stated in the cited new and revised manual sections, autologous stem cell transplants performed on Medicare beneficiaries may be provided on an inpatient or an outpatient basis. Hospitals are instructed to bill and show all charges for autologous stem cell harvesting, processing, and transplant procedures based on the status of the patient (that is, inpatient or outpatient) when the individual services are furnished. The CPT codes describing these services may be billed and are separately payable under the OPPS when the services are provided in the hospital outpatient setting.

In contrast, allogeneic stem cell transplants performed on Medicare beneficiaries are provided on an inpatient basis, and all services related to acquiring the stem cells from a donor (whether performed inpatient or outpatient) are billed and are payable under Medicare Part A through the IPPS MS–DRG payment for the stem cell transplant. In addition to payment for the stem cell transplant procedure itself, the MS–DRG payment for the stem cell transplant includes payment for stem cell acquisition services, which include, but are not limited to, National Marrow Donor Program fees for stem cells from an unrelated donor (if applicable); tissue typing of donor and recipient; donor evaluation; physician pre-admission/ pre-procedure donor evaluation services; costs associated with the harvesting procedure; post-operative/ post-procedure evaluation of donor; and preparation and processing of stem cells. While certain acquisition services, such as donor harvesting procedures, may be performed in the hospital outpatient setting, hospitals are instructed to include the charges for these services in the recipient's inpatient transplant bill as acquisition services and not to bill them under the OPPS.

In order to be consistent with the revised section 90.3.3 and the new section 231.10 of the Medicare Claims Processing Manual cited earlier, which reflect what we believe to be the current clinical practice of performing allogeneic stem cell transplants on Medicare beneficiaries on an inpatient basis only, we are proposing to revise the status indicator assignments of certain stem cell transplant-related CPT codes under the OPPS. Specifically, we are proposing to change the status indicator for CPT code 38205 (Blood-derived hematopoietic progenitor cell harvesting for transplantation, per collection; allogenic) from ''S'' to ''E'' for the CY 2010 OPPS to reflect that, while an allogeneic stem cell harvesting procedure performed on the donor may take place in the HOPD, payment for the service is made through the IPPS MS–DRG payment for the associated transplant procedure performed on the recipient. We also are proposing to change the status indicators for CPT code 38240 (Bone marrow or blood-derived peripheral stem cell transplantation; allogenic) and CPT code 38242 (Bone marrow or blood-derived peripheral stem cell transplantation; allogeneic donor lymphocyte infusions) from ''S'' to ''C'' for the CY 2010 OPPS to reflect that these allogeneic transplant procedures are payable by Medicare as inpatient procedures only.

We refer readers to section 90.3.3 of Chapter 3 and section 231.10 of Chapter 4 of the Medicare Claims Processing Manual for more detailed information on billing and payment for autologous and allogeneic stem cell transplants and related services.

*D. Physician Supervision*

1. Background

In the CY 2009 OPPS/ASC proposed rule and final rule with comment period (73 FR 41518 through 41519 and 73 FR 68702 through 68704, respectively), we provided a restatement and clarification of the requirements for physician supervision of hospital outpatient diagnostic and therapeutic services that were set forth in the April 2000 OPPS final rule with comment period (65 FR 18524 through 18526). As we stated in those rules, section 1861(s)(2)(C) of the Act authorizes payment for diagnostic services that are furnished to a hospital

outpatient for the purpose of diagnostic study. We have further defined the requirements for diagnostic services furnished to hospital outpatients, including requirements for physician supervision of diagnostic services, in §§ 410.28 and 410.32 of our regulations. Section 410.28(e) states that Medicare Part B will make payment for diagnostic services furnished at provider-based departments (PBDs) of hospitals ''only when the diagnostic services are furnished under the appropriate level of physician supervision specified by CMS in accordance with the definitions in §§ 410.32(b)(3)(i), (b)(3)(ii), and (b)(3)(iii).'' In addition, in the April 2000 OPPS final rule with comment period (65 FR 18526), we stated that our model for the requirement was the requirement for physician supervision of diagnostic tests payable under the MPFS that was set forth in the CY 1998 MPFS final rule (62 FR 59048). In 2000, we also explained with respect to the supervision requirements for individual diagnostic tests that we intended to instruct hospitals and fiscal intermediaries to use the MPFS as a guide pending issuance of updated requirements. For diagnostic services not listed in the MPFS, we stated that fiscal intermediaries, in consultation with their medical directors, would define appropriate supervision levels in order to determine whether claims for these services are reasonable and necessary. Since 2000, we have continued to follow the supervision requirements for individual diagnostic tests as listed in the MPFS Relative Value File. The file is updated quarterly and is available on the CMS Web site at: *http://www.cms.hhs.gov/PhysicianFeeSched/*.

In the CY 2009 OPPS/ASC proposed rule and final rule with comment period (73 FR 41518 through 41519 and 73 FR 68702 through 68704, respectively), we also reiterated that direct physician supervision is the standard for physician supervision as set forth in the April 2000 OPPS final rule with comment period for supervision of hospital outpatient therapeutic services covered and paid by Medicare in hospitals and PBDs of hospitals. We noted that section 1861(s)(2)(B) of the Act authorizes payment for hospital services ''incident to physicians' services rendered to outpatients.'' We have further defined the supervision requirements for hospital outpatient therapeutic services and supplies ''incident to'' a physician's service in § 410.27 of our regulations. More specifically, § 410.27(f) states: ''Services furnished at a department of a provider, as defined in § 413.65(a)(2) of this subchapter, that has provider-based status in relation to a hospital under § 413.65 of this subchapter, must be under the direct supervision of a physician. 'Direct supervision' means the physician must be present and on the premises of the location and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed.'' This language makes no distinction between on-campus and off-campus PBDs.

In the preamble of the April 2000 OPPS final rule with comment period (65 FR 18525), we further discussed the requirement for physician supervision and the finalization of the proposed regulation text. In that discussion, we stated that the language of § 410.27(f) ''applies to services furnished at an entity that is located off the campus of a hospital that we designate as having provider-based status as a department of a hospital in accordance with § 413.65.'' We also stated that, for services furnished in a department of a hospital that is located on the campus of a hospital, ''we assume the direct supervision requirement to be met as we explain in section 3112.4(a) of the Intermediary Manual.'' We further stated that ''we assume the physician supervision requirement is met on hospital premises because staff physicians would always be nearby within the hospital.''

