# EXHIBIT 14

**From:** Baker, Marty
**Sent:** Friday, January 29, 2010 10:46 AM
**To:** Fritz, Julianne
**Subject:** FW: Physician Supervision Requirements
**Attachments:** HOPPS Final 2010 highlighted for Supervision Info.pdf; Baker, Marty.vcf

Don't kill me for loading up your computer. You can read the portion and then delete.

**Marty Baker, RTT**
Director of Rad Therapy Services
Office: 970-392-2077 Pgr: 970-350-3102
email:marty.baker@bannerhealth.com

---

**From:** Eva Huddleston [mailto:EHuddleston@revenuecycleinc.com]
**Sent:** Friday, January 29, 2010 10:06 AM
**To:** Baker, Marty
**Subject:** Physician Supervision Requirements

The physician supervision information states on page 931 and sections of it are highlighted.

**Eva Huddleston, RT (R)(T)**
Business Development Consultant

1817 West Braker Lane
Building F, Suite 200
Austin, TX 78758
tel: 512.583.2003 x137
fax: 512.583.2002
cell: 512-657-8744
www.revenuecycleinc.com

The information contained in this e-mail including any attachments may constitute Revenue Cycle Incorporated propriety information that is subject to Non-Disclosure Agreement and cannot be disclosed to any other party without the express consent of Revenue Cycle Incorporated. If you are neither the intended recipient of this e-mail nor responsible for delivering this e-mail to the intended recipient, note that any dissemination, distribution, copying, or retention of this e-mail is prohibited. If you believe you have received this e-mail in error, we request that you notify the sender by return e-mail or by calling the office at 512-583-2000 and then delete this e-mail and any return email immediately.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Centers for Medicare & Medicaid Services**

**42 CFR Parts 410, 416, and 419**

**[CMS-1414-FC]**

**RIN 0938-AP41**

# Medicare Program: Changes to the Hospital Outpatient Prospective Payment System and CY 2010 Payment Rates; Changes to the Ambulatory Surgical Center Payment System and CY 2010 Payment Rates

**AGENCY:** Centers for Medicare & Medicaid Services (CMS), HHS.

**ACTION:** Final rule with comment period.

**SUMMARY:** This final rule with comment period revises the Medicare hospital outpatient prospective payment system (OPPS) to implement applicable statutory requirements and changes arising from our continuing experience with this system. In this final rule with comment period, we describe the changes to the amounts and factors used to determine the payment rates for Medicare hospital outpatient services paid under the prospective payment system. These changes are applicable to services furnished on or after January 1, 2010.

In addition, this final rule with comment period updates the revised Medicare ambulatory surgical center (ASC) payment system to implement applicable statutory requirements and changes arising from our continuing experience with this system. In this final rule with comment period, we set forth the applicable relative payment weights and amounts for services furnished in ASCs, specific HCPCS codes to which these changes will apply, and other pertinent ratesetting information for the CY 2010 ASC

D. Physician Supervision

1. Background

In the CY 2009 OPPS/ASC proposed rule and final rule with comment period (73 FR 41518 through 41519 and 73 FR 68702 through 68704, respectively), we provided a restatement and clarification of the requirements for physician supervision of hospital outpatient diagnostic and therapeutic services that were set forth in the April 2000 OPPS final rule with comment period (65 FR 18524 through 18526). As we stated in those rules, section 1861(s)(2)(C) of the Act authorizes payment for diagnostic services that are furnished to a hospital outpatient for the purpose of diagnostic study. We have further defined the requirements for diagnostic services furnished to hospital outpatients, including requirements for physician supervision of diagnostic services, in §§410.28 and 410.32 of our regulations. Section 410.28(e) states that Medicare Part B makes payment for diagnostic services furnished at provider-based departments (PBDs) of hospitals "only when the diagnostic services are furnished under the appropriate level of physician supervision specified by CMS in accordance with the definitions in §§410.32(b)(3)(i), (b)(3)(ii), and (b)(3)(iii)." In addition, in the April 2000 OPPS final rule with comment period (65 FR 18526), we stated that our model for the requirement was the requirement for physician supervision of diagnostic tests payable under the MPFS that was set forth in the CY 1998 MPFS final rule (62 FR 59048). In 2000, we also explained with respect to the supervision requirements for individual diagnostic tests that we intended to instruct hospitals and fiscal intermediaries to use the MPFS as a guide pending issuance of updated requirements. For diagnostic services not listed in the

