Exhibit No. 84
Deponent: Fritz
Date: 7/17/15 RPR: AR
Mile High Court Reporting

# EXHIBIT 16

**From:** Baker, Scott
**Sent:** Saturday, May 21, 2011 11:20 AM
**To:** McCabe, Mary
**Subject:** FW: ASTRO Update on Physician Supervision
**Attachments:** ASTRO Super Article Feb 2010.pdf

FYI

Scott Baker
Vice President of Operations, BMG Western Region
Office # 970-506-6563

---

**From:** Dreiling, Mary
**Sent:** Friday, May 13, 2011 2:32 PM
**To:** McNally, Pete
**Cc:** Baker, Scott; Lewis, Michael
**Subject:** FW: ASTRO Update on Physician Supervision

Mary Dreiling

Operations Director
Banner Medical Group Specialists
Phone 970-350-6225 Fax 970-378-4687
Mary.Dreiling@BannerHealth.com

---

**From:** Ron DiGiaimo [mailto:ron@revenuecycleinc.com]
**Sent:** Friday, April 29, 2011 5:54 AM
**To:** Dreiling, Mary
**Subject:** ASTRO Update on Physician Supervision

Hi Mary - I will be sending you several emails on supervision, hope they help. Ron

**Ron DiGiaimo, MBA**
President and CEO

1817 West Braker Lane
Building F, Suite 200
Austin, TX 78758
tel: 512.583.2000
fax: 512.583.2001
cell: 512.971.7724

www.revenuecycleinc.com

The information contained in this e-mail including any attachments may constitute Revenue Cycle Incorporated propriety information that is subject to Non-Disclosure Agreement and cannot be disclosed to any other party without the express consent of Revenue Cycle Incorporated. If you are neither the intended recipient of this e-mail nor responsible for delivering this e-mail to the intended recipient, note that any dissemination, distribution, copying, or retention of this e-mail is prohibited. If you believe you have received this e-mail in error, we request that you notify the sender by return e-mail or by calling the office at 512-583-2000 and then delete this e-mail and any return email immediately.

Medicare's Physician Supervision Requirements
Updated February 2010

## Medicare's Physician Supervision Requirements

The Centers for Medicare and Medicaid Services or CMS (formerly known as the Health Care Financing Administration) is responsible for administering the Medicare program. Over the years, Medicare's policies related to physician supervision requirements have been issued through regulations or through instructions to Medicare carriers in various manuals.

The CMS policies on physician supervision requirements that are pertinent to radiation oncologists are focused on five specific benefits to which Medicare beneficiaries are entitled by law (Title XVIII of the Social Security Act). The five benefits, the statutory language and the section of the Social Security Act in which they appear are listed below.

1. **"Incident To" Services in an Outpatient Hospital Setting** (Section 1861(s)(2)(B));

2. **Radiation Therapy Services in an Office or Free Standing Radiation Therapy Center** (Section 1861(s)(3));

3. **Diagnostic Tests in an Office or Free Standing Radiation Therapy Center** (Section 1861(s)(3));

4. **Diagnostic Tests in an Outpatient Hospital Setting** (Section 1861(s)(2)(C)); and

5. **"Incident To" Services in an Office or Free Standing Radiation Therapy Center** (Section 1861(s)(2)(A)).

In the following sections, the supervision requirements for these five benefit categories are summarized and the implications for radiation oncologists, who are the supervising physicians, are discussed. This document uses the term "physician" throughout but the regulations also permit a "nonphysician practitioner" to provide supervision if the service in question is within the individual's State scope of practice the individual has been granted privileges by the hospital to perform the service. This paper includes a summary of the Federal laws and regulations as cited in the document.

### 1. Physician Supervision of "Incident to" Services in an Outpatient Hospital Setting

Hospitals provide two distinct types of services to outpatients: services that are diagnostic in nature and other services that aid the physician in the treatment of a patient. Therapeutic services are those services and supplies (including the use of hospital facilities) which are "incident to" the services of physicians in the treatment of patients. Such services include radiation therapy, clinic services and emergency room services.

