REVENUE CYCLE INC
Turning profits for the progressive practice.

EXHIBIT 20

# Consulting Report: Professional and Technical Chart Review Radiation Oncology

## Consulting Project Dates: April 19-21, 2011

## Consulting Report Prepared For:

Banner Medical Group Specialists

Mary Dreiling, Operations Director
970-350-6225 / mary.dreiling@bannerhealth.com

1817 West Braker Lane, Building F, Suite 200, Austin, Texas 78758
Phone 512.583.2000 • Fax 512.583.2001 • www.revenuecycleinc.com

## Executive Summary

RCI consultants were pleased to conduct this visit. Areas for improvements and recommendations provided within the scope of this project are detailed within this report. Many of the areas provided within the report were discussed with management and staff at the conclusion of this visit as part of a radiation oncology summation meeting conducted on Thursday, April 21, 2011. Key items for recommended internal follow-up by this location include the following:

- Guarantee a face to face visit between physician and patient is documented for each physician management service reported
- Ensure appropriate physician supervision is provided for all radiation oncology services
- Develop an EMR implementation team including members from each of the radiation oncology facilities
- Evaluate and implement improved documentation templates for services provided within the Radiation Oncology department
- Implement consistent documentation and code capture practices within the three facilities
- Ensure procedure notes are provided by the physician for each fraction of brachytherapy and stereotactic treatment delivery
- Discontinue billing of the established patient visits within the 90 day global period
- Evaluate the option for consolidation of the three locations with regard to the MOSAIQ system server and database
- Develop a more appropriate documentation and coding practice for dosimetry services provided for the Sterling location
- Ensure coding corrections are made prior to claim submission for pending professional services

More specific and detailed comments regarding each of the areas listed above are provided within the **Comments & Recommendations** section of this report. Furthermore, specific actions recommended for areas indentified are included within the **Recommended Actions & Follow-up** section of this report.



REVENUE CYCLE INC.
1817 West Braker Lane, Building F, Suite 200, Austin, Texas 78758
Phone 512.583.2000 • Fax 512.583.2001 • www.revenuecycleinc.com

## Visit Preparations, Details & Comments

Prior to the onsite visit, the client was requested to provide the necessary information to complete the engagement. The information was requested via email correspondence with Mary Dreiling including the request for charts and billing claims forms, along with a proposed agenda for the various meetings to be scheduled as part of the onsite visit. Per Mary's request, further coordination was completed through Laura Blauvelt. This coordination included various emails and conference call to discuss the specific needs for materials and scheduling for the services to be provided.

Upon arrival to the site, the RCI consultants were met by Mary Dreiling and Adam Carrillo for an entrance meeting. As part of this meeting, it was expressed no recommendations or guidance could be provided prior to the evaluation and review of the patient charts. At this time, it was apparent there had been a miscommunication with regard to the chart audit process and scheduling for specific training for both the radiation and medical oncology staff members and physicians, and it was expressed no charts or claim forms had been prepared for the engagement.

In order to initiate the necessary review, the consultants requested 15 completed charts from both the radiation and medical oncology specialties, including both the professional and technical claims forms. It was stated the staff present were not knowledgeable of the contact persons for these claims forms, and the staff put forth the effort to identify the necessary staff members. It was identified the professional claims could be retrieved by the professional billing office located in Greeley, and these were compiled and provided to the RCI consultant within the Radiation Oncology area. It was established the technical claims could not be acquired, as the technical billing office was housed in Arizona and code capture reports from the MOSAIQ system would be provided. At the present time, the technical staff captures all services within this system, which are then exported to the technical billing for further claim submission.

Additional discussions were had regarding the training schedule for the following day, and it was expressed the initial compliance and billing guidelines would be provided to all staff between 8:00 and 10:00 am, while the remainder of the day would be focused training regarding the Radiation Oncology specialty. At a later point on Tuesday, it was identified the staff members at the Loveland facility were under the impression the consulting staff would be present within the department and providing training at this specific facility. This was not a component of the



REVENUE CYCLE INC.
1817 West Braker Lane, Building F, Suite 200, Austin, Texas 78758
Phone 512.583.2000 • Fax 512.583.2001 • www.revenuecycleinc.com

original scope of work, as it was stated by the Banner Health staff, all patient charts could be accessed from the Greeley location and all staff members would be trained within a single training session. It was expressed the staff and physicians schedules were not cleared for the training session, and the Loveland staff would not be able to attend the training session at the Greeley location. As a result, Ron DiGiaimo provided a focused radiation oncology training session to Dr. Ceilley and available Loveland staff. It was also determined an additional training session would be provided in the following weeks to the staff unable to attend the scheduled training session on Wednesday, April 20th. This training session has been coordinated with both Dr. Ceilley and Dr. Fuller to allow for their attendance within the complete training session.



