EXHIBIT 28

| | |
|---|---|
| CMS Manual System | **Department of Health & Human Services (DHHS)** |
| Pub 100-02 Medicare Benefit Policy | **Centers for Medicare & Medicaid Services (CMS)** |
| **Transmittal 101** | **Date: January 16, 2009** |
| | **Change Request 6320** |

**NOTE: Transmittal 100, dated December 31, 2008, is being rescinded and replaced by Transmittal 101, dated January 16, 2009 due to a correction in the manual portion of the instruction. Within Section 20.3 we have removed one of the "i's" in the third CFR citation. In addition, in Section 70.3, Subsection 3 entitled, "Reasonable and Necessary Services," the word, "imminent" is added to that portion of the sentence that is italicized. All other information in this instruction remains the same.**

**SUBJECT: January 2009 Update of the Hospital Outpatient Prospective Payment System (OPPS)**

**I. SUMMARY OF CHANGES:** This Recurring Update Notification updates Chapter 6, §20.3, 20.4.4, 20.5.1, 20.6 and 70.3. The Recurring Update Notification applies to §20.4.4.

**New / Revised Material**
**Effective Date: January 1, 2009**
**Implementation Date: January 5, 2009**

*Disclaimer for manual changes only: The revision date and transmittal number apply only to red italicized material. Any other material was previously published and remains unchanged. However, if this revision contains a table of contents, you will receive the new/revised information only, and not the entire table of contents.*

**II. CHANGES IN MANUAL INSTRUCTIONS:** (N/A if manual is not updated)
R=REVISED, N=NEW, D=DELETED-*Only One Per Row.*

| R/N/D | Chapter / Section / Subsection / Title |
|---|---|
| R | 6/20/20.3/Encounter Defined |
| R | 6/20/20.4/20.4.4/Coverage of Outpatient Diagnostic Services |
| R | 6/20/20.5/20.5.1/Coverage of Outpatient Therapeutic Services Incident to a Physicians Service Furnished on or After August 1, 2000 |
| R | 6/20/20.6/Outpatient Observation Services |
| R | 6/70/70.3/Partial Hospitalization Services |

**III. FUNDING:**
SECTION A: For Fiscal Intermediaries and Carriers:
No additional funding will be provided by CMS; Contractor activities are to be carried out within their operating budgets.

SECTION B: For Medicare Administrative Contractors (MACs):
The Medicare Administrative Contractor is hereby advised that this constitutes technical direction as defined in your contract. CMS does not construe this as a change to the MAC Statement of Work. The contractor is

not obligated to incur costs in excess of the amounts allotted in your contract unless and until specifically authorized by the Contracting Officer. If the contractor considers anything provided, as described above, to be outside the current scope of work, the contractor shall withhold performance on the part(s) in question and immediately notify the Contracting Officer, in writing or by e-mail, and request formal directions regarding continued performance requirements.

## IV. ATTACHMENTS:

**Manual Instruction**

**Recurring Update Notification**

**Unless otherwise specified, the effective date is the date of service.*

# Attachment – Recurring Update Notification

| **Pub. 100-02** | **Transmittal: 101** | **Date: January 16, 2009** | **Change Request: 6320** |
|---|---|---|---|

**NOTE: Transmittal 100, dated December 31, 2008, is being rescinded and replaced by Transmittal 101, dated January 16, 2009 due to a correction in the manual portion of the instruction. Within Section 20.3 we have removed one of the "i's" in the third CFR citation. In addition, in Section 70.3, Subsection 3 entitled, "Reasonable and Necessary Services," the word, "imminent" is added to that portion of the sentence that is italicized. All other information in this instruction remains the same.**

**SUBJECT: January 2009 Update of the Hospital Outpatient Prospective Payment System (OPPS)**

**Effective Date:** January 1, 2009

**Implementation Date:** January 5, 2009

## I. GENERAL INFORMATION

**A. Background:** This Recurring Update Notification updates §§20.3, 20.4.4, 20.5.1, 20.6 and 70.3 of Chapter 6 of the Medicare Benefits Policy Manual, Pub.100-02 to clarify the existing policy.

**B. Policy:** Refer to the Medicare Benefits Policy Manual, Pub.100-02, Chapter 6, §§20.3, 20.4.4, 20.5.1, 20.6 and 70.3 for the latest revisions.

