IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-03029-WJM-CBS

UNITED STATES ex rel,
MARTHA L. BAKER,

Plaintiff-Relator,

v.

BANNER HEALTH and BANNER
MEDICAL GROUP COLORADO,

Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Banner Health and Banner Medical Group Colorado ("Defendants") submit their Reply in Support of Their Motion for Partial Summary Judgment as follows:

## I. Introduction

There are no material disputed facts on the two issues in front of the Court, and the arguments set forth by Defendants in their Motion for Partial Summary Judgment are ripe for review.

With respect to the claims Relator labeled as "Other Billing Issues," Relator provided no disputed issues of fact and purports to withdraw the Other Billing Issue claims. The Court must enter judgment in favor of the Defendants on these claims, dismiss these claims with prejudice, and dismiss Banner Medical Group Colorado ("BMGC") as a Defendant because the only remaining allegations in front of the Court concern Relator's allegations that Banner Health

("Banner") submitted inappropriate hospital claims to the Centers for Medicare and Medicaid ("CMS") by occasionally relying on nonphysician practitioners to directly supervise the delivery of external beam radiation therapy.

In addition, the Court should find, as a matter of law, that prior to January 1, 2012, Banner could not have submitted legally false facility charges to CMS when a radiation oncologist was not directly supervising the delivery of external beam radiation therapy because CMS by its own accord recognized that it was not clear that the supervision rules articulated in 42 C.F.R. § 410.27 applied to services other than those defined as incident to under 42 U.S.C. § 1395x(s)(2)(B).[1]

## II. Reply Concerning Undisputed Facts

1. Relator takes the position that Banner's statement that it is a non-profit organization is immaterial. Relator's subsequent comments are equally immaterial.

2. Banner admits that it provides radiation therapy to patients at three facilities in Colorado.

3. Relator admitted this fact.

4. Relator admitted this fact.

5. Relator admitted this fact.

6. Relator denied this fact but asserted it was immaterial.

7. Admitted.

[1] In her Response, Relator complains that Defendants referenced this argument in a footnote in response to Relator's Early Motion for Partial Summary Judgment, rather than fully brief the argument at that time. Relator does not argue that Defendants waived this argument. In addition, this argument is distinct from the issue presented to the Court in Relator's Early Motion for Partial Summary Judgment and would not have been responsive to Relator's arguments.

8. Admitted.

9. Relator admitted CMS issues "final rules' under the Outpatient Prospective Payment System ("OPPS"). The Relator's comment that "CMS sometimes amends applicable regulations, although these amendments are often for the purpose of clarifying established policy, rather than changing such policy" is not supported by any specific reference to material in the record, and the Court should not consider it. The Defendants deny this comment because it is too broad.

10. Admitted.

11. Relator does not admit or deny the fact Defendants alleged in paragraph 11 of Defendants' statement of material facts. Thus, the Court may deem Defendant's paragraph 11 as confessed. Instead Relator "admitted" a fact that she created. This admission conflates "incident to services" with "hospital outpatient services." Relator then relies on 65 Fed. Reg. 18434, 18444 (April 7, 2000) for the proposition that incident to services include radiation therapy services. However, language in the preamble of that section of the Federal Register says nothing about "incident to services." *See* Relator's Ex. 3, citing 65 Fed. Reg. 18434, 18444 (April 7, 2000), Section C, Services Designated by the Secretary.

12. Relator denies this statement but acknowledges that the statute and regulations speak for themselves. Relator's comment that "CMS has always made clear that all hospital outpatient therapeutic services are provided 'incident to' the services of a physician or nonphysician practitioner, and thus are subject to 42 C.F.R. § 410.27, even if they are described in a different benefit category," is not supported by a specific citation. This is argument and the Court should strike this statement. In the alternative, Defendants deny this statement.

13. Relator admits that 42 C.F.R. § 410.27 was amended in 2000 and cites to the preamble language in 73 Fed. Reg. 68502, 68703 (Nov. 18, 2008) in part. This preamble language states "the expectation that a physician would always be nearby predates the OPPS and is related to the statutory authority for payment of hospital outpatient services—that Medicare makes payment for hospital outpatient services **'incident to' the services of physicians in the treatment of patients as described in section 1861(s)(2)(B) of the Act**." *See* Defendants' Ex. H, citing 73 Fed. Reg. 68502, 68703 (Nov. 18, 2008) (emphasis added).