In the CY 2009 OPPS/ASC proposed rule and final rule with comment period (73 FR 41518 through 41519 and 73 FR 68702 through 68704, respectively), we restated the existing physician supervision policy for hospital outpatient therapeutic services because we were concerned that some stakeholders may have misunderstood our use of the term ''assume'' in the April 2000 OPPS final rule with comment period, believing that our statement meant that we do not require any supervision in the hospital or in an on-campus PBD for hospital outpatient therapeutic services, or that we only require general supervision for those services. This is not the case. It has been our expectation that hospital outpatient therapeutic services are provided under the direct supervision of physicians in the hospital and in all PBDs of the hospital, specifically, both on-campus and off-campus departments of the hospital. The expectation that a physician would always be nearby predates the OPPS and is related to the statutory authority for payment of hospital outpatient services—that Medicare makes payment for hospital outpatient services ''incident to'' the services of physicians in the treatment of patients as described in section 1861(s)(2)(B) of the Act. Section 410.27(a)(1)(ii) of the regulations states that Medicare Part B pays for hospital services and supplies furnished incident to a physician service to outpatients if they are provided ''as an integral though incidental part of a physician's services.'' In addition, we have stated in section 20 of chapter 6 of the Medicare Benefit Policy Manual (Pub. 100–2) that hospitals provide two distinct types of services to outpatients: services that are diagnostic in nature, and other services that aid the physician in the treatment of the patient. We further defined these therapeutic services and supplies in section 20.5.1 of the Medicare Benefit Policy Manual, stating ''therapeutic services and supplies which hospitals provide on an outpatient basis are those services and supplies (including the use of hospital facilities) which are incident to the services of physicians in the treatment of patients.'' We also provide in section 20.5.1 that services and supplies must be furnished on a physician's order and delivered under physician supervision. However, the manual indicates further that each occasion of a service by a nonphysician does not need to also be the occasion of the actual rendition of a personal professional service by the physician responsible for the care of the patient. Nevertheless, as stipulated in that same section of the manual ''during any course of treatment rendered by auxiliary personnel, the physician must personally see the patient periodically and sufficiently often enough to assess the course of treatment and the patient's progress and, where necessary, to change the treatment regimen.''

The expectation that a physician would always be nearby within the hospital also dates back to a time when hospital inpatient services provided in a single hospital building represented the majority of hospital payments by Medicare. Since that time, advances in medical technology, changes in the patterns of health care delivery, and changes in the organizational structure of hospitals have led to the development of extensive hospital campuses, sometimes spanning several city blocks, as well as off-campus and satellite provider-based campuses at different locations. In the April 2000 OPPS final rule with comment period (65 FR 18525), we described the focus of the direct physician supervision requirement for off-campus PBDs. In the CY 2009 OPPS/ASC final rule with

comment period (73 FR 68703), we stated that we do expect direct physician supervision of all hospital outpatient therapeutic services, regardless of their on-campus or off-campus location, but that we would continue to emphasize the physician supervision requirement for off-campus PBDs. However, we also noted that if there were problems with outpatient care in a hospital or in an on-campus PBD where direct supervision was not in place (that is, the expectation of direct physician supervision was not met), we would consider that to be a quality concern. We noted that we want to ensure that payment is made for high quality hospital outpatient services provided to beneficiaries in a safe and effective manner and consistent with Medicare requirements.

Finally, we noted that the definition of direct supervision in § 410.27(f) for PBDs requires that the physician must be present and on the premises of the location and immediately available to furnish assistance and direction throughout the performance of the procedure. In the April 2000 OPPS final rule with comment period (65 FR 18525), we further distinguished ''on the premises of the location'' by stating ''* * * a physician must be present on the premises of the entity accorded status as a department of the hospital and therefore, immediately available to furnish assistance and direction for as long as patients are being treated at the site.'' We also stated that this characterization does not mean that the physician must be physically in the room where a procedure or service is furnished. We noted in the CY 2009 OPPS/ASC final rule with comment period (73 FR 68703) that although we have not further defined the term ''immediately available'' for this specific context, the lack of timely physician response to a problem in the HOPD would represent a quality concern from our perspective that hospitals should consider in structuring their provision of services in ways that meet the direct physician supervision requirement for HOPD services.

In response to a comment requesting clarification, we also discussed in the CY 2009 OPPS/ASC final rule with comment period (73 FR 68703 through 68704) that a nonphysician practitioner may not provide the physician supervision in a PBD, even if a nurse practitioner's or a physician assistant's professional service was being billed as a nurse practitioner or a physician assistant service and not a physician service. We noted that section 1861(r) of the Act defines a physician as follows: ''[t]he term 'physician', when used in connection with the performance of any function or action, means (1) a doctor of medicine or osteopathy legally authorized to practice medicine and surgery by the State in which he performs such function or action * * *; (2) a doctor of dental surgery or of dental medicine * * *; (3) a doctor of podiatric medicine * * *; (4) a doctor of optometry * * *; or (5) a chiropractor. In addition, we pointed out that the conditions of participation for hospitals under § 482.12(c)(1)(i) through (c)(1)(vi) of our regulations require that every Medicare hospital patient is under the care of a doctor of medicine or osteopathy, a doctor of dental surgery or dental medicine, a doctor of podiatric medicine, a doctor of optometry, a chiropractor, or a clinical psychologist; each practicing within the extent of the Act, the Federal regulations, and State law. Further, § 482.12(c)(4) of our regulations requires that a doctor of medicine or osteopathy must be responsible for the care of each Medicare patient with respect to any medical or psychiatric condition that is present on admission or develops during hospitalization and is not specifically within the scope of practice of one of the other practitioners listed in § 482.12(c)(1)(ii) through (c)(1)(vi).