In considering the questions and concerns that had been raised over the first 6 months of CY 2009, we identified three areas within our existing hospital outpatient physician supervision policies for which we stated our belief that that proposals of policy changes were appropriate for CY 2010, two related to the supervision of therapeutic services and one related to the supervision of diagnostic services. Our specific CY 2010 proposals, including the proposed changes to our regulations to conform to these proposals, the public comments on the proposals and our responses, and our final CY 2010 supervision policies for hospital outpatient therapeutic and diagnostic services are discussed below.

3. Policies for Direct Supervision of Hospital and CAH Outpatient Therapeutic Services

In the CY 2010 OPPS/ASC proposed rule (74 FR 35365), we proposed that nonphysician practitioners, specifically physician assistants, nurse practitioners, clinical nurse specialists, and certified nurse-midwives, may directly supervise all hospital outpatient therapeutic services that they may perform themselves in accordance with their State law and scope of practice and hospital-granted privileges, provided that they continue to meet all additional requirements, including any collaboration or supervision requirements as specified in the regulations at §§410.74 through 410.77. Clinical psychologists may already provide direct supervision, as we mentioned in the CY 2009 OPPS/ASC final rule with comment period (73 FR 68703 through 68704) because they, along with physicians (as defined in section 1861(r)(1) of the Act), may be responsible for the care of a hospital patient, as discussed in the Medicare conditions of participation for hospitals in §482.12(c) of our regulations. We stated our belief that allowing certain

nonphysician practitioners (nurse practitioners, physician assistants. clinical nurse specialists, and certified nurse-midwives) to provide direct supervision of certain hospital outpatient therapeutic services is appropriate because, even though these practitioners are not physicians, they are recognized in statute and regulation as providing services that are analogous to physicians' services. Medicare Part B covers the professional services of clinical psychologists, nurse practitioners, physician assistants, clinical nurse specialists, and certified nurse-midwives when the services would be physicians' services if furnished by a physician (a doctor of medicine or osteopathy, as set forth in section 1861(r)(1) of the Act). Their services are described in §§410.71(a), 410.74(a), 410.75(a) and (c), 410.76(a) and (c), and 410.77(a), respectively, of our regulations. Medicare also makes payment for services provided incident to the services of these nonphysician practitioners as specified in §§410.71(a)(2)(iii), 410.74(b), 410.75(d), 410.76(d), and 410.77(c), respectively.

We also noted that section 1861(r) of the Act does not include clinical psychologists, nurse practitioners, physician assistants, clinical nurse specialists, or certified nurse-midwives in the definition of a physician. However, as previously mentioned, the conditions of participation for hospitals at §482.12(c)(1)(vi) of our regulations do include clinical psychologists as practitioners who may be responsible for the care of Medicare patients. The conditions of participation at §§482.12(c)(1)(i) through (c)(1)(vi) require that every Medicare hospital patient be under the care of a doctor of medicine or osteopathy, a doctor of dental surgery or dental medicine, a doctor of podiatric medicine, a doctor of optometry, a chiropractor, or a clinical psychologist;

each practicing in accordance with the Act, Federal regulations, and State law. Further, §482.12(c)(4) of our regulations requires that a doctor of medicine or osteopathy must be responsible for the care of each Medicare patient with respect to any medical or psychiatric condition that is present on admission or develops during hospitalization and is not specifically within the scope of practice of one of the other practitioners listed in §482.12(c)(1)(ii) through (c)(1)(vi). Also, as permitted by State law, certain nonphysician practitioners may admit individuals to a hospital or CAH and order and provide therapeutic services to them. Since 1998, we have allowed payment for the professional services of these nonphysician practitioners in addition to payment for physicians' services when the nonphysician practitioner's professional services are furnished in an HOPD. We also have made outpatient facility payments to the hospital for those facility services provided incident to the professional services of these nonphysician practitioners (63 FR 58873). In addition, the conditions of participation for CAHs at §485.631 require that a doctor of medicine or osteopathy, a nurse practitioner, a physician assistant, or a clinical nurse specialist be available to furnish patient care services at all times the CAH operates. A doctor of medicine or osteopathy must be present for sufficient periods of time to provide medical direction, medical care services, consultation and supervision as described in the conditions of participation and must be available through radio or telephone contact for assistance with medical emergencies or patient referral.