To be covered as incident to physicians' services, the services and supplies must be furnished on a physician's order by hospital personnel and under a physician's supervision. A hospital service or supply would not be considered incident to a physician's service if the attending physician merely wrote an order for the services or supplies and referred the patient to the hospital without being involved in the management of that course of treatment.

There is no requirement that the physician who orders the hospital services be directly connected with the department that provides the services.

Hospital outpatient therapeutic services furnished in a hospital and in on-campus provider based departments (PBDs) (e.g., a facility that is not physically located within or connected to the hospital) of a hospital have a minimum requirement of direct supervision. In order to meet that direct supervision requirement the supervising physician or nonphysician practitioner must be present on the same hospital campus (including a physician's office, an on-campus SNF, RHC, or other nonhospital space) and immediately available to furnish assistance and direction throughout the performance of the procedure. The physician need not be in the same room, but must be in the area and immediately available to provide assistance and direction throughout the time the procedure is being performed. CMS has not specifically defined "immediate" in terms of distance but has stated that the supervisory physician or nonphysician practitioner should not be so physically far away on the main campus from the location where hospital outpatient services are being furnished that he/she could not intervene right away.

The supervising physician or nonphysician practitioner must also be a person who is clinically appropriate to supervise the services or procedures. More specifically, the current CMS regulations (410.27(f)) state that the physician or nonphysician practitioner must be available to furnish assistance and direction throughout the performance of the procedure. This means that the physician or nonphysician practitioner must be prepared to step in and perform the service, not just respond to an emergency. The supervising physician does not necessarily need to be of the same specialty as the procedure or service that is being performed or from the same department as the ordering physician. However, the supervisory physician or nonphysician practitioner must have within his or her State scope of practice and hospital-granted privileges, the ability to perform the service or procedure.

So for example, if radiation therapy services were being provided in a hospital outpatient department and the radiation oncologist who was supervising those therapeutic services left the hospital campus, a qualified physician or physician practitioner would need to be immediately available to supervise the procedures. If there is no qualified supervising physician immediately available, no radiation therapy services provided during his/her absence can be covered by Medicare. The services covered under this benefit also include materials and services of technicians.

Services furnished at PBDs must be rendered under the direct supervision of a physician. The requirement for direct supervision in a department of a hospital that has provider-based status applies to both on-campus and off-campus departments of the hospital.

For off-campus PBDs of hospitals, direct supervision would continue to mean that the physician or nonphysician practitioner must be present in the off-campus PBD and immediately available to furnish assistance and direction throughout the performance of the procedure.

In addition, it is inappropriate to allow one physician or nonphysician practitioner to supervise all services being provided in all PBDs at a particular off campus remote location. It would be highly unlikely that one physician or nonphysician practitioner would be both immediately available at all times that therapeutic services are being provided and would have the knowledge and ability to adequately supervise all services being performed at once in multiple off-campus PBDs.

Finally, CMS defines "in the hospital" to mean areas in the main building(s) of the hospital that are under the ownership, financial, and administrative control of the hospital; that are operated as part of the hospital; and for which the hospital bills the services furnished under the hospital's CCN. (410.27(g))

**2. Physician Supervision of Radiation Therapy Services in an Office or Free-Standing Radiation Therapy Center**

Radiation therapy services (X-ray, radium, and radioactive isotope therapy) furnished in an office or free-standing radiation therapy center have their own benefit category in Medicare. These radiation therapy services when furnished in an office or free-standing radiation therapy center require "direct personal supervision" by a physician. The physician need not be in the same room, but must be in the area and immediately available to provide assistance and direction throughout the time the procedure is being performed. Therefore, if the supervising physician leaves the office or the freestanding radiation therapy center, any radiation therapy services provided during his/her absence cannot be covered by Medicare. The services covered under this benefit also include materials and services of technicians.