REVENUE CYCLE INC.
1817 West Braker Lane, Building F, Suite 200, Austin, Texas 78758
Phone 512.583.2000 • Fax 512.583.2001 • www.revenuecycleinc.com

## Comments & Recommendations

In addition to the Reviewer Comments preceding each patient detail, the following comments are provided to assist this client with corrective steps to accomplish compliance as it relates to documentation and billing of services within the Radiation Oncology department. Items not included within these comments are provided within the patient detail. It is recommended that both areas reflecting comments based on the review be utilized as reference for adjustments to processes and documentation efforts.

**Physician Supervision**

Discussions as part of the onsite visit indicated the physicians and staff were practicing under the scope of a critical access hospital (CAH), which provides an exception to the 2011 Final Rule regarding direct supervision requirements within hospital outpatient departments. It was expressed the Sterling location is a CAH; therefore, the physicians provide coverage one day per week. Review of the current CAH list for the state of Colorado was completed, and it was identified the Sterling Regional Medical Center does not have this designation. Further investigation also revealed a Family Care Clinic at the Sterling Regional Medical Center is designated as a rural health clinic (RHC); however, it is questionable if the physician and non-physician practitioners are employees of this entity, as it appears the staff is employed by the Banner Medical Group Specialists. As a result, it appears the reliance on the designation of the Sterling location as either critical access or rural may be inaccurate, and it is recommended to provide review in this area to ensure Medicare guidelines are met for the technical services provided at this location.

Per the 2011 HOPPS Final Rule, small rural hospitals have been excluded from the requirements for direct supervision, which consists of hospitals with less than 100 beds or within a rural wage index, which applies to the Sterling location. As a result, the direct supervision guidelines will not be enforced for the location for the 2011 CY; however, it is expressed this exception is provided to allow for these locations to prepare for regulations to be imposed within 2012. This guideline as published by Medicare is provided below:

*"As we stated in our proposed rule (75 FR 46309), we remain concerned about establishing policies that apply only to CAHs, because that small and rural PPS hospitals experience similar resource constraints. Therefore, for CY 2011 we are expanding the scope of our decision not to enforce the requirement for direct supervision of therapeutic services to include small rural*



REVENUE CYCLE INC.
1817 West Braker Lane, Building F, Suite 200, Austin, Texas 78758
Phone 512.583.2000 • Fax 512.583.2001 • www.revenuecycleinc.com

*hospitals having 100 or fewer beds. For purposes of this provision, we are using the same definition of small rural hospitals as Congress recognizes for Transitional Outpatient Payments (TOPs) under section 1833(t) (7) of the Act. Our decision not to enforce the requirement for direct supervision of therapeutic outpatient services applies to rural hospitals with 100 or fewer beds for CY 2011. As we do for TOPs, we will consider hospitals to be rural if they are either geographically located in a rural area or are paid through the OPPS with a wage index for a rural area (section 70, Chapter 4, of the Medicare Claims Processing Manual (Pub. 100-04)).*

*We believe this nonenforcement policy will permit the CAHs and small and rural hospitals that do not consistently meet our direct supervision standard for outpatient therapeutic services to make appropriate adjustments over the coming year."*

As this is a temporary exclusion, it is recommended to continue to evaluate options to ensure Medicare guidelines can be met in the future; as it is likely additional requirements will be published within the coming year.

While this exception is in place for the Sterling location, this does not apply to the Loveland and Greeley facilities. As previously mentioned, the physicians travel to the Sterling location once per week. On this date, it is apparent the remaining center, either Loveland or Greeley is left without physician supervision for the technical services rendered, as well as additional days of the week in which the physician is either out of the department or ill. With regard to these locations, it is also recommended to evaluate the current practice of relying on nurse practitioners to provide direct supervision for technical services. It was explained the facilities are working under the direction of Banner Health attorneys; however, specific issues within the Radiation Oncology specialty do not appear to have been taken into account in the legal interpretation of the 2011 HOPPS Final Rule.