## II. BUSINESS REQUIREMENTS TABLE

| **Number** | **Requirement** | **Responsibility (place an "X" in each applicable column)** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | A/B MAC | DME MAC | FI | CARRIER | RHHI | Shared-System Maintainers | | | | OTHER |
| | | | | | | | FISS | MCS | VMS | CWF | |
| 6320.1 | Medicare contractors shall refer to the Medicare Benefits Policy Manual, Pub.100-02, Chapter 6, §§20.3, 20.4.4, 20.5.1, 20.6 and 70.3 for the latest revisions. | X | | X | | X | | | | | |

## III. PROVIDER EDUCATION TABLE

| **Number** | **Requirement** | **Responsibility (place an "X" in each applicable column)** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | A/B MAC | DME MAC | FI | CARRIER | RHHI | Shared-System Maintainers | | | | OTHER |
| | | | | | | | FISS | MCS | VMS | CWF | |
| 6320.2 | A provider education article related to this instruction | X | | X | | X | | | | | |

| Number | Requirement | Responsibility (place an "X" in each applicable column) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | A/B MAC | DME MAC | FI | CARRIER | RHHI | Shared-System Maintainers | | | | OTHER |
| | | | | | | | FISS | MCS | VMS | CWF | |
| | will be available at http://www.cms.hhs.gov/MLNMattersArticles/ shortly after the CR is released. You will receive notification of the article release via the established "MLN Matters" listserv.<br>Contractors shall post this article, or a direct link to this article, on their Web site and include information about it in a listserv message within one week of the availability of the provider education article. In addition, the provider education article shall be included in your next regularly scheduled bulletin. Contractors are free to supplement MLN Matters articles with localized information that would benefit their provider community in billing and administering the Medicare program correctly. | | | | | | | | | | |

## IV. SUPPORTING INFORMATION

**Section A: For any recommendations and supporting information associated with listed requirements, use the box below:**
*Use "Should" to denote a recommendation.*

| X-Ref Requirement Number | Recommendations or other supporting information: |
|---|---|
| None | |

**Section B: For all other recommendations and supporting information, use this space:**

## V. CONTACTS

**Pre-Implementation Contact(s):** Marina Kushnirova at marina.kushnirova@cms.hhs.gov

**Post-Implementation Contact(s):** Regional Office

## VI. FUNDING

**Section A: For *Fiscal Intermediaries (FIs) and Regional Home Health Intermediaries (RHHIs)*:**

No additional funding will be provided by CMS; contractor activities are to be carried out within their operating budgets.

**Section B: *For Medicare Administrative Contractors (MACs)*:**

The Medicare Administrative Contractor is hereby advised that this constitutes technical direction as defined in your contract. CMS does not construe this as a change to the MAC Statement of Work. The contractor is not obligated to incur costs in excess of the amounts allotted in your contract unless and until specifically authorized by the Contracting Officer. If the contractor considers anything provided, as described above, to be outside the current scope of work, the contractor shall withhold performance on the part(s) in question and immediately notify the Contracting Officer, in writing or by e-mail, and request formal directions regarding continued performance requirements.

## 20.3 - Encounter Defined

***(Rev. 101, Issued: 01-16-09, Effective: 01-01-09, Implementation: 01-05-09)***
**Source: 42 CFR 410.2** ***and 482.12***

A hospital outpatient "encounter" is a direct personal contact between a patient and a physician, or other person who is authorized by State licensure law and, if applicable, by hospital or CAH staff bylaws, to order or furnish hospital services for diagnosis or treatment of the patient.

*The conditions of participation for hospitals under 42 CFR 482.12(c)(1)(i) through (c)(1)(vi) require that every Medicare patient is under the care of a doctor of medicine or osteopathy, a doctor of dental surgery or dental medicine, a doctor of podiatric medicine, a doctor of optometry, a chiropractor, or a clinical psychologist; each practicing within the extent of the Act, the Code of Federal Regulations, and State law. Further, 42 CFR 482.12(c)(4) requires that a doctor of medicine or osteopathy must be responsible for the care of each Medicare patient with respect to any medical or psychiatric condition that is present on admission or develops during hospitalization and is not specifically within the scope of practice of one of the other practitioners listed in 42 CFR 482.12(c)(1)(i) through (c)(1)(vi).*

## 20.4.4 - Coverage of Outpatient Diagnostic Services

***(Rev. 101, Issued: 01-16-09, Effective: 01-01-09, Implementation: 01-05-09)***
**Source: 42 CFR 410.28**

Covered diagnostic services to outpatients include the services of nurses, psychologists, technicians, drugs and biologicals necessary for diagnostic study, and the use of supplies and equipment. When a hospital sends hospital personnel and hospital equipment to a patient's home to furnish a diagnostic service, Medicare covers the service as if the patient had received the service in the hospital outpatient department.