14. Admitted

15. Relator admits that the regulation speaks for itself.

16. Admitted

17. Admitted

18. Relator admitted that CMS published a final rule with an effective date of January 1, 2012 and the terms of the regulation speak for themselves. *See* Defendants' Ex. F.

19. Admitted. This is immaterial now because Relator has conceded summary judgment on issues related to cost reports.

## III. Response Concerning Additional Disputed Facts

### A. *CMS has always required direct supervision of all outpatient therapeutic hospital services, regardless of whether they come within a separate benefit category*.[2]

1. Admit.

2. Defendants admit radiation therapy along with other services are services paid pursuant to the hospital OPPS. The preamble sections of the Federal Register cited by Relator

[2] Defendants deny this conclusory subheading.

speak for themselves. *See, e.g.*, Relator's Ex. 3, citing 65 Fed. Reg. 18434, 18444 (April 7, 2000) ("We proposed to designate the following services to be paid under the hospital outpatient PPS: All hospital outpatient services. . . . The types of services subject to payment under the hospital outpatient PPS include the following: surgical procedures; radiology including radiation therapy; clinic visits, emergency department visits; diagnostic services and other diagnostic tests; partial hospitalization for the mentally ill; surgical pathology; and cancer chemotherapy.")

3. Defendants admit Relator cites to preamble language contained in 65 Fed. Reg. 18434, 18525 (April 7, 2000), and the preamble language speaks for itself.

4. Defendants admit Relator cites to preamble language contained in 68 Fed. Reg. 55634, 55637 (Sept. 26, 2003), and the preamble language speaks for itself. However, this section of the Federal Register revised the process CMS used to make national coverage determinations and is inapposite to the issues in front of this Court.

5. Defendants admit Relator cites to preamble language contained in 74 Fed. Reg. 35232, 35363 (July 20, 2009) (Relator's Ex. 5), and the preamble language speaks for itself, although Relator emphasized certain language that is not highlighted or bolded in the Federal Register. However, that section is preceded with the following language: "The expectation that a physician would always be nearby predates the OPPS and is related to the statutory authority for payment of hospital outpatient services—that Medicare makes payment for hospital outpatient services **'incident to' the services of physicians in the treatment of patients as described in section 1861(s)(2)(B) of the Act**." (emphasis added).

6. Defendants admit that on November 20, 2009, CMS issued a final rule for the OPPS. Defendants admit that Relator cites to preamble language contained in 74 Fed. Reg.

60316, 60582 (Nov. 20, 2009), and the preamble language speaks for itself. However, after commenting that the only statutory basis for payment for hospital outpatient therapeutic services is incident to the services of a physician, CMS commented the physician supervision requirements under 42 C.F.R. § 410.27 do not apply to physical therapy, occupational therapy, and speech-language pathology services. *Id.* at 60585.

7. Defendants admit that Relator cites to preamble language contained in different sections of the Federal Register and the Medicare Benefit Policy, and these documents speak for themselves.

8. The portion of the preamble language contained in 75 Fed. Reg. 71800, 71999 (Nov. 24, 2010) and in the Medicare Benefit policy are quoted correctly.

9-16. Admit.

**B. *Defendants themselves – along with everyone else in the industry – have always recognized that 42 C.F.R. § 410.27 applied to radiation therapy services.*** [3]

Relator's additional material facts set forth in paragraphs 17-46 are immaterial to the question in front of the Court. Each of the facts in paragraphs 17-46 have been drafted to show one of two things: (1) Defendant Banner behaved as if 42 C.F.R. § 410.27 applied to radiation therapy; and (2) Defendant Banner acted in bad faith when it determined a nonphysician practitioner could directly supervise the delivery of external beam radiation therapy. With respect to (1), Banner does not deny that it proceeded as if the supervision rules applied to