Moreover, section 1861(s)(2)(B) of the Act authorizes payment for hospital services ''incident to physicians' services rendered to outpatients.'' We have further defined the requirements for hospital outpatient therapeutic services and supplies ''incident to'' a physician's service in § 410.27 of our regulations. Section 410.27(a)(1)(ii) describes payment for hospital outpatient services when they are ''an integral though incidental part of a physician's services.'' Also, § 410.27(f) requires that hospital outpatient services provided in PBDs must be under the direct supervision of a physician. We stated that the language of the statute and regulations does not include nonphysician practitioners other than clinical psychologists. Therefore, it would not be in accordance with the law and regulations for a nonphysician practitioner other than a clinical psychologist to be providing the physician supervision in a PBD, even if a nurse practitioner's or a physician assistant's professional service was being billed as a nurse practitioner or a physician assistant service and not a physician service.

2. Issues Regarding the Physician Supervision of Hospital Outpatient Services Raised by Hospitals and Other Stakeholders

Although we received a few public comments on the discussion of physician supervision in the CY 2009 OPPS/ASC proposed rule, since publication of the CY 2009 OPPS/ASC final rule with comment period on November 18, 2008, we have received many questions and concerns about the current policies from hospitals and other stakeholders. Some stakeholders expressed appreciation for the CMS clarification, stating that the supervision policies were clear and represented needed safeguards for beneficiaries. On the other hand, we have received numerous questions about the application of the policies to hospital outpatient therapeutic services furnished in areas of the hospital that some stakeholders believe have not clearly been discussed, such as the application of direct supervision to hospital outpatient therapeutic services furnished within the main buildings of the hospital that may not be PBDs of the hospital. Some hospitals expressed difficulty in determining whether certain areas of their hospitals were considered provider-based. Other stakeholders cited the direct supervision policy as first articulated in 2000 as problematic because they believe that CMS failed to consider hospitals' current organizational structures. Some hospitals and other stakeholders inquired about a physician's qualifications for providing supervision or questioned whether physician supervision must be provided by a physician in a particular medical specialty. A number of stakeholders challenged the current policy that nonphysician practitioners cannot provide direct supervision for those hospital outpatient therapeutic services they may personally perform or that they may order to be provided by other hospital staff incident to the nonphysician practitioner's services. In addition, numerous stakeholders, especially rural hospitals, raised budgetary and patient access concerns related to ensuring adequate physician staffing, especially because nonphysician practitioners may not directly supervise the delivery of hospital outpatient therapeutic services. Furthermore, rural hospitals and CAHs raised concerns regarding the inconsistency of the direct supervision requirements for CAHs with other CAH policies, pointing out that the Medicare conditions of participation for CAHs allow nurse practitioners and physician

assistants to be responsible for the care of Medicare patients in CAHs. Some stakeholders specifically questioned whether § 410.27(f) applied to CAHs because the term ''CAH'' is not in the heading of § 410.27, which currently reads ''Outpatient hospital services and supplies incident to a physician service: Conditions.'' Other stakeholders complained about the significant burden on hospitals to provide direct physician supervision because they believe there is no clear clinical need for such supervision, particularly a uniform level of supervision for all types of hospital outpatient therapeutic services. Some stakeholders challenged the applicability of the direct supervision requirements to specific types of hospital outpatient services, such as partial hospitalization or chemotherapy administration services.

Similar to the issues related to direct supervision of hospital outpatient therapeutic services raised by hospitals and other stakeholders, we have received questions since publication of the CY 2009 OPPS/ASC final rule with comment period, citing confusion regarding the application of physician supervision policies for hospital outpatient diagnostic services, especially with respect to services provided within the main buildings of the hospital that are not PBDs. In addition, some stakeholders have pointed out that there is no site-of-service requirement for hospital outpatient diagnostic services, and that, therefore, hospitals may send patients to independent diagnostic testing facilities (IDTFs) or other entities to receive diagnostic services under arrangement. They added that although these facilities are not PBDs, the hospital would bill for these services as hospital outpatient services in accordance with the hospital bundling rules. Some of these stakeholders have asked what type of physician supervision is required for diagnostic services provided under arrangement.

A number of stakeholders urged CMS to withdraw or delay the physician supervision policies discussed in the CY 2009 OPPS/ASC final rule with comment period, arguing that this rule included policy changes rather than clarification and, therefore, sufficient opportunity for public notice and comment was not provided. Some further argued that CMS should suspend enforcement of these policies while CMS gathers additional public input and considered alternatives. These stakeholders suggested a variety of additional approaches to soliciting full feedback from the hospital and physician communities on the supervision policies and their impact, including holding an open door forum or town hall meeting and reopening the discussion during the CY 2010 OPPS rulemaking process.

As stated previously in this section, we provided a restatement and clarification of existing policy in the CY 2009 OPPS/ASC proposed rule (73 FR 41518 through 41519), citing numerous existing statutory, regulatory, manual, and prior rule preamble statements in section XII.A. of that rule specifically titled, ''Physician Supervision of HOPD Services.'' The CY 2009 OPPS/ASC proposed rule provided for a 60-day comment period. We continue to believe that the CY 2009 restatement and clarification made no change to longstanding hospital outpatient physician supervision policies as incorporated in prior statements of policy, including the codified Federal regulations. In addition, we provided for public notice and comment regarding these physician supervision polices through the CY2009 OPPS/ASC proposed rule in which, as noted above, we discussed physician supervision in a distinct section of the proposed rule. However, we received only a few public comments on that section. We note that the physician supervision policies for hospital outpatient diagnostic and therapeutic services as described in the CY 2009 OPPS/ASC final rule with comment period (73 FR 68702 through 68704) continue to be in effect for CY 2009. We have not instructed contractors to delay initiation of enforcement actions or to discontinue pursuing pending enforcement actions regarding the physician supervision of hospital outpatient services.

However, while we are not proposing to withdraw the longstanding physician supervision policies for hospital outpatient services, we have extensively considered the many questions and concerns on this topic raised to us by stakeholders in the course of developing this CY 2010 OPPS/ASC proposed rule in order to assess whether proposed changes to the existing policies should be considered. We appreciate the many detailed comments and suggestions interested stakeholders have raised in the first few months since publication of the CY 2009 OPPS/ASC final rule with comment period. We have considered a wide variety of potential modifications to our physician supervision policies in response to this information about current health care delivery practices and challenges. The dialogue with interested stakeholders has provided us with sufficient information to develop proposals for certain changes to the supervision policies for hospital outpatient services for CY 2010 in order to take into full consideration current clinical practice and patterns of care, the need to ensure patient access, the associated hospital and physician responsibilities, consistency among requirements for different sites of services, and other important factors. We believe that these proposals address many of the concerns and questions regarding our existing policies that have been raised to us by stakeholders over the past several months. We look forward to robust public comments on this proposed rule regarding our CY 2010 proposals for physician supervision in order to inform our decisions regarding final policies for CY 2010.