Taking into consideration the totality of these existing conditions and requirements, we proposed to revise §410.27 of the regulations to make clear that

Medicare Part B payment may be made for hospital outpatient services and supplies furnished incident to the services of a physician, clinical psychologist, nurse practitioner, physician assistant, clinical nurse specialist, or certified nurse-midwife service; and to add that, effective January 1, 2010, clinical psychologists, nurse practitioners, physician assistants, clinical nurse specialists, or certified nurse-midwives may provide direct supervision for hospital outpatient therapeutic services that they may perform themselves under State law and within their scope of practice and hospital-granted privileges in the context of the existing requirements in §§410.71, 410.74, 410.75, 410.76, and 410.77. However, we note that, in the CY 2010 OPPS/ASC proposed rule (74 FR 35366), we proposed that the direct supervision of CR, ICR, and PR services must be furnished by a doctor of medicine or osteopathy, as specified in the proposed coverage policy and regulations for CR, ICR, and PR services. We also noted that Medicare does not make a payment to a physician under the MPFS when the physician solely provides the direct physician supervision of hospital outpatient therapeutic services but furnishes no direct professional services to a patient. This also would apply to the supervision of hospital outpatient therapeutic services provided by nonphysician practitioners.

We also indicated that we did not propose to modify requirements relating to physician supervision or collaboration for these nonphysician practitioners. In regard to the supervision of physician assistants, §410.74(a)(iv) requires that physician assistants perform services under the general supervision of a physician. We have further defined this general supervision in section 190(c) of Chapter 15 of the Medicare Benefit Policy Manual. Section 190(c) states that "the PA's physician supervisor (or a physician

designated by the supervising physician or employer as provided under State law or regulations) is primarily responsible for the overall direction and management of the physician assistant's professional activities and for assuring that the services provided are medically appropriate for the patient. The physician supervisor (or physician designee) need not be physically present with the physician assistant when a service is being furnished to a patient and may be contacted by telephone, if necessary, unless State law or regulations require otherwise."

The requirements for collaboration of nurse practitioners are defined in §410.75(c)(3) of the regulations and Section 200(D) of Chapter 15 of the Medicare Benefit Policy Manual. The requirements for clinical nurse specialists are located in §410.76(c)(3) of the regulations and Section 210(D) of Chapter 15 of the Medicare Benefit Policy Manual. These sections define collaboration as a process in which the nurse practitioner or the clinical nurse specialist works with one or more physicians (doctors of medicine or osteopathy) to deliver health care services within the scope of the practitioner's expertise, with medical direction and appropriate supervision as required by the law of the State in which the services are being furnished. In the absence of more stringent State law requirements governing collaboration, collaboration is to be evidenced by the nurse practitioner or the clinical nurse specialist documenting his or her scope of practice and indicating the relationships that he or she has with physicians to deal with issues outside their scope of practice. The collaborating physician does not need to be present with the nurse practitioner or clinical nurse specialist when the services are

furnished or to make an independent evaluation of each patient who is seen by the nurse practitioner or clinical nurse specialist.

In addition, for CY 2010, we proposed to refine the definition of direct supervision of hospital outpatient therapeutic services for those services furnished in a hospital and in on-campus PBDs of a hospital. For services furnished on a hospital's main campus, we proposed that direct supervision means that the supervisory physician or nonphysician practitioner must be present on the same campus, in the hospital or the on-campus PBD of the hospital as defined in §413.65, and immediately available to furnish assistance and direction throughout the performance of the procedure. We proposed to add a new paragraph (a)(1)(iv)(A) to §410.27 to reflect this requirement. We also proposed to define "in the hospital" in new paragraph §410.27(g) as meaning areas in the main building(s) of a hospital that are under the ownership, financial, and administrative control of the hospital; that are operated as part of the hospital; and for which the hospital bills the services furnished under the hospital's CCN. Therefore, to be present in the hospital or the on-campus PBD of the hospital and immediately available requires that the physician or nonphysician practitioner must be physically present in areas on the campus of the hospital that are part of the hospital, including on-campus PBDs, that are operated by the hospital, and where services furnished in those areas are billed under the hospital's CCN. Under the CY 2010 proposal, the supervisory physician or nonphysician practitioner of the hospital's outpatient therapeutic services may not be located in any other entity, such as a physician's office, IDTF, co-located hospital, or hospital-operated provider or supplier such as a skilled nursing facility (SNF), end-stage

renal disease (ESRD) facility, or home health agency (HHA), or any other nonhospital space that may be co-located on the hospital's campus, as "hospital campus" is defined in §413.65(a)(2) of the regulations.