Unfortunately, similar terms are used to describe the supervision requirements under the various benefits. As a result, the terms are often misunderstood. For example, the term "direct supervision" is used for the "incident to" and diagnostic test benefits and the term "personal supervision" is used for the diagnostic test benefit. In the case of the radiation therapy benefit, the term "direct personal supervision" is used but its definition is similar to the definition of "direct supervision" under the "incident to" and diagnostic test benefits.

As described above in section 1. Physician Supervision of "Incident to" Services in an Outpatient Hospital Setting, CMS has indicated that the supervising physician or nonphysician practitioner must also be a person who is "clinically appropriate" to supervise the services or procedures. The concept of "clinically appropriate" as described above in section 1. is not specifically addressed in CMS regulations or manual instruction for physician supervision of radiation therapy services in an office or free-standing radiation therapy center.

However, in the discussion of "incident to" services in an outpatient hospital setting in the final rule, CMS states:

> "We believe it is inappropriate for a supervisory physician or nonphysician practitioner to be responsible for patients, hospital staff, and services that are outside the scope of their knowledge, skills, licensure, or hospital-granted privileges. This interpretation of the previously codified language is consistent with our longstanding application of direct supervision across settings in terms of the physical presence of the physician and what it means to "furnish assistance and direction throughout the performance of the procedure." We do not believe that allowing a supervisor to be responsible for emergencies only would satisfy the standard to "furnish assistance and direction throughout the performance of the procedure" as the language has historically been interpreted for physicians' offices and PBDs. We disagree with commenters who stated that the historical intent of direct supervision has been for a supervising physician to provide guidance and direction without expecting that professional to be able to perform the service or procedure and that performance of the procedure applies only to personal supervision. It would be unreasonable to think that a physician or nonphysician practitioner could

competently assist and direct a procedure for which they do not have sufficient knowledge and skills to perform or redirect the procedure or service."

In light of these statements, it is ASTRO's opinion that CMS is likely to apply the requirements outlined above for "incident to" services in an outpatient hospital setting to radiation therapy services provided in an office setting. We note that the outpatient PPS final rule revised 42 C.F.R. 410.27(a)(1)(iv)(A) to define the term "direct supervision" to mean that the supervising physician is "immediately available to furnish assistance and direction throughout the performance of the procedure." This essentially tracks the language applicable in the office setting, as set forth in Chapter 15, Section 90 of the Medicare Benefit Policy Manual, which states that the supervising physician must be "immediately available to provide assistance and direction throughout the time the procedure is being performed." Moreover, as explained above, CMS stated that the position on direct supervision in the outpatient PPS rule "is consistent with our longstanding application of direct supervision across settings in terms of the physical presence of the physician and what it means to 'furnish assistance and direction throughout the performance of the procedure.'"

A separate charge for the services of a physicist in an office or freestanding radiation therapy center is not recognized unless such services are covered under the "incident to" provision (see section 5 below). The incident to provision may also be extended to include all necessary and appropriate services supplied by a physicist assisting a radiologist when the physicist is in the physician's employ and working under his or her direct supervision.

### 3. Physician Supervision Requirements for Diagnostic Tests in an Office or Free-Standing Radiation Therapy Center

The physician supervision requirements described below apply to the technical component of diagnostic tests performed in physicians' offices or freestanding radiation therapy centers. Nearly 1000 services (CPT® or HCPCS codes) have been identified by Medicare as diagnostic tests that are subject to these supervision requirements. All the IGRT codes are considered diagnostic tests subject to the physician supervision requirements in the Code of Federal Regulations (CFR) at 42CFR §410.32(b)(3). The regulation defines the levels of physician supervision for diagnostic tests as shown below. The IGRT codes assigned to a given level are listed in parentheses.