It is apparent the facility is knowledgeable of the requirement for direct supervision; however, the provision of this supervision by non-physician practitioners is the area of concern. While this is appropriate in medical oncology and many other outpatient departments, this is not considered appropriate for the Radiation Oncology specialty, due to the nature of the services and expectations for specialized training by the supervisor. It is understood the nurse practitioners are trained to handle emergencies, radiation side effects and general medical needs, but it is not with their training or scope of work to prescribe, adjust or administer radiation therapy services. An excerpt from the 2011 HOPPs Final Rule addressing this issue is provided below:



Revenue Cycle Inc.
1817 West Braker Lane, Building F, Suite 200, Austin, Texas 78758
Phone 512.583.2000 • Fax 512.583.2001 • www.revenuecycleinc.com

*"…. we believe that the supervising physician can furnish assistance and direction within their State scope of practice and hospital granted privileges without being of the same specialty as the service that is being performed (65 FR 18525). For example, we believe that blood transfusions do not require supervision by a hematologist and that an internist would typically possess hospital privileges and State licensure to provide and to supervise blood transfusion services. On the other hand, we have been clear that we require the supervisory practitioner to be knowledgeable enough about the service to be able to furnish assistance and direction, and not merely manage an emergency. Therefore, not all practitioners are qualified to supervise services of any specialty."*

Additionally, a comment was published within 2011 HOPPS Final Rule, which questioned the supervision in Radiation Oncology specifically, as well as the option for remote access into the medical record. This comment and response has been provided below:

*"Comment: During the past year, we were often questioned about clinical requirements for practitioners supervising extremely specialized services, notably radiation oncology services. One commenter requested that CMS consider the direct supervision requirement to be met for diagnostic or therapeutic radiation oncology services if a non-specialist practitioner who can handle an emergency provides the direct supervision and also has access by phone or other telemedicine link to a specialist who is does not have to posses the clinical skills to fully provide a service in order to be an effective supervisor.*

*Response: As we have stated in the Medicare Benefit Policy Manual (Pub. No. 100-02), Chapter 6, Section 20.5.24, "the supervisory physician or nonphysician practitioner must have, within his or her State scope of practice and hospital-granted privileges, the knowledge, skills, ability, and privileges to perform the service or procedure. Specially trained ancillary staff and technicians are the primary operators of some specialized diagnostic or therapeutic equipment, and while in such cases CMS does not expect the supervisory practitioner to operate this equipment instead of a technician, CMS does expect the physician or nonphysician practitioner that supervises the provision of the service must be knowledgeable about the test and clinically appropriate to furnish the test. The supervisory responsibility is more than the capacity to respond to an emergency, and includes furnishing assistance and direction throughout the performance of a procedure and, as appropriate to the supervisory physician or nonphysician practitioner and the patient, to change a procedure or the course of care for a particular patient. CMS would not expect that the supervisory practitioner would make all decisions unilaterally without informing or consulting the*



REVENUE CYCLE INC
1817 West Braker Lane, Building F, Suite 200, Austin, Texas 78758
Phone 512.583.2000 • Fax 512.583.2001 • www.revenuecycleinc.com

*patient's treating physician or nonphysician practitioner." We do not believe it is sufficient or consistent with our rules for direct supervision for the individual on site to be capable of only emergency management. The supervisory practitioner or nonphysician practitioner who is physically CMS-1504-FC 846 present should have the training and knowledge to clinically redirect the service or provide additional orders."*

Based on this comment and response, it is understood CMS expects the supervising staff to be able to redirect or provide additional orders for services rendered. Due to the complex nature of the radiation oncology modality, orders and redirection of treatment delivery, simulation, dosimetry planning, etc. can only be provided by a physician trained within the specialty. It is recommended to further evaluate the scope of nurse practitioners within the Radiation Oncology department, as their role is more limited than currently employed, and ensure a radiation oncologist provides the necessary direct supervision for all technical services rendered.

**Charge Capture Responsibilities**

It is the recommendation of Revenue Cycle Inc. that charge capture responsibilities be assigned to the person completing the procedure and providing the documentation of the service. If department processes are designed with this principle, responsibilities fall directly to the persons performing the work and ultimately accountability can be placed. As part of the initial entrance meeting, it was expressed this is an area for further evaluation and was also seen as an area for improvement within the chart review.

It was expressed the MOSAIQ system had recently been adjusted to incorporate the professional components for services provided within the Radiation Oncology department; however, these had been included as separate professional only codes. The RCI consultant questioned this decision, as this process is not ideal with regard to efficiency or accuracy. It was recommended to evaluate the coordination of the professional and technical service within the same global code, which will allow for split billing on the export. In this process, the code database is designed to include both the hospital and professional procedure codes within separate locations allowing for separate exports into the differing systems. This was discussed with Adam Carrillo, and it was requested additional time be spent in future visits to address this issue. It was agreed this is an area for further discussion, and the RCI staff would provide additional guidelines and recommendations in this area.



REVENUE CYCLE INC

1817 West Braker Lane, Building F, Suite 200, Austin, Texas 78758
Phone 512.583.2000 • Fax 512.583.2001 • www.revenuecycleinc.com