For services furnished before August 1, 2000, hospital personnel may provide diagnostic services outside the hospital premises without the direct personal supervision of a physician. For example, if a hospital laboratory technician is sent by the hospital to a patient's home to obtain a blood sample for testing in the hospital's laboratory, the technician's services are a covered hospital service even though a physician was not with the technician.

For services furnished on or after August 1, 2000, Medicare Part B makes payment for hospital or CAH diagnostic services furnished to outpatients, including drugs and biologicals required in the performance of the services (even if those drugs or biologicals are self-administered), if those services meet the following conditions:

1. They are furnished by the hospital or under arrangements made by the hospital or CAH with another entity (see *§*20.1 of this chapter).

2. They are ordinarily furnished by, or under arrangements made by, the hospital or CAH to its outpatients for the purpose of diagnostic study.

3. They would be covered as inpatient hospital services if furnished to an inpatient.

4. Payment is allowed under the hospital outpatient prospective payment system for diagnostic services furnished at a facility that is designated as provider-based only when those services are furnished under the appropriate level of supervision specified in accordance with the definitions in 42 CFR 410.32(b)(3)(i), (b)(3)(ii), and (b)(3)(iii), and as described in Chapter 15 of this manual, Section 80 "Requirements for Diagnostic X-ray, Diagnostic Laboratory, and Other Diagnostic Tests," as though they are being furnished in a physician office or clinic setting. *With respect to individual diagnostic tests, the supervision levels listed in the quarterly updated Medicare Physician Fee Schedule (MPFS) Relative Value File apply. For diagnostic services not listed in the MPFS, Medicare contractors, in consultation with their medical directors, define appropriate supervision levels in order to determine whether claims for these services are reasonable and necessary.*

   *Future updates to the MPFS relative value files will be issued in future Recurring Update Notifications.*

For services furnished on or after February 21, 2002, the provisions of paragraphs (a) and (d)(2) through (d)(4), inclusive, of 42 CFR 410.32 apply to all diagnostic laboratory tests furnished by hospitals and CAHs to outpatients.

## 20.5.1 - Coverage of Outpatient Therapeutic Services Incident to a Physician's Service Furnished on or After August 1, 2000

***(Rev. 101, Issued: 01-16-09, Effective: 01-01-09, Implementation: 01-05-09)***

Therapeutic services and supplies which hospitals provide on an outpatient basis are those services and supplies (including the use of hospital facilities) which are incident to the services of physicians in the treatment of patients. Such services include clinic services and emergency room services. Policies for hospital services incident to physicians' services rendered to outpatients differ in some respects from policies that pertain to "incident to" services furnished in office and physician-directed clinic settings. See the Medicare Policy Manual, Pub 100-02, Chapter 15,"Covered Medical and Other Health Services," §60.

To be covered as incident to physicians' services, the services and supplies must be furnished by the hospital or CAH or under arrangement made by the hospital or CAH (see §20.1.1 of this chapter). The services and supplies must be furnished as an integral, although incidental, part of the physician's professional service in the course of treatment of an illness or injury.

The services and supplies must be furnished in the hospital or at a department of the hospital which has provider-based status in relation to the hospital under 42 CFR 413.65. The services and supplies must be furnished *under the order of a physician or other practitioner practicing within the extent of the Act, the Code of Federal Regulations, and State law, furnished* by hospital personnel and under *the direct supervision of a physician or clinical psychologist as defined in 42 CFR 410.32(b)(3)(ii) and 482.12.* This does not mean that each occasion of service by a nonphysician need also be the occasion of the actual rendition of a personal professional service by the physician responsible for care of the patient. However, during any course of treatment rendered by auxiliary personnel, the physician must personally see the patient periodically and sufficiently often to assess the course of treatment and the patient's progress and, where necessary, to change the treatment regimen. A hospital service or supply would not be considered incident to a physician's service if the attending physician merely wrote an order for the services or supplies and referred the patient to the hospital without being involved in the management of that course of treatment.