[3] Defendants agree that when they started to employ radiation oncologists and advanced practice nurses in the fall of 2010, they proceeded as if the direct supervision rules articulated in 42 C.F.R. § 410.27 applied to outpatient radiation therapy, permitting direct supervision by either radiation oncologists or advanced practice nurses. Neither Defendants nor Relator know how "everyone else" interpreted 42 C.F.R. § 410.27.

radiation oncology. With respect to (2), Relator attempts to create a genuine issue of disputed material fact as to whether Banner acted in bad faith. This is not an issue that Defendants' Motion for Partial Summary Judgment places in front of the Court. Moreover, Relator appears to expressly concede these disputed facts and, therefore, are issues for the jury to decide. *See e.g.*, Relator's Response at 40, and quoting portions of *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 2015 U.S. App. LEXIS 11460, *23 (4th Cir. 2015).

However, for the purposes of this reply brief and this reply only, Defendants admit that the statements articulated by Relator in response to paragraphs 17-46 are statements taken from the record, with the caveat that Relator has mischaracterized the context.[4]

The following are some examples of statements Relator has mischaracterized:

Relator's Additional Material Facts, ¶17-18, 32. These documents state what they state but are not specific to radiation oncology. These documents relate to supervision generally. Thus, the quotations from the documents are immaterial to the legal arguments raised in the Defendants' Motion for Partial Summary Judgment.

Relator's Additional Material Facts, ¶33. This document states what it states but is about diagnostic tests, not radiation oncology. Thus, it is immaterial to the legal arguments raised in the Defendants' Motion for Partial Summary Judgment.

[4] Defendants in no way waive their rights to dispute these facts at trial, and they do not waive their right to rely on additional evidence at trial to show that Banner Health did not knowingly submit false claims to the Government. Thus, the Court can accept these as true for the purpose of this motion, response, and reply only.

Relator's Additional Material Facts, ¶ 35-46. These statements of purported material facts are in fact not material. They appear to be gratuitously added to color the Court's opinion that Banner acted in bad faith. In addition, many of the facts added are taken out of context.[5]

## IV. Argument

### A. *The Court must enter judgment on behalf of Banner Health and Banner Medical Group with respect to the claims Relator has Labeled as "Other Billing Issues" and dismiss Banner Medical Group Colorado as a party from this lawsuit.*

When Relator filed her Amended Complaint, it included allegations that Banner Health submitted false claims to CMS for facility charges in the delivery of external beam radiation therapy when a radiation oncologist was not acting as the direct supervisor of this service. Additionally, Relator's Amended Complaint included allegations that Defendants "routinely submitted false claims" in a variety of circumstances which Relator collectively labeled as

---

[5] *See, e.g.*, Relator's Response at ¶ 42, (While Julianne Fritz answered "No" when asked "Is there any sense in which a nurse practitioner can be said to perform radiation therapy treatment?," she also said "Neither physicians nor nurse practitioners are the ones who treat patients on the machine." (Relator's Ex. 25, p. 58:5-10)). *See also* Relator's Response at ¶ 44 (Relator relies on a sentence fragment in an email. When read in its entirety, the email from Helene Christner states: "Thanks Julianne, I also did a search and found some interesting dialogue from different facilities posting responses from CMS asking specific questions about what does 'must be available to furnish assistance and direction throughout the procedure' or 'ability to furnish/ perform the procedure or service being supervised.' I think that is where there is a lot of hang up, where as I can take over a therapeutic service of chemotherapy because I am chemo certified and can administer chemotherapy. I cannot take over giving a radiation treatment because I am not trained or certified. That is where 'some' interpret no NP can supervise in Rad Onc, unless they are trained Rad Therapist[s] and became NPs. Of course the argument is that the Rad Oncs also do not know how to provide the treatment itself because they don't know how to run the lin ac [sic]. Many have done what we have and show documentation of training in Radiation Oncology, ONS courses in Rad Onc just like the ONS Chemo course, didactics and clinical, then also been given privileges' [sic] in the hospital. I think we will see different interpretations with different agencies frequently.") (Relator's Ex. 22); Relator's Response at ¶ 45, Dr Fuller stated he has not reviewed Ms. Ehrman's privileges recently but he considers the administration of external beam radiotherapy to "**include[ ] designing** a course of therapy." (Ex. 27, p. 49: 15-17) (emphasis added).