In considering the questions and concerns that have been raised over the past several months, we have identified three areas within our existing hospital outpatient physician supervision policies for which we believe proposals of policy changes are appropriate for CY 2010, two related to the supervision of therapeutic services and one related to the supervision of diagnostic services. Our specific CY 2010 proposals, including the proposed changes to our regulations to conform to these proposals, are discussed below.

### 3. Proposed Policies for Direct Supervision of Hospital and CAH Outpatient Therapeutic Services

First, for CY 2010 we are proposing that nonphysician practitioners, specifically physician assistants, nurse practitioners, clinical nurse specialists, and certified nurse-midwives, may directly supervise all hospital outpatient therapeutic services that they may perform themselves in accordance with their State law and scope of practice and hospital-granted privileges, provided that they continue to meet all additional requirements, including any collaboration or supervision requirements as specified in the regulations at §§ 410.74 through 410.77. Clinical psychologists may already provide direct supervision, as we mentioned in the CY 2009 OPPS/ASC final rule with comment period (73 FR 68703 through 68704) because they, along with physicians (as defined in section 1861(r)(1) of the Act), may be responsible for the care of a hospital patient, as discussed in the Medicare conditions of participation for hospitals in § 482.12(c) of our regulations. We believe that allowing certain nonphysician practitioners (nurse practitioners, physician assistants, clinical nurse specialists, and certified nurse-midwives) to provide direct supervision of certain hospital

outpatient therapeutic services is appropriate because, even though these practitioners are not physicians, they are recognized in statute and regulation as providing services that are analogous to physicians' services. Medicare Part B covers the professional services of clinical psychologists, nurse practitioners, physician assistants, clinical nurse specialists, and certified nurse-midwives when the services would be covered as physicians' services if furnished by a physician (a doctor of medicine or osteopathy, as set forth in section 1861(r)(1) of the Act). The coverage of their services is described in §§ 410.71(a), 410.74(a), 410.75(a) and (c), 410.76(a) and (c), and 410.77(a), respectively, of our regulations. Medicare also makes payment for services provided incident to the services of these nonphysician practitioners as specified in §§ 410.71(a)(2)(iii), 410.74(b), 410.75(d), 410.76(d), and 410.77(c), respectively.

We also note that section 1861(r) of the Act does not include clinical psychologists, nurse practitioners, physician assistants, clinical nurse specialists, or certified nurse-midwives in the definition of a physician. However, as previously mentioned, the conditions of participation for hospitals at § 482.12(c)(1)(vi) of our regulations do include clinical psychologists as practitioners who may be responsible for the care of Medicare patients. The conditions of participation at §§ 482.12(c)(1)(i) through (c)(1)(vi) require that every Medicare hospital patient be under the care of a doctor of medicine or osteopathy, a doctor of dental surgery or dental medicine, a doctor of podiatric medicine, a doctor of optometry, a chiropractor, or a clinical psychologist; each practicing in accordance with the Act, Federal regulations, and State law. Further, § 482.12(c)(4) of our regulations requires that a doctor of medicine or osteopathy must be responsible for the care of each Medicare patient with respect to any medical or psychiatric condition that is present on admission or develops during hospitalization and is not specifically within the scope of practice of one of the other practitioners listed in § 482.12(c)(1)(ii) through (c)(1)(vi). Also, as permitted by State law, certain nonphysician practitioners may admit individuals to a hospital or CAH and order and provide therapeutic services to them. Since 1998, we have allowed payment for the professional services of these nonphysician practitioners in addition to payment for physicians' services when the nonphysician practitioner's professional services are furnished in an HOPD. We also have made outpatient facility payments to the hospital for those facility services provided incident to the professional services of these nonphysician practitioners (63 FR 58873). In addition, the conditions of participation for CAHs at § 485.631 require that a doctor of medicine or osteopathy, a nurse practitioner, a physician assistant, or a clinical nurse specialist is available to furnish patient care services at all times the CAH operates. A doctor of medicine or osteopathy must be present for sufficient periods of time to provide medical direction, medical care services, consultation and supervision as described in the conditions of participation and must be available through radio or telephone contact for assistance with medical emergencies or patient referral.

Taking into consideration the totality of these existing conditions and requirements, we are proposing to revise § 410.27 of the regulations to make clear that Medicare Part B payment may be made for hospital outpatient services and supplies furnished incident to the services of a physician, clinical psychologist, nurse practitioner, physician assistant, clinical nurse specialist, or certified nurse-midwife service; and to add that, effective January 1, 2010, clinical psychologists, nurse practitioners, physician assistants, clinical nurse specialists, or certified nurse-midwives may provide direct supervision for hospital outpatient therapeutic services that they may perform themselves under State law and within their scope of practice and hospital-granted privileges in the context of the existing requirements in §§ 410.71, 410.74, 410.75, 410.76, and 410.77. However, we note that, as discussed in section XII.B.4 of this proposed rule, the direct supervision of CR, ICR, and PR services must be furnished by a doctor of medicine or osteopathy, as specified in the proposed coverage policy and regulations for CR, ICR, and PR services. We also note that Medicare does not make a payment to a physician under the MPFS when the physician solely provides the direct physician supervision of hospital outpatient therapeutic services but furnishes no direct professional services to a patient. This also would apply to the supervision of hospital outpatient therapeutic services provided by nonphysician practitioners.

We also note that we are not proposing to modify requirements relating to physician supervision or collaboration for these nonphysician practitioners. In regard to the supervision of physician assistants, § 410.74(a)(iv) requires that physician assistants perform services under the general supervision of a physician. We have further defined this general supervision in section 190(c) of chapter 15 of the Medicare Benefit Policy Manual. Section 190(c) states that "the PA's physician supervisor (or a physician designated by the supervising physician or employer as provided under State law or regulations) is primarily responsible for the overall direction and management of the PA's professional activities and for assuring that the services provided are medically appropriate for the patient. The physician supervisor (or physician designee) need not be physically present with the PA when a service is being furnished to a patient and may be contacted by telephone, if necessary, unless State law or regulations require otherwise."