We stated that while we have not previously specified in policy guidance a definition for the term "immediately available" with respect to services provided in areas of the hospital on its main campus that are not PBDs, we believe that the existing definitions of direct supervision in §§410.27(f) and 410.32(b)(3)(ii) that apply to PBDs and physician office settings indicate that the physician must be physically present in order to provide direct supervision of services. With regard to services provided in PBDs of hospitals or physicians' offices, these regulations specify that the physician must be present in the PBD or in the office suite, respectively. Thus, we have previously established that direct supervision requires immediate physical presence. While we also have not specifically defined the word "immediate" for direct supervision in terms of time or distance, we noted that the general definition of the word means "without interval of time." Therefore, the supervisory physician or nonphysician practitioner could not be immediately available while, for example, performing another procedure or service that he or she could not interrupt. In addition, we stated that we understand that advances in medical technology, changes in the patterns of health care delivery, and changes in the organizational structure of hospitals have led to the development of extensive hospital campuses, sometimes spanning several city blocks. However, in the context of direct physician or nonphysician practitioner supervision, we believed that it would be neither appropriate nor "immediate" for the supervisory physician or nonphysician practitioner to

be so physically far away on the main campus from the location where hospital outpatient services are being furnished that he or she could not intervene right away. As we stated in the CY 2009 OPPS/ASC final rule with comment period (73 FR 68703), if there were problems with outpatient care in a hospital or in an on-campus PBD where the requirement for direct supervision was not met, we would consider that to be a quality concern. Appropriate supervision is a key aspect of the delivery of safe and high quality hospital outpatient services that are paid under Medicare.

In addition, the definition of direct supervision in existing §410.27(f) has included and would continue to specify under our CY 2010 proposal that the physician or nonphysician practitioner must be available to furnish assistance and direction throughout the performance of the procedure. This means that the physician or nonphysician practitioner must be prepared to step in and perform the service, not just to respond to an emergency. This includes the ability to take over performance of a procedure and, as appropriate to both the supervisory physician or nonphysician practitioner and the patient, to change a procedure or the course of treatment being provided to a particular patient. We originally stated in the April 2000 OPPS final rule (65 FR 18525) that the physician does not "necessarily need to be of the same specialty as the procedure or service that is being performed." We also have stated in manual guidance that hospital medical staff that supervises the services "need not be in the same department as the ordering physician" (Section 20.5.1 of Chapter 6 of the Medicare Benefits Policy Manual). However, in order to furnish appropriate assistance and direction for any given service or procedure, we believed the supervisory physician or nonphysician practitioner must have,

within his or her State scope of practice and hospital-granted privileges, the ability to perform the service or procedure.

We did not propose significant changes to the definition or requirements for direct supervision in off-campus PBDs of the hospital other than to allow nonphysician practitioners to provide direct supervision in these PBDs for the services that these practitioners may perform. With respect to off-campus PBDs of hospitals, direct supervision would continue to mean that the physician or nonphysician practitioner must be in the off-campus PBD and immediately available to furnish assistance and direction throughout the performance of the procedure. We proposed to revise existing §410.27(f) and include the revised language as §410.27(a)(1)(iv) and make a technical change in §410.27 (a)(i)(iv)(B) to clarify the current language by removing "present and on the premises of the location" and replacing it with "present in the off-campus provider-based department." While the meaning of this provision is the same, we believed that this proposed modification to the language defining direct supervision is more consistent with the language of the other proposed changes to §410.27. As we clarified in the CY 2009 OPPS/ASC final rule with comment period (73 FR 68704), the supervisory physician for hospital outpatient therapeutic services must be in each PBD of a particular off-campus outpatient location, but that does not mean that the physician must be in the room when the procedure is performed. In the April 2000 OPPS final rule (65 FR 18525), we responded to public commenters who asserted that requiring a physician to be onsite at a PBD throughout the performance of all "incident to" (therapeutic) services would be burdensome and costly for hospitals where there are a limited number of physicians