- General Supervision - means the procedure is furnished under the physician's overall direction and control, but the physician's presence is not required during the performance of the procedure. (76950 *Ultrasonic guidance for placement of radiation therapy fields* and 77417 *Therapeutic radiology port film(s)*)
- Direct Supervision - means the physician must be present and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed. (77014 *Computed tomography guidance for placement of radiation therapy fields*[1] and 77421 *Stereoscopic X-ray guidance for localization of target volume for the delivery of radiation therapy*[2])

---

[1] Note this service was previously reported with CPT® code 76370.
[2] The level of supervision for 77421 was changed from personal to direct, effective for services on or after January 1, 2009 in the July Update to the 2009 Medicare Physician Fee Schedule Database (Transmittal 1748, Change Request 6484, May 29, 2009)

- Personal Supervision - means a physician must be in attendance in the room during the performance of the procedure. (76965 *Ultrasonic guidance for interstitial radioelement application*).

ASTRO wants radiation oncologists to be aware of the current supervision requirements and to understand that services furnished without the required level of supervision are not covered under Medicare.

**4. Physician Supervision Requirements for Diagnostic Tests Furnished in an Outpatient Hospital Setting**

All hospital outpatient diagnostic services (e.g., IGRT) that are provided directly or under arrangement, whether provided in the main buildings of the hospital, in a provider-based department of a hospital, or at a nonhospital location, follow the physician supervision requirements for individual tests as listed in the MPFS RVU File, as though they were furnished in a physician's office. The definitions of general, direct and personal supervision as defined in 410.32(b)(3)(i) also apply.

In the case of direct supervision of diagnostic services furnished directly by the hospital or under arrangement in the main hospital buildings or on-campus in a PBD of a hospital, the definition of direct supervision is the same as the definition for therapeutic services provided on-campus as discussed in Section 1 above. The physician must be present on the same campus and immediately available to furnish assistance and direction throughout the performance of the procedure. The definition of "in the hospital" as described in Section 1 above applies as well.

For the direct physician supervision of diagnostic services furnished directly or under arrangement in off-campus PBDs of hospitals, the physician must be present in the off-campus PBD and immediately available to furnish assistance and direction throughout the performance of the procedure.

**5. Physician Supervision of "Incident to" Services in an Office or Free-Standing Radiation Therapy Center**

The term "incident to" refers to the services or supplies that are furnished as an integral, although incidental, part of the physician's personal professional services in the course of diagnosis or treatment of an injury or illness. Examples of "incident to" services include the services of auxiliary personnel such as physicists, nurses and technicians. Auxiliary personnel must act under the direct supervision of a physician, regardless of whether the individual is an employee, leased employee, or independent contractor of the physician, or of the legal entity that employs or contracts with the physician.

It is important to note that the supervision requirements for this "incident to" benefit category do not apply to radiation therapy services. Such services are subject to their own, albeit similar, physician supervision requirements that were described in Section 2 above. An example of services that would fall into this benefit category in a typical RO practice would be office visits.

For the services of auxiliary personnel, such as the nurses, to be covered under the "incident to" benefit, the physician must be present in the office suite and immediately available to provide assistance and direction throughout the time that services are being provided. Therefore, if the supervising physician

leaves the office, the services of the auxiliary personnel provided during his/her absence cannot be covered by Medicare.

The radiation oncologist does not have to personally examine the patient every time auxiliary personnel provide services but the medical record must show that the radiation oncologist performed an initial service and subsequent services of a frequency which reflect his/her active participation in and management of the course of treatment.

As described above in section 1. Physician Supervision of "Incident to" Services in an Outpatient Hospital Setting, CMS has indicated that the supervising physician or nonphysician practitioner must also be a person who is "clinically appropriate" to supervise the services or procedures. The concept of "clinically appropriate" as described above in section 1 is not specifically addressed in CMS regulations or manual instruction for physician supervision of "incident to" services in an office or free-standing radiation therapy center. However, it is ASTRO's opinion that CMS would likely apply the requirements as outlined for "incident to" services in an outpatient hospital setting to "incident to" services in the office setting because of the similarity of the wording of the authorities applicable to each, as explained in Section 2.

ASTRO recognizes that radiation oncologists practicing in rural settings may face challenges with these supervision requirements. ASTRO recommends a review and discussion of the supervision requirements with the local contractor medical director.

***If you have questions regarding the summary or any of the references to the Medicare laws and regulations, please contact the ASTRO Health Policy Department at 1-800-962-7876.***