The hospital medical staff that supervises the services need not be in the same department as the ordering physician. *For* services furnished at a department of the hospital which has provider-based status in relation to the hospital under 42 CFR 413.65, "*d*irect supervision" means the physician must be present and on the premises of the location *(the provider-based department of the hospital)* and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed.

If a hospital therapist, other than a physical, occupational or speech -language pathologist, goes to a patient's home to give treatment unaccompanied by a physician, the therapist's services would not be covered. See the Medicare Benefit Policy Manual, Pub. 100-02, Chapter 15, "Covered Medical and Other Health Services," *§§*220 and 230 for outpatient physical therapy and speech-language pathology coverage conditions.

## 20.6 - Outpatient Observation Services

***(Rev. 101, Issued: 01-16-09, Effective: 01-01-09, Implementation: 01-05-09)***

### A. Outpatient Observation Services Defined

Observation care is a well-defined set of specific, clinically appropriate services, which include ongoing short term treatment, assessment, and reassessment before a decision can be made regarding whether patients will require further treatment as hospital inpatients or if they are able to be discharged from the hospital. Observation status is commonly assigned to patients who present to the emergency department and who then require a significant period of treatment or monitoring in order to make a decision concerning their admission or discharge.

Observation services are covered only when provided by the order of a physician or another individual authorized by State licensure law and hospital staff bylaws to admit patients to the hospital or to order outpatient tests. In the majority of cases, the decision

whether to discharge a patient from the hospital following resolution of the reason for the observation care or to admit the patient as an inpatient can be made in less than 48 hours, usually in less than 24 hours. In only rare and exceptional cases do reasonable and necessary outpatient observation services span more than 48 hours.

Hospitals may bill for patients who are directly admitted to the hospital for outpatient observation services. A "direct admission" occurs when a physician in the community refers a patient to the hospital for observation, bypassing the clinic or emergency department (ED). Effective for services furnished on or after January 1, 2003, hospitals may bill for patients directly admitted for observation services.

See, the Medicare Claims Processing Manual, Pub. 100-04, chapter 4, section 290, at http://www.cms.hhs.gov/manuals/downloads/clm104c04.pdf for billing and payment instructions for outpatient observation services.

**B. Coverage of Outpatient Observation Services**

When a physician orders that a patient be placed under observation care, the patient's status is that of an outpatient. The purpose of observation is to determine the need for further treatment or for inpatient admission. Thus, a patient receiving observation services may improve and be released, or be admitted as an inpatient (see Pub. 100-02, Medicare Benefit Policy Manual, Chapter 1, Section 10 "Covered Inpatient Hospital Services Covered Under Part A" at http://www.cms.hhs.gov/manuals/Downloads/bp102c01.pdf ). For more information on correct reporting of observation services, see the Medicare Claims Processing Manual, Pub. 100-04, chapter 4, section 290.2.2.)

All hospital observation services, regardless of the duration of the observation care, that are medically reasonable and necessary are covered by Medicare. Observation services are reported using HCPCS code G0378 (Hospital observation service, per hour). Beginning January 1, 2008, HCPCS code G0378 for hourly observation services is assigned status indicator N, signifying that its payment is always packaged. No separate payment is made for observation services reported with HCPCS code G0378. In most circumstances, observation services are supportive and ancillary to the other separately payable services provided to a patient. In certain circumstances when observation care is billed in conjunction with a high level clinic visit (Level 5), high level *Type A* emergency department visit (Level 4 or 5), *high level Type B emergency department visit (Level 5),* critical care services, or direct admission to observation as an integral part of a patient's extended encounter of care, payment may be made for the entire extended care encounter through one of two composite APCs when certain criteria are met. For information about billing and payment methodology for observation services in years prior to CY 2008, see the Medicare Claims Processing Manual, Pub. 100-04, Chapter 4, §§290.3-290.4. For information about payment for extended assessment and management under composite APCs, see §290.5.

Payment for all reasonable and necessary observation services is packaged into the payments for other separately payable services provided to the patient in the same encounter. Observation services that are packaged through assignment of status indicator N are covered OPPS services. Since the payment for these services is included in the APC payment for other separately payable services on the claim, hospitals must not bill Medicare beneficiaries directly for the packaged services.