"Other Billing Issues." Relator now purports to "withdraw" her claims related to the "Other Billing Issues" in response to Defendants' Motion for Partial Summary Judgment wherein Defendants argued that there is no evidence in the record that could lead a court to conclude that there are disputed issues of material fact that would support any allegation that the Defendants submitted false claims to CMS with respect to the "Other Billing Issues." Defendants have not been able to find any case law that supports the concept of withdrawing claims rather than responding to a motion for summary judgment.[6] Relator has in fact confessed judgment on all allegations contained in paragraphs 38 through 64 of her Amended Complaint. The Court must enter judgment in favor of Defendants and dismiss those claims with prejudice.

Furthermore, BMGC is "a group of health care providers formed to provide health care services to individuals," and constitutes a "provider network" under Col. Rev. Stat. § 6-18-301 *et seq*. Amended Complaint, at ¶ 8. BMGC only submits claims to Medicare for professional billing; it does not submit claims for the facility fees that are at issue with respect to the supervision rules.[7] Therefore, there are no claims that remain against BMGC, and the Court must dismiss BMGC as a Defendant from this lawsuit with prejudice.

B. ***Banner could not have submitted legally false claims to the government when the Supervision Rules articulated in 42 C.F.R. § 410.27 did not expressly apply to radiation therapy.***

1. Standard of Review.

---

[6] *See* F.R.C.P. 41(a)(2) contemplating an action may be dismissed only by court order.

[7] In Defendant's response to Relator's Early Motion for Partial Summary Judgment, Defendants pointed out that supervision is not a professional service and does not trigger any payment to the physician. A request that the court issue any order relating to BMGC would be unfounded. Relators did not contest this.

In defining the notion of falsity under the False Claims Act ("FCA"), the 10th Circuit has developed two categories of false submissions: those that are factually false and those that are legally false. *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008). Relator does not allege that Defendants submitted claims to the Government for services that were not provided. Thus, she is proceeding on a theory of legal falsity.

"Legally false certification claims can rest on one of two theories—express false certification and implied false certification." *Id.* "An express false certification theory applies when a government payee 'falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment.'" *Id.* (*quoting Mikes v. Straus*, 274 F.3d 687, 698 (2d Cir. 2001)). Under an implied false certification theory, the analysis focuses on the underlying contracts, statutes, or regulations themselves to ascertain whether they make compliance a prerequisite to the government's payment. *Id.* at 1218. "An implied false certification claim, however, is viable only in "limited circumstances," where "the underlying statute or regulation upon which plaintiff relies expressly states that provider must comply in order to be paid." *Mikes,* 274 F.3d at 700. *See also United States ex rel. Sharp v. Eastern Oklahoma Orthopedic Center,* 2009 WL 499375,*21 (N.D. Okla. Feb. 27, 2009).

In *Sharp,* a former employee of the defendant alleged that the defendant delivered DME to patients without maintaining a written record of delivery, a violation of the supplier standard. *Id.* at *7. The court determined that the plaintiff failed to state a claim for false certification under the False Claims Act. *Id.* at *21. Specifically, the court held that the Medicare regulations and The Medicare Program Integrity Manual relied upon by the plaintiff in that case did not explicitly require a signature, therefore, there was a failure to allege any underlying non-

compliance. *Id.* Here, the same principle applies. It was not until January 1, 2012 that 42 C.F.R. § 410.27 expressly applied to radiation therapy; therefore, there is a failure to allege any underlying non-compliance for the time period at issue prior 2012.

2. <u>The Social Security Act and Applicable Regulations.</u>

Relator alleges that Banner violated the FCA when Banner submitted claims for the delivery of external beam radiation therapy where a nonphysician practitioner was designated as the direct supervisor, in violation of 42 C.F.R. § 410.27. (Relator's Amended Complaint and Relator's Response)

Prior to 2012, Defendants could not have submitted false claims for allegedly failing to follow any of the conditions set forth in 42 C.F.R. § 410.27 because that section only applied to services provided "incident to" a physician's services. Radiation therapy is listed as a separate Medicare benefit under 42 U.S.C. § 1395x(s)(4). *See also* 42 C.F.R. § 410.35.