The requirements for collaboration of nurse practitioners are defined in § 410.75(c)(3) of the regulations and section 200(D) of chapter 15 of the Medicare Benefit Policy Manual. The requirements for clinical nurse specialists are located in § 410.76(c)(3) of the regulations and section 210(D) of Chapter 15 of the Medicare Benefit Policy Manual. These sections define collaboration as a process in which the nurse practitioner or the clinical nurse specialist works with one or more physicians (doctors or medicine or osteopathy) to deliver health care services within the scope of the practitioner's expertise, with medical direction and appropriate supervision as required by the law of the State in which the services are being furnished. In the absence of more stringent State law requirements governing collaboration, collaboration is to be evidenced by the nurse practitioner or the clinical nurse specialist documenting his or her scope of practice and indicating the relationships that he or she has with physicians to deal with issues outside their scope of practice. The collaborating physician does not need to be present with the nurse practitioner or clinical nurse specialist when the services are furnished or to make an independent evaluation of each patient who is seen by the nurse practitioner or clinical nurse specialist.

Second, for CY 2010 we are proposing to refine the definition of direct supervision of hospital outpatient therapeutic services for those services furnished in a hospital and in on-campus PBDs of a hospital. For services furnished on a hospital's main campus, we are proposing that direct supervision means that the supervisory physician or

nonphysician practitioner must be present on the same campus, in the hospital or the on-campus PBD of the hospital as defined in § 413.65, and immediately available to furnish assistance and direction throughout the performance of the procedure. We are proposing to add a new paragraph (a)(1)(iv)(A) to § 410.27(a)(1)(iv)(A) to reflect this requirement. We also are proposing to define ''in the hospital'' in new paragraph § 410.27(g) as meaning areas in the main building(s) of a hospital that are under the ownership, financial, and administrative control of the hospital; that are operated as part of the hospital; and for which the hospital bills the services furnished under the hospital's CCN. Therefore, to be present in the hospital or the on-campus PBD of the hospital and immediately available requires that the physician or nonphysician practitioner must be physically present in areas on the campus of the hospital that are part of the hospital, including on-campus PBDs, that are operated by the hospital, and where services furnished in those areas are billed under the hospital's CCN. The supervisory physician or nonphysician practitioner of the hospital's outpatient therapeutic services may not be located in any other entity, such as a physician's office, IDTF, co-located hospital, or hospital-operated provider or supplier such as a skilled nursing facility (SNF), end stage renal disease (ESRD) facility, or home health agency (HHA), or any other nonhospital space that may be co-located on the hospital's campus, as ''hospital campus'' is defined in § 413.65(a)(2) of the regulations.

While we have not previously specified in policy guidance a definition for the term ''immediately available'' with respect to services provided in areas of the hospital on its main campus that are not PBDs, we believe that the existing definitions of direct supervision in §§ 410.27(f) and 410.32(b)(3)(ii) that apply to PBDs and physician office settings indicate that the physician must be physically present in order to provide direct supervision of services. With regard to services provided in PBDs of hospitals or physicians' offices, these regulations specify that the physician must be present in the PBD or in the office suite, respectively. Thus, we have previously established that direct supervision requires immediate physical presence. While we also have not specifically defined the word ''immediate'' for direct supervision in terms of time or distance, the general definition of the word means ''without interval of time.'' Therefore, the supervisory physician or nonphysician practitioner could not be immediately available while, for example, performing another procedure or service that he or she could not interrupt. In addition, we understand that advances in medical technology, changes in the patterns of health care delivery, and changes in the organizational structure of hospitals have led to the development of extensive hospital campuses, sometimes spanning several city blocks. However, in the context of direct physician or nonphysician practitioner supervision, we believe that it would be neither appropriate nor ''immediate'' for the supervisory physician or nonphysician practitioner to be so physically far away on the main campus from the location where hospital outpatient services are being furnished that he or she could not intervene right away. As we stated in the CY 2009 OPPS/ASC final rule with comment period (73 FR 68703), if there were problems with outpatient care in a hospital or in an on-campus PBD where the requirement for direct supervision was not met, we would consider that to be a quality concern. Appropriate supervision is a key aspect of the delivery of safe and high quality hospital outpatient services that are paid under Medicare.

In addition, the definition of direct supervision in existing § 410.27(f) has included and would continue to specify under our CY 2010 proposal that the physician or nonphysician practitioner must be available to furnish assistance and direction throughout the performance of the procedure. This means that the physician or nonphysician practitioner must be prepared to step in and perform the service, not just to respond to an emergency. This includes the ability to take over performance of a procedure and, as appropriate to both the supervisory physician or nonphysician practitioner and the patient, to change a procedure or the course of treatment being provided to a particular patient. We originally stated in the April 2000 OPPS final rule (65 FR 18525) that the physician does not ''necessarily need to be of the same specialty as the procedure or service that is being performed.'' We also have stated in manual guidance that hospital medical staff that supervises the services ''need not be in the same department as the ordering physician'' (section 20.5.1 of chapter 6 of the Medicare Benefits Policy Manual). However, in order to furnish appropriate assistance and direction for any given service or procedure, we believe the supervisory physician or nonphysician practitioner must have, within his or her State scope of practice and hospital-granted privileges, the ability to perform the service or procedure.

We are proposing no significant changes to the definition or requirements for direct supervision in off-campus PBDs of the hospital other than to allow nonphysician practitioners to provide direct supervision in these PBDs for the services that these practitioners may perform. With respect to off-campus PBDs of hospitals, direct supervision will continue to mean that the physician or nonphysician practitioner must be in the off-campus PBD and immediately available to furnish assistance and direction throughout the performance of the procedure. We are proposing to revise existing § 410.27(f) by redesignating it as § 410.27(a)(1)(iv)(B) and making a technical change to clarify the current language by removing ''present and on the premises of the location'' and replacing it with ''present in the off-campus provider-based department.'' While the meaning of this provision is the same, we believe this proposed modification to the language defining direct supervision is more consistent with the language of the other proposed changes to § 410.27. As we clarified in the CY 2009 OPPS/ASC final rule with comment period (73 FR 68704), the supervisory physician for hospital outpatient therapeutic services must be in each PBD of a particular off-campus remote location, but that does not mean that the physician must be in the room when the procedure is performed. In the April 2000 OPPS final rule (65 FR 18525), we responded to public commenters who asserted that requiring a physician to be onsite at a PBD throughout the performance of all ''incident to'' (therapeutic) services would be burdensome and costly for hospitals where there are a limited number of physicians available to provide coverage, particularly in rural settings. We disagreed then that the supervision requirement was unnecessary and burdensome because hospitals, prior to 2000, were already required to ''meet a direct supervision of 'incident to' services requirement that is unrelated to the provider-based rules. That is, we require that hospital services and supplies furnished to outpatients that are incident to physician services be furnished on a physician's order by hospital personnel and under a physician's supervision'' (section 3112.4 of the Medicare Intermediary Manual). In addition, when we discussed the ''assumption'' or expectation that the physician supervision requirement is