available to provide coverage, particularly in rural settings. We disagreed then that the supervision requirement was unnecessary and burdensome because hospitals, prior to 2000, were already required to "meet a direct supervision of 'incident to' services requirement that is unrelated to the provider-based rules. That is, we require that hospital services and supplies furnished to outpatients that are incident to physician services be furnished on a physician's order by hospital personnel and under a physician's supervision" (Section 3112.4 of the Medicare Intermediary Manual). In addition, when we discussed the "assumption" or expectation that the physician supervision requirement is met on the hospital's main campus in the April 2000 OPPS final rule (65 FR 18525), we specifically did not extend that assumption to off-campus departments of the hospital. We stated that we continue to believe that it would be inappropriate to allow one physician or nonphysician practitioner to supervise all services being provided in all PBDs at a particular off-campus outpatient location. Since first allowing off-campus sites to be considered PBDs of hospitals, we have placed particular emphasis on ensuring the quality and safety of the services provided in these locations, which can be many miles from the main hospital campus, through both additional provider-based requirements in §413.65(e) and our emphasis on direct physician supervision under existing §410.27(f). In addition, because the physician or nonphysician practitioner must be immediately available and have, within his or her State scope of practice and hospital-granted privileges, the ability to perform the services being supervised, we believed it would be highly unlikely that one physician or nonphysician practitioner would be both immediately available at all times that therapeutic services are being provided and would

have the knowledge and ability to adequately supervise all services being performed at once in multiple off-campus PBDs at a single location.

To reflect these proposed changes for the provision of direct supervision of therapeutic services provided to hospital outpatients in our regulations, we proposed to revise the language of the existing §410.27(f) and include the revised language in a new paragraph (a)(1)(iv) of §410.27 to specify that direct physician or nonphysician practitioner supervision of hospital outpatient therapeutic services is required for Medicare Part B payment. We proposed to add a new paragraph (a)(1)(iv)(A) to §410.27 to state that, for services provided on the hospital's main campus, direct supervision means that the physician or nonphysician practitioner must be present on the same campus, in the hospital or on-campus PBD of the hospital, as defined in §413.65, and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician or nonphysician practitioner must be in the room when the procedure is performed. We also proposed to add new paragraph (a)(1)(iv)(B) to §410.27 to reflect that, for off-campus PBDs of hospitals, the physician or nonphysician practitioner must be present in the off-campus PBD, as defined in §413.65, and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician or nonphysician practitioner must be in the room when the procedure is performed. As we stated previously, the proposed language of paragraph (a)(1)(iv)(B) is similar to existing §410.27(f) that we proposed to revise. Furthermore, we proposed to make a technical change to clarify the language in this paragraph to remove "present and on the premises of the location" and replace it with

"present in the off-campus provider-based department." Also, in the CY 2010 OPPS/ASC proposed rule (74 FR 35368) and as proposed in the CY 2010 MPFS proposed rule (74 FR 33674), we proposed that the direct supervision of CR, ICR, and PR services must be furnished by a doctor of medicine or osteopathy, as specified in proposed §§410.47 and 410.49, respectively. We proposed to include this exception in proposed paragraphs (a)(1)(iv)(A) and (a)(1)(iv)(B) in §410.27. In addition, we proposed to add a new paragraph (f) to §410.27 to define a nonphysician practitioner for purposes of §410.27 as a clinical psychologist, a physician assistant, a nurse practitioner, a clinical nurse specialist, or a certified nurse-midwife. Proposed new §410.27(a)(1)(iv) would provide that these nonphysician practitioners may directly supervise services that they could furnish themselves in accordance with State law and within their scope of practice and hospital-granted privileges, as long as all requirements for coverage, including the physician supervision or collaboration for these nonphysician practitioners, are met in accordance with §§410.71, 410.74, 410.75, 410.76, and 410.77, respectively. We also proposed to define "in the hospital" in new paragraph §410.27(g) to mean areas in the main building(s) of the hospital that are under the ownership, financial, and administrative control of the hospital; that are operated as part of the hospital; and for which the hospital bills the services furnished under the hospital's CCN. Finally, we proposed to make a technical correction to the title of §410.27 to read, "Outpatient hospital or CAH services and supplies incident to a physician service: Conditions" to clarify in the title that the requirements for payment of hospital outpatient therapeutic services incident to a physician or nonphysician practitioner service in that section apply