**C. Services Not Covered by Medicare and Notification to the Beneficiary**

In making the determination whether an ABN can be used to shift liability to a beneficiary for the cost of non-covered items or services related to an encounter that includes observation care, the provider should follow a two step process. First, the provider must decide whether the item or service meets either the definition of observation care or would be otherwise covered. If the item or service does not meet the definitional requirements of any Medicare-covered benefit under Part B, then the item or service is not covered by Medicare and an ABN is not required to shift the liability to the beneficiary. However, the provider may choose to provide voluntary notification for these items or services.

Second, if the item or service meets the definition of observation services or would be otherwise covered, then the provider must decide whether the item or service is “reasonable and necessary” for the beneficiary on the occasion in question, or if the item or service exceeds any frequency limitation for the particular benefit or falls outside of a timeframe for receipt of a particular benefit. In these cases, the ABN would be used to shift the liability to the beneficiary (see the Medicare Claims Processing Manual; Pub. 100-04, Chapter 30, “Financial Liability Protections,” Section 20, at http://www.cms.hhs.gov/manuals/downloads/clm104c30.pdf for information regarding Limitation On Liability (LOL) Under §1879 Where Medicare Claims Are Disallowed).

If an ABN is not issued to the beneficiary, the provider may be held liable for the cost of the item or service unless the provider/supplier is able to demonstrate that they did not know and could not have reasonably been expected to know that Medicare would not pay for the item or service.

## 70.3 - Partial Hospitalization Services

***(Rev. 101, Issued: 01-16-09, Effective: 01-01-09, Implementation: 01-05-09)***

Partial hospitalization programs (PHPs) are structured to provide intensive psychiatric care through active treatment that utilizes a combination of the clinically recognized items and services described in §1861(ff) of the Social Security Act (the Act). The treatment program of a PHP closely resembles that of a highly structured, short-term hospital inpatient program. It is treatment at a level more intense than outpatient day treatment or psychosocial rehabilitation. Programs providing primarily social, recreational, or diversionary activities are not considered partial hospitalization.

**A. Program Criteria**

PHPs work best as part of a community continuum of mental health services which range from the most restrictive inpatient hospital setting to less restrictive outpatient care and support. Program objectives should focus on ensuring important community ties and closely resemble the real-life experiences of the patients served. PHPs may be covered under Medicare when they are provided by a hospital outpatient department or a Medicare-certified CMHC.

Partial hospitalization is active treatment that incorporates an individualized treatment plan which describes a coordination of services wrapped around the particular needs of the patient, and includes a multidisciplinary team approach to patient care under the direction of a physician. The program reflects a high degree of structure and scheduling. According to current practice guidelines, the treatment goals should be measurable, functional, time-framed, medically necessary, and directly related to the reason for admission.

A program comprised primarily of diversionary activity, social, or recreational therapy does not constitute a PHP. Psychosocial programs which provide only a structured environment, socialization, and/or vocational rehabilitation are not covered by Medicare. A program that only monitors the management of medication for patients whose psychiatric condition is otherwise stable, is not the combination, structure, and intensity of services which make up active treatment in a PHP.

**B. Patient Eligibility Criteria**

**1. Benefit Category**

Patients must meet benefit requirements for receiving the partial hospitalization services as defined in §1861(ff) and §1835(a)(2)(F) of the Act. Patients admitted to a PHP must be under the care of a physician who certifies the need for partial hospitalization *and require a minimum of 20 hours per week of therapeutic services, as evidenced by their plan of care. The patients also require a* comprehensive, structured, multimodal treatment requiring medical supervision and coordination, provided under an individualized plan of care, because of a mental disorder which severely interferes with multiple areas of daily life, including social, vocational, and/or educational functioning. Such dysfunction generally is of an acute nature. *In addition, PHP patients must be able to cognitively and emotionally participate in the active treatment process, and be capable of tolerating the intensity of a PHP program.*

Patients meeting benefit category requirements for Medicare coverage of a PHP comprise two groups: those patients who are discharged from an inpatient hospital treatment program, and the PHP is in lieu of continued inpatient treatment; or those patients who, in the absence of partial hospitalization, would be at reasonable risk of requiring inpatient hospitalization. Where partial hospitalization is used to shorten an inpatient stay and transition the patient to a less intense level of care, there must be evidence of the need for the acute, intense, structured combination of services provided by a PHP. Recertification must address the continuing serious nature of the patients’ psychiatric condition requiring active treatment in a PHP.