In fact, CMS acknowledged that 42 C.F.R. § 410.27 "could be read as limited to services and supplies described under section 1861(s)(2)(B) of the Act, hospital services incident to physician's services furnished to outpatients," and subsequently amended the regulations for 2012 by stating that 42 C.F.R. § 410.27 now explicitly applies to benefit categories other than "incident to" services. Thus, Relator cannot deny that radiation therapy is described or defined in a separate subsection of the Social Security Act and prior to 2012 was not addressed in 42 C.F.R. § 410.27. *See* 42 C.F.R. § 410.35. While Relator devotes significant energy alleging Defendants' potential "knowledge" of CMS' interpretation prior to CMS expressly amending the language in the regulation, such allegations are irrelevant to the legal question posed to the Court.

3. <u>Relator Relies Exclusively On Language in the Preamble of the Federal Register and the Medicare Benefit Policy Manual.</u>

Relator devotes a large part of her response brief citing to different sections of the Federal Register to assert that: (1) if an item or service can fit in to more than one benefit category, CMS has the discretion to assign it to the most appropriate benefit category, and (2) CMS has always taken the position that it has divided hospital services into two categories, diagnostic services and other therapeutic services, and all therapeutic services, including radiation oncology, have always been considered incident to a physicians' services rendered to outpatient." (*See* Resp. p. 1)

a. *Rule Making.*

According to the Administrative Procedures Act (the "APA"), each agency, including CMS, shall publish in the Federal Register for the guidance of the public. . . (c) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency. 5 U.S.C. § 552(a)(1)(C). Substantive rules require compliance with the notice-and-comment process. *Perez v. Mortgage Bankers Ass'n*, 135 S.Ct.1199, 1203 (2015); *Chrysler Corp. v. Brown*, 441 U.S. 281, 302–303, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). In contrast, interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice (collectively "interpretative rules") do not require compliance with the notice-and-comment process. 5 U.S.C. § 553(b)(3)(A); *Perez v. Mortgage Bankers Ass'n*, 135 S.Ct. 1199, 1203-1204 (2015).

Interpretative rules do not have the force and effect of law and are not accorded that weight in the adjudicatory process. *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99, 115 S. Ct. 1232, 1239, 131 L. Ed. 2d 106 (1995). Several Supreme Court decisions have held that

interpretative rules are not entitled to *Chevron* deference.[8] See *United States v. Mead Corp.*, 533 U.S. 218, 232, 121 S. Ct. 2164, 2174, 150 L. Ed. 2d 292 (2001); *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 256–258, 111 *S.Ct.* 1227, 113 L.Ed.2d 274 (1991); *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991); and, *Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1662, 146 L. Ed. 2d 621 (2000).

Relator cites to *United States ex rel. Suter v. Nat'l Rehab Partners, Inc.*, 2009 U.S. Dist. LEXIS 88630, *17 (D. Idaho Sept. 24, 2009) to support the contention that Medicare manuals are binding interpretive rules and form the basis for FCA liability. The Court is not bound by *Suter* and this interpretation is in stark contrast to the United States Supreme Court's interpretation that an agency manual does not warrant deference by a Court and lacks the force of law. In *Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1662, 146 L. Ed. 2d 621 (2000), the United States Supreme Court stated, "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, ***agency manuals***, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." (emphasis added).

Relator relies heavily upon the preamble language including comments and responses by CMS in the Federal Register and the Medicare Benefit Policy Manual in her Response to the Defendants' Motion for Partial Summary Judgment. However, the preamble language including comments and responses issued by CMS in the Federal Register are not substantive rules.

---

[8] *Chevron* deference is the principle that if a court determines Congress has not directly addressed an issue then the court must give deference to the agency's interpretation of that issue. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984).