met on the hospital's main campus in the April 2000 OPPS final rule (65 FR 18525), we specifically did not extend that assumption to off-campus departments of the hospital. We continue to believe that it would be inappropriate to allow one physician or nonphysician practitioner to supervise all services being provided in all PBDs at a particular off-campus remote location. Since first allowing off-campus sites to be considered PBDs of hospitals, we have placed particular emphasis on ensuring the quality and safety of the services provided in these locations, which can be many miles from the main hospital campus, through both additional provider-based requirements in § 413.65(e) and our emphasis on direct physician supervision under § 410.27(f). In addition, because the physician or nonphysician practitioner must be immediately available and have, within his or her State scope of practice and hospital-granted privileges, the ability to perform the services being supervised, we believe it would be highly unlikely that one physician or nonphysician practitioner would be both immediately available at all times that therapeutic services are being provided and would have the knowledge and ability to adequately supervise all services being performed at once in multiple off-campus PBDs.

To reflect these proposed changes for the provision of direct supervision of therapeutic services provided to hospital outpatients in our regulations, we are proposing to revise the language of the existing § 410.27(f) and redesignate it as a new paragraph (a)(1)(iv) of § 410.27 to specify that direct physician or nonphysician practitioner supervision of hospital outpatient therapeutic services is required for Medicare Part B payment. We are proposing to add a new paragraph (a)(1)(iv)(A) to § 410.27 to state that, for services provided on the hospital's main campus, direct supervision means that the physician or nonphysician practitioner must be present on the same campus, in the hospital or on-campus PBD of the hospital, as defined in § 413.65, and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician or nonphysician practitioner must be in the room when the procedure is performed. We also are proposing to add new paragraph (a)(1)(iv)(B) to § 410.27 to reflect that, for off-campus PBDs of hospitals, the physician or nonphysician practitioner must be present in the off-campus PBD, as defined in § 413.65, and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician or nonphysician practitioner must be in the room when the procedure is performed. As we stated previously, the proposed language of paragraph (a)(1)(iv)(B) is similar to existing § 410.27(f) that we are proposing to revise and redesignate. Furthermore, we are proposing to make a technical change to clarify the language in this paragraph to remove ''present and on the premises of the location'' and replace it with ''present in the off-campus provider-based department.'' Also, as discussed above in section XII.B.4 of this proposed rule and as proposed in the CY 2010 MPFS proposed rule, the direct supervision of CR, ICR, and PR services must be furnished by a doctor of medicine or osteopathy, as specified in proposed §§ 410.47 and 410.49, respectively. We are proposing to include this exception in proposed paragraphs (a)(1)(iv)(A) and (a)(1)(iv)(B) in § 410.27. In addition, we are proposing to add a new paragraph (f) to § 410.27 to define a nonphysician practitioner for purposes of § 410.27 as a clinical psychologist, a physician assistant, a nurse practitioner, a clinical nurse specialist, or a certified nurse-midwife. Proposed new § 410.27(a)(1)(iv) would provide that these nonphysician practitioners may directly supervise services that they could furnish themselves in accordance with State law and within their scope of practice and hospital-granted privileges, as long as all requirements for coverage, including the physician supervision or collaboration for these nonphysician practitioners, are met in accordance with §§ 410.71, 410.74, 410.75, 410.76, and 410.77, respectively. We also are proposing to define ''in the hospital'' in new paragraph § 410.27(g) to mean areas in the main building(s) of the hospital that are under the ownership, financial, and administrative control of the hospital; that are operated as part of the hospital; and for which the hospital bills the services furnished under the hospital's CCN. Finally, we are proposing to make a technical correction to the title of § 410.27 to read, ''Outpatient hospital or CAH services and supplies incident to a physician service: Conditions'' to clarify in the title that the requirements for payment of hospital outpatient therapeutic services incident to a physician or nonphysician practitioner service in that section apply to both hospitals and CAHs. Similarly, we are proposing to include the phrase ''hospital or CAH'' throughout the text of § 410.27 wherever the text currently refers just to ''hospital.'' The omission of the term ''CAH'' from § 410.27 was a drafting oversight. However, we have applied the requirements of § 410.27, including ''incident to'' requirements such as the site-of-service requirement and physician supervision as well as other hospital policies, such as the bundling rules, to CAHs, just as we have in 42 CFR Part 409 (Subparts A through D and F through H) and § 410.28 and § 413.65 of the regulations where CAHs are explicitly mentioned.

4. Proposed Policies for Direct Supervision of Hospital and CAH Outpatient Diagnostic Services

As we discussed in detail in section XII.D.1. of this proposed rule, with respect to the physician supervision requirements for individual diagnostic tests, we have continued since the April 2000 OPPS final rule discussion (65 FR 18526) to instruct hospitals that, for diagnostic services furnished in PBDs of hospitals, hospitals should follow the supervision requirements for individual diagnostic tests as listed in the MPFS Relative Value File. For diagnostic services not listed in the MPFS file, Medicare contractors, in consultation with their medical directors, define appropriate supervision levels in order to determine whether claims for these services are reasonable and necessary. To further specify the supervision policy across service settings and to provide consistency for all hospital outpatient diagnostic services, for CY 2010 we are proposing to require that all hospital outpatient diagnostic services that are provided directly or under arrangement, whether provided in the main buildings of the hospital, in a PBD, or at a nonhospital location, follow the physician supervision requirements for individual tests as listed in the MPFS Relative Value File. We also are proposing that the definitions of general, direct, and personal supervision as defined in §§ 410.32(b)(3)(i) through (b)(3)(iii) would also apply. In the case of direct supervision of diagnostic services furnished directly by the hospital or under arrangement in the main hospital buildings or on-campus in a PBD, we are proposing that the definition of direct supervision would be the same as the definition we are proposing for therapeutic services provided on-campus as discussed in section XII.D.3. of this proposed rule, meaning that the physician would be present on the same campus, in the hospital or the on-campus PBD of the hospital, as defined in § 413.65, and immediately available to furnish