to both hospitals and CAHs. Similarly, we proposed to include the phrase "hospital or CAH" throughout the text of §410.27 wherever the text currently refers just to "hospital." The omission of the term "CAH" from §410.27 was a drafting oversight. However, we have applied the requirements of §410.27, including "incident to" requirements such as the site-of-service requirement and physician supervision, as well as other hospital policies, such as the bundling rules, to CAHs, just as we have in 42 CFR Part 409 (Subparts A through D and F through H) and §410.28 and §413.65 of the regulations where CAHs are explicitly mentioned.

Comment: All commenters who addressed the proposed direct supervision by nonphysician practitioners (specifically physician assistants, nurse practitioners, clinical nurse specialists, and certified nurse-midwives) supported the proposal. Some commenters also requested that CMS include licensed clinical social workers in the list of nonphysician practitioners who are permitted to supervise outpatient psychiatric services and partial hospitalization program (PHP) services. Other commenters requested that pharmacists be permitted to supervise medication therapy management services and that specialty certified registered nurses, such as wound care nurses, also be able to provide the direct supervision of hospital outpatient therapeutic services. One commenter stated that because physicians do not furnish nursing services or the services of other ancillary health professionals, they should not be expected to supervise those services and it would be inappropriate to expect physicians to accept responsibility for care that they have not personally furnished.

Response: We appreciate the commenters' support for our proposal to revise §410.27 of the regulations to allow certain nonphysician practitioners to directly supervise services that they may perform themselves under their State scope of practice and hospital-granted privileges in the context of the existing requirements in §§410.71, 410.74, 410.75, 410.76 and 410.77. We agree with the commenters that we should add licensed clinical social workers to the group of nonphysician practitioners permitted to provide direct supervision for hospital outpatient therapeutic services. We believe this is appropriate because licensed clinical social workers are recognized under the Medicare program as independent practitioners who may furnish services for the diagnosis and treatment of mental illness that they are legally authorized to perform under State law of the State in which the services are performed. We further agree with the commenters that the inclusion of licensed clinical social workers would help to ensure continued access to mental health services, especially in rural hospitals and CAHs where other types of practitioners may be less available. We emphasize though, that licensed clinical social workers, like other nonphysician practitioners, may only supervise those therapeutic services within their own scope of practice and hospital-granted privileges. We are not expanding the regulations further to allow supervision by pharmacists, registered nurses, or other medical professionals. These professionals are not recognized in the Social Security Act as providing services that would be physicians' services if performed by a physician and they may not enroll in Medicare as independent practitioners and receive payment directly for their professional services.

With regard to the comments about physician scope of practice and supervision, we remind hospitals that the only statutory basis for payment of hospital outpatient therapeutic services is incident to the services of a physician, meaning the services are ordered by the physician or qualified practitioner and furnished as an integral though incidental part of his or her services. It follows, then, that a qualified physician or nonphysician practitioner would supervise the provision of those services to ensure the service or procedure is being furnished appropriately.

Comment: One commenter supported the proposed requirements for the direct physician supervision of CR programs and requested that CMS confirm that the proposed definition of "direct supervision" that would apply to therapeutic services in the HOPD would also apply to CR services. However, many commenters, especially CAHs and rural hospitals, asked that CMS permit physician assistants, nurse practitioners, clinical nurse specialists, and certified nurse-midwives who are functioning within their State licensure and scope of practice and who are permitted to supervise the services under the hospital or CAH bylaws to supervise CR, ICR, and PR services.

Response: As discussed in detail in sections sections II.G.8. and II.G.9. of the CY 2010 MPFS final rule with comment period and in section XII.B.4. of this final rule with comment period, section 144(a)(1) of Pub. L. 100-275 imposes strict requirements for the direct physician supervision of PR, CR, and ICR services and gives us no flexibility to modify the requirement. Therefore, we are finalizing our CY 2010 proposal, without modification, to require the direct physician supervision (by a doctor of medicine or a doctor of osteopathy) of PR, CR, and ICR services that are furnished to hospital