Discharge planning from a PHP may reflect the types of best practices recognized by professional and advocacy organizations that ensure coordination of needed services and

follow-up care. These activities include linkages with community resources, supports, and providers in order to promote a patient's return to a higher level of functioning in the least restrictive environment.

**2. Covered Services**

Items and services that can be included as part of the structured, multimodal active treatment program, identified in §1861(ff)(2) include:

- Individual or group psychotherapy with physicians, psychologists, or other mental health professionals authorized or licensed by the State in which they practice (e.g., licensed clinical social workers, clinical nurse specialists, certified alcohol and drug counselors);
- Occupational therapy requiring the skills of a qualified occupational therapist. Occupational therapy, if required, must be a component of the physicians treatment plan for the individual;
- Services of other staff (social workers, psychiatric nurses, and others) trained to work with psychiatric patients;
- Drugs and biologicals that cannot be self administered and are furnished for therapeutic purposes (subject to limitations specified in 42 CFR 410.29);
- Individualized activity therapies that are not primarily recreational or diversionary. These activities must be individualized and essential for the treatment of the patient's diagnosed condition and for progress toward treatment goals;
- Family counseling services for which the primary purpose is the treatment of the patient's condition;
- Patient training and education, to the extent the training and educational activities are closely and clearly related to the individuals care and treatment of his/her diagnosed psychiatric condition; and
- Medically necessary diagnostic services related to mental health treatment.

Partial hospitalization services that make up a program of active treatment must be vigorous and proactive (as evidenced in the individual treatment plan and progress notes) as opposed to passive and custodial. It is not enough that a patient qualify under the benefit category requirements in or of §1835(a)(2)(F) unless he/she also has the need for the active treatment provided by the program of services defined in §1861(ff). It is the need for intensive, active treatment of his/her condition to maintain a functional level <u>and</u> to prevent relapse or hospitalization, which qualifies the patient to receive the services identified in §1861(ff).

**3. Reasonable and Necessary Services**

This program of services provides for the diagnosis and active, intensive treatment of the individual's serious psychiatric condition and, in combination, are reasonably expected to

improve or maintain the individual's condition and functional level and prevent relapse or hospitalization. A particular individual covered service (described above) as intervention, expected to maintain or improve the individual's condition and prevent relapse, may also be included within the plan of care, but the overall intent of the partial program admission is to treat the serious presenting psychiatric symptoms. Continued treatment in order to maintain a stable psychiatric condition or functional level requires evidence that less intensive treatment options (e.g., intensive outpatient, psychosocial, day treatment, and/or other community supports) cannot provide the level of support necessary to maintain the patient and to prevent hospitalization.

Patients admitted to a PHP do not require 24 hour per day supervision as provided in an inpatient setting, must have an adequate support system to sustain/maintain themselves outside the PHP *and must not be an imminent danger to themselves or others*. Patients admitted to a PHP generally have an acute onset or decompensation of a covered Axis I mental disorder, as defined by the current edition of the Diagnostic and Statistical Manual published by the American Psychiatric Association or listed in Chapter 5, of the most current edition of the International Classification of Diseases (ICD), which severely interferes with multiple areas of daily life. The degree of impairment will be severe enough to require a multidisciplinary intensive, structured program, but not so limiting that patients cannot benefit from participating in an active treatment program. It is the need, as certified by the treating physician, for the intensive, structured combination of services provided by the program that constitute active treatment, that are necessary to appropriately treat the patient's presenting psychiatric condition.

For patients who do not meet this degree of severity of illness, and for whom partial hospitalization services are not necessary for the treatment of a psychiatric condition, professional services billed to Medicare Part B (e.g., services of psychiatrists and psychologists) may be medically necessary, even though partial hospitalization services are not.

Patients in PHP may be discharged by either stepping up to an inpatient level of care which would be required for patients needing 24-hour supervision, or stepping down to a less intensive level of outpatient care when the patient's clinical condition improves or stabilizes and he/she no longer requires structured, intensive, multimodal treatment.