Notably, the preamble language is not subject to the notice-and-comment process required by the APA for substantive rules. As a result, the preamble language referenced by Relator in her Response to Defendants' Motion for Partial Summary Judgment, including Relator's Ex. 3, citing 65 Fed. Reg. 18434, 18444 (April 7, 2000), Relator's Ex. 4, citing 68 Fed. Reg. 55634, 55637 (Sept. 26, 2003), Relator's Ex. 5, citing 74 Fed. Reg. 35232, 35363 (July 20, 2009), Relator's Ex. 6, citing 74 Fed. Reg. 60316, 60582 (Nov. 20, 2009), Relator's Ex. 7, citing 75 Fed. Reg. 71800, 71999 (Nov. 24, 2010), Relator's Ex. 8, citing 76 Fed. Reg. 42170, 42277-42278 (July 18, 2011), Relator's Ex. 9, 76 Fed. Reg. 74122, 74369 (Nov. 30, 2011), are interpretative and do not have the force and effect of law.

b. *The Preamble Language Regarding National Coverage Determinations is Inapposite to the Issues in Front of this Court.*

Relator argues that if an item or service can fit in to more than one benefit category, CMS has the discretion to assign it to the most appropriate benefit category. In support of this argument, Relator relies on 68 Fed. Reg. 55634, 55637 (Sept. 26, 2003) which revises the process that CMS will use to make a national coverage determination ("NCD") for a specific item or service. Relator's Ex. 4, citing 68 Fed. Reg. 55634, 55637 (Sept. 26, 2003). In general, an NCD is a national policy statement granting, limiting, or excluding Medicare coverage for a specific medical item or service. *Id.* at 55635. In Volume 68 of the Federal Register, CMS acknowledges that the Social Security Act does not list every possible item or service eligible for Medicare coverage, but rather categories of services. As mentioned above, however, the Act **does** explicitly acknowledge that Medicare will pay for radiation therapy under 42 U.S. Code § 1395x(s)(4). In the end, this section is not relevant to Relator's argument because Relator does not allege, nor could she allege, that there is an NCD that conditions payment for radiation

therapy services on compliance with 42 C.F.R. § 410.27 or even related to radiation therapy generally.

c. *CMS Acknowledged that the Regulation was Not Clear*.

Relator argues that language in the Federal Register makes it clear that CMS has historically designated the delivery of external beam radiation therapy as an incident to service requiring direct supervision. Relator argues that CMS only clarified the regulation when it amended the language of 42 C.F.R. § 410.27. Relator relies on the preamble language in the Federal Register and the Medicare Benefit Policy to support this argument.

There are portions of the Federal Register that say "all hospital services that are not diagnostic are services that aid the physician in the treatment of the patient and are called therapeutic services. These are the services for which Medicare makes a hospital facility payment only when they are provided 'incident to' the services of a physician." *See* 74 Fed. Reg. 60316, 60584-60585 (Nov. 20, 2009); *see also* 75 Fed. Reg. 71800, 72117 (Nov. 24, 2010). However, in spite of the use of the word all, CMS acknowledges that supervision requirements under 42 C.F.R. § 410.27 do not apply to some outpatient therapies because they have different statutory designations. For example, the supervision requirement of 42 C.F.R. § 410.27 does not apply to physical therapy, occupational therapy, and speech language pathology. 74 Fed. Reg. 60316, 60585 (Nov. 20, 2009). In addition, sections of the Federal Register state that "the expectation that a physician would always be nearby predates the OPPS and is related to the statutory authority for payment of hospital outpatient services—that Medicare makes payment for hospital outpatient services of physicians in the treatment of patients **as described in**

**1861(s)(2)(B) of the Act.**"[9] *See, e.g.*, Defendants' Ex. H, citing 73 Fed. Reg. 68502, 68703 (Nov. 18, 2008); *see also* Relator's Ex. 5, citing 74 Fed. Reg. 35232, 35363 (July 20, 2009) (emphasis added). As stated above, radiation oncology is not described in 1861(s)(2)(B). In other words, the language contained in the numerous preamble sections of the Federal Register relied upon by Relator is internally inconsistent.