assistance and direction throughout the performance of the procedure. In addition, the definition of ''in the hospital'' as defined in proposed § 410.27(g), discussed above, would apply. This means that the supervisory physician may not be located in any entity such as a physician's office, co-located hospital, IDTF, or hospital-operated provider or supplier such as a SNF, ESRD facility, or HHA, or any other nonhospital space that may be co-located on the hospital's campus, as campus is defined in § 413.65(a)(2).

Similarly, in the case of direct physician supervision of diagnostic services furnished directly or under arrangement in an off-campus PBD, we are proposing that the definition of direct supervision would be the same as the current definition for therapeutic services provided in an off-campus PBD as discussed in section XII.D.3. of this proposed rule, meaning the physician must be present in the off-campus PBD, as defined in § 413.65 and immediately available to furnish assistance and direction throughout the performance of the procedure. As we discussed in the April 2000 OPPS final rule (65 FR 18524 through 18525) and the CY 2009 OPPS/ASC final rule with comment period (73 FR 68702 through 68704), we have long made the analogy of the PBD to the physician's office suite, as described in the definition of direct supervision in § 410.32(b)(3)(ii).

In addition to providing diagnostic services directly or under arrangement in the hospital, including provider-based departments of the hospital, a hospital may also send its outpatients to another entity, such as an IDTF, to furnish these services under arrangement for the hospital. For example, in the April 2000 OPPS final rule (65 FR 185440 through 185441), in a discussion of the hospital bundling rules, we discussed that an entity, like an IDTF, may be located in the main buildings of a hospital or on the hospital campus but operated independently of the hospital. In addition, these suppliers, providers, or other entities may be located elsewhere, not on hospital's main campus or other hospital property. These entities, like IDTFs and physicians' offices, may provide services to their own patients (not hospital outpatients) and to hospital outpatients under arrangements with the hospital. They follow the physician supervision requirements of the MPFS and § 410.32 when providing services to Medicare beneficiaries who are not hospital outpatients. For consistency, we are proposing for CY 2010 that all diagnostic services provided to hospital outpatients under arrangement in nonhospital entities, whether those entities are located on the main campus of the hospital or elsewhere, would also follow the requirements as described in § 410.32(b)(3)(i) through (iii). When hospitals contract with other entities to provide services under arrangement, the hospital must exercise professional responsibility over the arrangement for services, in accordance with the guidance provided in the section 10.3 of chapter 5 of the Medicare General Information, Eligibility and Entitlement Manual (Pub 100–1). This means that for the hospital to receive payment, it is responsible for ensuring that all applicable requirements in §§ 410.28 and 410.32 are met. In the case of hospital outpatient diagnostic services provided under arrangement at nonhospital locations, such as IDTFs, we believe that the term ''office suite'' used in § 410.32(b)(3)(ii) is directly applicable because these facilities usually also provide diagnostic services to their own patients and, therefore, would be able to apply the direct supervision requirement in § 410.32(b)(3)(ii) without further definition.

Physician assistants, nurse practitioners, clinical nurse specialists, and certified nurse-midwives who operate within the scope practice under State law may order and perform diagnostic tests, as discussed in § 410.32(a)(3) and corresponding manual guidance in section 80 of chapter 15 of the Medicare Benefit Policy Manual. However, this manual guidance and the regulation at § 410.32(b)(1) also state that diagnostic x-ray and other diagnostic tests must be furnished under the appropriate level of supervision by a physician as defined in section 1861(r) of the Act. Thus, physician assistants, nurse practitioners, clinical nurse specialists, and certified nurse-midwives may not function as supervisory physicians for the purposes of diagnostic tests. In keeping with these existing requirements, we are not proposing to allow physician assistants, nurse practitioners, clinical nurse specialists, and certified nurse-midwives to provide the supervision of diagnostic tests provided to hospital outpatients. Clinical psychologists may supervise only diagnostic psychological and neuropsychological testing services as described in an exception to the basic rule at § 410.32(b)(2)(iii) for diagnostic psychological and neuropsychological testing services, when these services are personally furnished by a clinical psychologist or an independently practicing psychologist or when they are furnished under the general supervision of a physician or clinical psychologist.

To reflect these proposed changes for the provision of direct supervision of diagnostic services provided to hospital outpatients in the regulations, we are proposing to revise existing § 410.28(e). First, we are proposing to specify that the provisions of proposed revised paragraph (e) apply to diagnostic services furnished by the hospital, directly or under arrangement, consistent with our proposal to apply the existing diagnostic services supervision requirement for PBDs to diagnostic services provided directly by the hospital or under arrangement. We would continue to specify that the definitions of general and personal physician supervision included in § 410.32(b)(3)(i) and (b)(3)(iii) apply to these levels of supervision of hospital outpatient diagnostic services. Furthermore, we are proposing to add new paragraph (e)(1) to § 410.28 to indicate that, for services furnished directly or under arrangement, in the hospital or in an on-campus department of a provider, as defined in § 413.65, direct supervision means that the physician must be present on the same campus, in the hospital or PBD of the hospital as defined in § 413.65, and immediately available to furnish assistance and direction throughout the performance of the procedure. We also would continue to provide that direct supervision does not mean that the physician must be in the room when the procedure is performed. As discussed above, we would apply the definition of ''in the hospital'' as proposed in § 410.27(g) of the regulations. In addition, we are proposing to add new paragraph (e)(2) to § 410.28 to reflect that, for the direct physician supervision of diagnostic services furnished directly or under arrangement in off-campus PBDs of hospitals, the physician must present in the off-campus PBD, as defined in § 413.65, and immediately available to furnish assistance and direction throughout the performance of the procedure. We would continue to provide that direct supervision does not mean that the physician must be in the room when the procedure is performed. Finally, we are proposing to add new paragraph (e)(3) to specify that for the direct supervision of hospital outpatient services provided under arrangement in physicians' offices and other nonhospital locations, the definition of direct supervision in § 410.32(b)(3)(ii) applies.