**4. Reasons for Denial**

a. Benefit category denials made under §1861(ff) or §1835(a)(2)(F) are not appealable by the provider and the limitation on liability provision does not apply (HCFA Ruling 97-1). Examples of benefit category based in §1861(ff) or §1835(a)(2)(F) of the Act, for partial hospitalization services generally include the following:

- Day care programs, which provide primarily social, recreational, or diversionary activities, custodial or respite care;
- Programs attempting to maintain psychiatric wellness, where there is no risk of relapse or hospitalization, e.g., day care programs for the chronically mentally ill; or
- Patients who are otherwise psychiatrically stable or require medication management only.

b. Coverage denials made under §1861(ff) of the Act are not appealable by the provider and the Limitation on Liability provision does not apply (HCFA Ruling 97-1). The following services are excluded from the scope of partial hospitalization services defined in §1861(ff) of the Social Security Act:

- Services to hospital inpatients;
- Meals, self-administered medications, transportation; and
- Vocational training.

c. Reasonable and necessary denials based on §1862(a)(1)(A) are appealable and the Limitation on Liability provision does apply. The following examples represent reasonable and necessary denials for partial hospitalization services and coverage is excluded under §1862(a)(1)(A) of the Social Security Act:

- Patients who cannot, or refuse, to participate (due to their behavioral or cognitive status) with active treatment of their mental disorder (except for a brief admission necessary for diagnostic purposes), or who cannot tolerate the intensity of a PHP; or
- Treatment of chronic conditions without acute exacerbation of symptoms that place the individual at risk of relapse or hospitalization.

**5. Documentation Requirements and Physician Supervision**

The following components will be used to help determine whether the services provided were accurate and appropriate.

a. Initial Psychiatric Evaluation/Certification.--Upon admission, a certification by the physician must be made that the patient admitted to the PHP would require inpatient psychiatric hospitalization if the partial hospitalization services were not provided. The certification should identify the diagnosis and psychiatric need for the partial hospitalization. Partial hospitalization services must be furnished under an individualized written plan of care, established by the physician, which includes the active treatment provided through the combination of structured, intensive services identified in §1861 that are reasonable and necessary to treat the presentation of serious psychiatric symptoms and to prevent relapse or hospitalization.

b. Physician Recertification Requirements.--

- Signature – The physician recertification must be signed by a physician who is treating the patient and has knowledge of the patient’s response to treatment.
- Timing – The first recertification is required as of the 18th calendar day following admission to the PHP. Subsequent recertifications are required at intervals established by the provider, but no less frequently than every 30 days.

- Content – The recertification must specify that the patient would otherwise require inpatient psychiatric care in the absence of continued stay in the PHP and describe the following:

    - The patient's response to the therapeutic interventions provided by the PHP;

    - The patient's psychiatric symptoms that continue to place the patient at risk of hospitalization; and

    - Treatment goals for coordination of services to facilitate discharge from the PHP.

c. <u>Treatment Plan</u>.--Partial hospitalization is active treatment pursuant to an individualized treatment plan, prescribed and signed by a physician, which identifies treatment goals, describes a coordination of services, is structured to meet the particular needs of the patient, and includes a multidisciplinary team approach to patient care. The treatment goals described in the treatment plan should directly address the presenting symptoms and are the basis for evaluating the patient's response to treatment. Treatment goals should be designed to measure the patient's response to active treatment. The plan should document ongoing efforts to restore the individual patient to a higher level of functioning that would permit discharge from the program, or reflect the continued need for the intensity of the active therapy to maintain the individual's condition and functional level and to prevent relapse or hospitalization. Activities that are primarily recreational and diversionary, or provide only a level of functional support that does not treat the serious presenting psychiatric symptoms placing the patient at risk, do not qualify as partial hospitalization services.

d. <u>Progress Notes</u>.--Section 1833(e) of the Social Security Act prevents Medicare from paying for services unless necessary and sufficient information is submitted that shows that services were provided and to determine the amounts due. A provider may submit progress notes to document the services that have been provided. The progress note should include a description of the nature of the treatment service, the patient's response to the therapeutic intervention and its relation to the goals indicated in the treatment plan.

See the Medicare Claims Processing Manual, Chapter 4, "Hospital Outpatient Services," §260 for billing instructions for partial hospitalization services.