Defendants acknowledge that in 2010, CMS was asked by a commenter if the direct supervision requirement is met for diagnostic or therapeutic radiation oncology services if a non-specialist practitioner who can handle an emergency provides direct supervision. In response to this, CMS reiterated language from the Medicare Benefit Policy Manual applying to supervision generally. *See* 75 Fed. Reg. 71800, 72012 (Nov. 24, 2010). While CMS responded to the commenter's questions as if CMS assumed radiation therapy was included as an incident to service and, therefore, subject to the supervision expectations set forth in 42 C.F.R. § 410.27, in November 2011, CMS expressly acknowledged that the language of 42 C.F.R. § 410.27 could be read as limited to services and supplies described under section 1861(s)(2)(B) of the Act—hospital services incident to physicians' services furnished to outpatients. While CMS did not interpret the regulation so narrowly, it conceded that it did not "delineate this position clearly in the regulation and that the text of 42 C.F.R. § 410.27 only explicitly refers to 'incident to' services." It therefore stated:

> In the CY 2012 OPPS/ASC proposed rule, we proposed to **amend our regulations** to clarify our policy as follows. Therapeutic services and supplies

---

[9] Section 1861(s)(2)(B) of the Social Security Act is the same as 42 U.S.C. § 1395x(s)(2)(B). *See, e.g.*, FN 1 on the following Social Security Administration website that explains Title XVIII of the Social Security Act appears in the United States Code as §§1395-1395ccc, subchapter XVIII, chapter 7, Title 42 (website last visited September 30, 2015): http://www.ssa.gov/OP_Home/ssact/title18/1800.htm#ft1.

> described by benefit categories other than the hospital outpatient "incident to" services under section 1861(s)(2)(B) of the Act are subject to the conditions of payment in § 410.27. . . We stated our belief that this clarification could most readily be accomplished by more specifically defining the services and supplies described in the regulation text to which the requirements at § 410.27 apply. Accordingly, we propose to revise the description of services and supplies addressed in § 410.27(a) by adding the term "therapeutic" so that paragraph (a) would read "Medicare Part B pays for therapeutic hospital or of CAH services and supplies furnished incident to a physician's or nonphysician practitioner's service" to outpatients. . . .We also proposed to add the term 'therapeutic' to the title of § 410.27 so that it would read 'Therapeutic outpatient hospital or CAH services and supplies incident to a physician or nonphysician practitioner's service.'

Relator's Ex. 9, 76 Fed. Reg. 74122, 74369 (Nov. 30, 2011) (emphasis added).

d. *42 C.F.R. § 410.27 Did Not Expressly Apply to Radiation Therapy until 2012.*

Banner is not denying that it assumed that 42 C.F.R. § 410.27 applied to the delivery of external beam radiation therapy, and it endeavored to follow CMS guidance on the topic. Rather, this is a legal argument. It has nothing to do with scienter.

Relator relies on *Minn. Ass'n of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032 (8th Cir. 2012) and *United States ex rel. Suter v. Nat'l Rehab Partners, Inc.*, 2009 U.S. Dist. LEXIS 88630, *25-26 (D. Idaho Sept. 24, 2009) to argue that if Banner knew how CMS interpreted the regulation, any possible ambiguity of the regulations is "water under the bridge." *Suter* merely quotes *Allina* on this point and both cases are distinguishable from the issue in front of this Court. In both cases, the defendants alleged certain language contained within a regulation was ambiguous. The issue in front of this Court is that the regulation did not expressly apply to radiation therapy until 2012 because radiation therapy was described in a separate benefit category from the incident to category addressed by 42 C.F.R. § 410.27 prior to

2012.[10] In addition, CMS conceded that that the language of 42 C.F.R. § 410.27 could be read as limited to services and supplies described under section 1861(s)(2)(B) of the Act, (i.e. hospital services incident to physicians' services furnished to outpatients) and, therefore, amended the language in the regulation. Consequently, CMS's interpretation that the supervision rules in 42 C.F.R. § 410.27 applied to all services that were not considered diagnostic services was inconsistent with the express language in the regulation prior to 2012.