5. Summary of CY 2010 Physician Supervision Proposals

In summary, for CY 2010, we are proposing that nonphysician practitioners, defined for the purpose of § 410.27 of the regulations as clinical psychologists, physician assistants, nurse practitioners, clinical nurse specialists, and certified nurse-midwives, may directly supervise all hospital outpatient therapeutic services that they may perform themselves within their State scope of practice and hospital-granted privileges, provided that they meet all additional requirements, including any collaboration or supervision requirements as specified in §§ 410.71, 410.74, 410.75, 410.76, and 410.77. However, nonphysician practitioners may not provide the direct supervision of CR, ICR, and PR services, since we have also proposed in the CY 2010 MPFS proposed rule that the direct supervision of CR, ICR, and PR services must be furnished by a doctor of medicine or osteopathy, as specified in proposed §§ 410.47 and 410.49, respectively. We also are proposing to refine the definition of the direct supervision of hospital outpatient therapeutic services for those services provided in the hospital and in an on-campus PBD of the hospital. For services provided in the hospital and in an on-campus PBD of the hospital, direct supervision would mean that the physician or nonphysician practitioner must be present on the same campus, in the hospital or the on-campus PBD of the hospital or CAH, as defined in § 413.65, and immediately available to furnish assistance and direction throughout the performance of the procedure. We also are proposing to define ''in the hospital'' in new paragraph § 410.27(g) to mean areas in the main building(s) of a hospital or CAH that are under the ownership, financial, and administrative control of the hospital or CAH; that are operated as part of the hospital or CAH; and for which the hospital or CAH bills the services furnished under the hospital's or CAH's CCN. We are proposing no significant change to the definition or requirements for direct supervision of hospital outpatient therapeutic services provided in off-campus PBDs of a hospital or CAH other than to allow nonphysician practitioners to provide direct supervision for the services that they may perform in those locations.

For CY 2010, we are proposing to require that all hospital outpatient diagnostic services provided directly or under arrangement, whether provided in the hospital, in a PBD, or at a nonhospital location, follow the physician supervision requirements for individual tests as listed in the MPFS Relative Value File. The existing definitions of general and personal supervision as defined in § 410.32(b)(3)(i) and (iii) would also apply. For services furnished directly or under arrangement in the hospital or on-campus PBD, direct supervision would mean that the physician must be present on the same campus, in the hospital or on-campus PBD of the hospital, and immediately available to furnish assistance and direction throughout the performance of the procedure. For this purpose, the definition of ''in the hospital'', as proposed in § 410.27(g), would apply. For diagnostic services furnished directly or under arrangement off-campus in a PBD of the hospital, direct supervision would mean that the physician must be present in the off-campus PBD and immediately available to furnish assistance and direction throughout the performance of the procedures. For all hospital outpatient diagnostic services provided under arrangement in nonhospital locations, such as IDTFs and physicians' offices, the existing definition of direct supervision § 410.32(b)(3)(ii) would apply. We are proposing to revise §§ 410.27 and 410.28 of the regulations to reflect these changes as discussed under sections XII.D.3. and 4. of this proposed rule.

*E. Direct Referral for Observation Services*

Since CY 2003, hospitals have reported a Level II HCPCS code for Medicare billing purposes for a ''direct admission'' to a hospital for outpatient observation services. In section 290 of Chapter 4 of the Medicare Claims Processing Manual (Publication 100–4), we define a ''direct admission'' as the direct referral of a patient by a community physician to a hospital for observation services without an associated emergency room visit, hospital outpatient clinic visit, critical care service, or hospital outpatient surgical procedure (that is, a status indicator ''T'' procedure) on the day of the initiation of observation services. Since CY 2006, we have instructed hospitals to report a ''direct admission'' referred for observation services using HCPCS code G0379 (Direct admission of patient for hospital observation care) (70 FR 68688 through 68691).

Observation care is a hospital outpatient service that is reported using HCPCS code G0378 (Hospital observation services, per hour). Hospitals report outpatient observation services, which are commonly provided in association with a hospital clinic visit, emergency department visit, or other major service, on hospital outpatient claims, just like other outpatient services. Physicians order observation care, defined as clinically appropriate services, including ongoing short-term treatment, assessment, and reassessment furnished in order for the physician to determine whether the beneficiary will require further treatment as an inpatient or whether the beneficiary may be safely discharged from the hospital.

We have become aware that, because the word ''admission'' is generally used in reference to inpatient hospital care, our historical use of the phrase ''direct admission'' in the code descriptor for HCPCS code G0379 and the use of the phrase ''observation status'' in the Medicare Claims Processing Manual (Chapter 4, section 290) and the Medicare Benefit Policy Manual (Chapter 6, section 20) may be contributing to confusion for hospitals and beneficiaries related to a beneficiary's status as an inpatient or an outpatient when he or she is receiving observation services. For Medicare payment purposes, there is no patient status termed ''observation status.'' Hospitals may only bill for items and services furnished to inpatients, outpatients, or nonpatients. We believe that using terminology such as ''observation status'' or ''admission to observation'' may be confusing for physicians, hospitals, and beneficiaries. Therefore, for CY 2010, we are proposing to modify the code descriptor for HCPCS code G0379 to remove the reference to the word ''admission'' and to replace it with ''referral.'' The proposed long code descriptor for HCPCS code G0379 would be ''Direct referral for hospital observation care.'' We are proposing this change to more accurately reflect that the physician in the community has referred the beneficiary to the hospital for observation services as a hospital outpatient. In addition to the proposed CY 2010 change to the code descriptor for HCPCS code G0379 in this proposed rule, we plan to modify the Medicare Claims Processing Manual and the Medicare Benefit Policy Manual to remove references related to ''admission'' for observation services or ''observation status.'' We are not proposing to change the status indicator or payment methodology for HCPCS code G0379 for CY 2010. Instead, we are proposing to continue the payment policy that was finalized for the CY 2009 OPPS (73 FR 68554). HCPCS code G0379 is assigned status indicator ''Q3,''