At least one court, in dicta, has adopted the argument that the supervision rules did not apply to radiation oncology because it was listed as a separate Medicare benefit. In *United States v. Space Coast Med. Associates, L.L.P.*, No. 6:13-CV-1068-ORL-22, 2015 WL 1456122, at *8 n. 17 (M.D. Fla. Feb. 6, 2015), the court found "to establish a heightened requirement of 'direct supervision' for the provision of radiation therapy services, Relators cite regulations that provide that 'Medicare Part B pays for services and supplies incident to the service of a physician (or other practitioner),' but that generally the '[s]ervices and supplies must be furnished under the direct supervision of the physician (or other practitioner).'" 42 C.F.R. § 410.26(b)(5).[11] However, as Defendants point out, 'services and supplies' in 42 C.F.R. § 410.26

[10] Relator devotes approximately the last five pages of her response arguing there is abundant evidence that Defendants acted knowingly. Defendants unequivocally deny that they acted with actual knowledge, deliberate indifference, or reckless disregard on the occasions a nonphysician practitioner directly supervised the delivery of a fraction of external beam radiation therapy. However, Defendants, like Relator, recognized that it was likely that the Court would find there are disputed issues of material fact for a jury to resolve. *See* Relator's Response, p. 40. Therefore, Defendants chose not file a motion for summary judgment asking the Court to rule as a matter of law that they did not act with actual knowledge, deliberate indifference, or reckless disregard. *See* Local Practice Standard III(E)(1).

[11] 42 C.F.R. § 410.26, "Services and supplies incident to a physician's professional services: Conditions," applies to incident to services and supplies that "must be furnished in a noninstitutional setting to noninstitutional patients." 42 C.F.R. § 410.26(b)(1). In contrast,

do not include radiation therapy because it is listed as a separate Medicare benefit. See 42 C.F.R. § 410.26(a)(7); 42 U.S.C. § 1395x(s)(4). **Thus, the direct supervision requirement in 42 C.F.R. § 410.26(b)(5) does not apply to the delivery of external beam radiation therapy**." *Id.* at *8, n. 17 (emphasis added).

Because 42 C.F.R. § 410.27 did not expressly include radiation therapy until the amendment of the rule in 2012, Banner could not have submitted legally false claims to the government when a radiation oncologist was not the direct supervisor during the delivery of external beam radiation therapy. The Defendants could not have violated the express terms of the regulation or impliedly certified compliance with the regulation until CMS amended language in the regulation. *Mikes,* 274 F.3d at 700; *Sharp,* 2009 WL at *21.

## V. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court: (1) enter judgment in favor of Banner Health and BMGC on all claims asserted by the Relator relating to "Other Billing Issues" and dismiss BMGC as a defendant from this action; and (2) find as a matter of law that Defendants could not have submitted false claims to CMS for external beam radiation therapy on the occasions when a radiation oncologist was not directly supervising the delivery of treatment from October 2010 through January 1, 2012 because, during that period of time, 42 C.F.R. § 410.27 only applied to incident to services and not radiation therapy.

Respectfully submitted this 30th day of September, 2015.

---

42 C.F.R. § 410.27, "Therapeutic outpatient hospital or CAH services and supplies incident to a physician's or nonphysician practitioner's service: Conditions," applies to outpatient hospital or CAH services. Thus 42 C.F.R. § 410.26 mirrors 42 C.F.R. § 410.27 but applies to stand alone facilities rather than outpatient hospital facilities.

CAPLAN AND EARNEST LLC

*s/ Meghan E. Pound*
Linda L. Siderius, #12931
Meghan E. Pound, #33915
Gregory S. Lindquist, #42780
1800 Broadway, Suite 200
Boulder, CO 80302
Phone: 303-443-8010
Facsimile: 303-440-3967
Email: lsiderius@celaw.com
mpound@celaw.com
glindquist@celaw.com
Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202

G. Mark Simpson, Esq.
Simpson Law Firm, LLC
110 Habersham Drive, suite 108
Fayetteville, GA 30214

Jamie M. Bennett, Esq.
The J Bennett Law Firm
8 Creek Side Court
Middle River, Md. 21220

Andrew M. Stone, Esq.
Stone Law Firm, LLC
437 Grant Street
Suite 1806
Pittsburgh, PA 15219

*s/ Rhonda L. Bender*
Rhonda L. Bender, Paralegal