68502 **Federal Register** / Vol. 73, No. 223 / Tuesday, November 18, 2008 / Rules and Regulations

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Centers for Medicare & Medicaid Services**

**42 CFR Parts 410, 416, and 419**

**[CMS–1404–FC; CMS–3887–F; CMS–3835–F–1]**

**RIN 0938–AP17; RIN 0938–AL80; RIN 0938–AH17**

# Medicare Program: Changes to the Hospital Outpatient Prospective Payment System and CY 2009 Payment Rates; Changes to the Ambulatory Surgical Center Payment System and CY 2009 Payment Rates; Hospital Conditions of Participation: Requirements for Approval and Re-Approval of Transplant Centers To Perform Organ Transplants—Clarification of Provider and Supplier Termination Policy Medicare and Medicaid Programs: Changes to the Ambulatory Surgical Center Conditions for Coverage

**AGENCY:** Centers for Medicare & Medicaid Services (CMS), HHS.

**ACTION:** Final rule with comment period; final rules.

**SUMMARY:** This final rule with comment period revises the Medicare hospital outpatient prospective payment system to implement applicable statutory requirements and changes arising from our continuing experience with this system, and to implement a number of changes made by the Medicare Improvement for Patients and Providers Act of 2008. In this final rule with comment period, we describe the changes to the amounts and factors used to determine the payment rates for Medicare hospital outpatient services paid under the prospective payment system. These changes are applicable to services furnished on or after January 1, 2009.

In addition, this final rule with comment period updates the revised Medicare ambulatory surgical center (ASC) payment system to implement applicable statutory requirements and changes arising from our continuing experience with this system. In this final rule with comment period, we set forth the applicable relative payment weights and amounts for services furnished in ASCs, specific HCPCS codes to which these changes apply, and other pertinent ratesetting information for the CY 2009 ASC payment system. These changes are applicable to services furnished on or after January 1, 2009.

In this document, we are responding to public comments on a proposed rule and finalizing updates to the ASC Conditions for Coverage to reflect current ASC practices and new requirements in the conditions to promote and protect patient health and safety.

Further, this final rule also clarifies policy statements included in responses to public comments set forth in the preamble of the March 30, 2007 final rule regarding the Secretary's ability to terminate Medicare providers and suppliers (that is, transplant centers) during an appeal of a determination that affects participation in the Medicare program.

**DATES:** *Effective Dates:* The provisions of this rule are effective January 1, 2009, except for amendments to 42 CFR 416.2, 416.41 through 416.43, and 416.49 through 416.52 are effective on May 18, 2009. The policy clarification set forth in section XVIII of the preamble of this rule is effective December 18, 2008.

*Comment Period:* We will consider comments on the payment classifications assigned to HCPCS codes identified in Addenda B, AA, and BB to this final rule with comment period with the ''NI'' comment indicator, and on other areas specified throughout this rule, received at one of the addresses provided in the **ADDRESSES** section, no later than 5 p.m. EST on December 29, 2008.

*Application Deadline*—New Class of New Technology Intraocular Lenses: Request for review of applications for a new class of new technology intraocular lenses must be received by 5 p.m. EST on March 2, 2009.

**ADDRESSES:** In commenting, please refer to file code CMS–1404–FC. Because of staff and resource limitations, we cannot accept comments by facsimile (FAX) transmission.

You may submit comments in one of four ways (no duplicates, please):

1. *Electronically.* You may submit electronic comments on this regulation to *http://www.regulations.gov.* Follow the instructions for ''Comment or Submission'' and enter the file code to find the document accepting comments.

2. *By regular mail.* You may mail written comments (one original and two copies) to the following address ONLY: Centers for Medicare & Medicaid Services, Department of Health and Human Services, *Attention:* CMS–1404–FC, P.O. Box 8013, Baltimore, MD 21244–1850.

Please allow sufficient time for mailed comments to be received before the close of the comment period.

3. *By express or overnight mail.* You may send written comments (one original and two copies) to the following address ONLY: Centers for Medicare & Medicaid Services, Department of Health and Human Services, *Attention:* CMS–1404–FC, Mail Stop C4–26–05, 7500 Security Boulevard, Baltimore, MD 21244–1850.

4. *By hand or courier.* If you prefer, you may deliver (by hand or courier) your written comments (one original and two copies) before the close of the comment period to one of the following addresses:

a. Room 445–G, Hubert H. Humphrey Building, 200 Independence Avenue, SW., Washington, DC 20201.

(Because access to the interior of the HHH Building is not readily available to persons without Federal Government identification, commenters are encouraged to leave their comments in the CMS drop slots located in the main lobby of the building. A stamp-in clock is available for persons wishing to retain a proof of filing by stamping in and retaining an extra copy of the comments being filed.)

b. 7500 Security Boulevard, Baltimore, MD 21244–1850.

If you intend to deliver your comments to the Baltimore address, please call the telephone number (410) 786–9994 in advance to schedule your arrival with one of our staff members.

Comments mailed to the addresses indicated as appropriate for hand or courier delivery may be delayed and received after the comment period.

For information on viewing public comments, see the beginning of the **SUPPLEMENTARY INFORMATION** section.

Applications for a new class of new technology intraocular lenses: Requests for review of applications for a new class of new technology intraocular lenses must be sent by regular mail to: ASC/NTIOL, Division of Outpatient Care, Mailstop C4–05–17, Centers for Medicare & Medicaid Services, 7500 Security Boulevard, Baltimore, MD 21244–1850.

**FOR FURTHER INFORMATION CONTACT:**
Alberta Dwivedi, (410) 786–0378, Hospital outpatient prospective payment issues.

Dana Burley, (410) 786–0378, Ambulatory surgical center issues.

Suzanne Asplen, (410) 786–4558, Partial hospitalization and community mental health center issues.

Sheila Blackstock, (410) 786–3502, Reporting of quality data issues.

Jacqueline Morgan, (410) 786–4282, Joan A. Moliki, (410) 786–5526, Steve Miller, (410) 786–6656, and Jeannie Miller, (410) 786–3164, Ambulatory

EXHIBIT H

TABLE 39—HCPCS CODES REMOVED FROM THE INPATIENT LIST AND THEIR APC ASSIGNMENTS FOR CY 2009—Continued

| CY 2009 HCPCS Code | CY 2009 Long descriptor | Final CY 2009 APC | Final CY 2009 SI |
|---|---|---|---|
| 21386 | Open treatment of orbital floor blowout fracture; periorbital approach. | 0256 | T |
| 21387 | Open treatment of orbital floor blowout fracture; combined approach. | 0256 | T |
| 27479 | Arrest, epiphyseal, any method (eg, epiphysiodesis); combined distal femur proximal tibia and fibula. | 0050 | T |
| 43420 | Closure of esophagostomy or fistula; cervical approach | 0254 | T |
| 50727 | Revision of urinary-cutaneous anastomosis (any type urostomy) | 0165 | T |
| 51845 | Abdomino-vaginal vesical neck suspension, with or without endoscopic control (eg, Stamey, Raz, modified Pereyra). | 0202 | T |
| 51860 | Cystorrhaphy, suture of bladder wound, injury or rupture; simple | 0162 | T |
| 54332 | One stage proximal penile or penoscrotal hypospadias repair requiring extensive dissection to correct chordee and urethroplasty by use of skin graft tube and/or island flap. | 0181 | T |
| 54336 | One stage perineal hypospadias repair requiring extensive dissection to correct chordee and urethroplasty by use of skin graft tube and/or island flap. | 0181 | T |
| 54535 | Orchiectomy, radical, for tumor; with abdominal exploration | 0181 | T |

## XII. OPPS Nonrecurring Technical and Policy Changes and Clarifications

### *A. Physician Supervision of HOPD Services*

In the CY 2009 OPPS/ASC proposed rule (73 FR 41518), we provided a restatement and clarification of the requirements for physician supervision of diagnostic and therapeutic hospital outpatient services that were set forth in the April 7, 2000 OPPS final rule with comment period (65 FR 18524 through 18526).

As we stated before, section 1861(s)(2)(C) of the Act authorizes payment for diagnostic services that are furnished to a hospital outpatient for the purpose of diagnostic study. We have further defined the requirements for diagnostic services furnished to hospital outpatients, including requirements for physician supervision of diagnostic services, in §§ 410.28 and 410.32 of our regulations. Section 410.28(e) states that Medicare Part B will make payment for diagnostic services furnished at provider-based departments of hospitals ''only when the diagnostic services are furnished under the appropriate level of physician supervision specified by CMS in accordance with the definitions in §§ 410.32(b)(3)(i), (b)(3)(ii), and (b)(3)(iii).'' In addition, in the April 7, 2000 OPPS final rule with comment period (65 FR 18526), we stated that our model for the requirement was the requirement for physician supervision of diagnostic tests payable under the MPFS that was set forth in the CY 1998 MPFS final rule (62 FR 59048) that was published in the **Federal Register** on October 31, 1998. We also explained with respect to the supervision requirements for individual diagnostic tests that we intended to instruct hospitals and fiscal intermediaries to use the MPFS as a guide pending issuance of updated requirements. For diagnostic services not listed in the MPFS, we stated that fiscal intermediaries, in consultation with their medical directors, would define appropriate supervision levels in order to determine whether claims for these services are reasonable and necessary. We have not subsequently issued new requirements for the physician supervision of diagnostic tests in provider-based departments of hospitals. Instead, we have continued to follow the supervision requirements for individual diagnostic tests as listed in the Physician Fee Schedule Relative Value File. The file is updated quarterly and is available on the CMS Web site at *http://www.cms.hhs.gov/PhysicianFeeSched/.*

Section 1861(s)(2)(B) of the Act authorizes payment for hospital services ''incident to physicians'' services rendered to outpatients.'' We have further defined the requirements for outpatient hospital therapeutic services and supplies ''incident to'' a physician's service in § 410.27 of our regulations. More specifically, § 410.27(f) states, ''Services furnished at a department of a provider, as defined in § 413.65(a)(2) of this subchapter, that has provider-based status in relation to a hospital under § 413.65 of this subchapter, must be under the direct supervision of a physician. 'Direct supervision' means the physician must be present and on the premises of the location and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed.'' This language makes no distinction between on-campus and off-campus provider-based departments.

However, in the preamble of the April 7, 2000 OPPS final rule with comment period (68 FR 18525), we further discussed the requirement for physician supervision and the finalization of the proposed regulation text. In that discussion, we stated that the language of § 410.27(f) ''applies to services furnished at an entity that is located off the campus of a hospital that we designate as having provider-based status as a department of a hospital in accordance with § 413.65.'' We also stated that, for services furnished in a department of a hospital that is located on the campus of a hospital, ''we assume the direct supervision requirement to be met as we explain in section 3112.4(a) of the Intermediary Manual.'' We further stated that ''we assume the physician supervision requirement is met on hospital premises because staff physicians would always be nearby within the hospital.''

As we explained in the CY 2009 OPPS/ASC proposed rule (73 FR 41519), we restated the existing policy because we were concerned that some stakeholders may have misunderstood our use of the term ''assume'' in the April 7, 2000 OPPS final rule with comment period, believing that our statement meant that we do not require any supervision in the hospital or in an on-campus provider-based department for therapeutic OPPS services, or that we only require general supervision for those services. This is not the case. It

has been our expectation that hospital outpatient therapeutic services are provided under the direct supervision of physicians in the hospital and in all provider-based departments of the hospital, specifically both on-campus and off-campus departments of the hospital. The expectation that a physician would always be nearby predates the OPPS and is related to the statutory authority for payment of hospital outpatient services—that Medicare makes payment for hospital outpatient services ''incident to'' the services of physicians in the treatment of patients as described in section 1861(s)(2)(B) of the Act. Longstanding hospital outpatient policy language states that ''the services and supplies must be furnished as an integral though incidental part of the physicians' professional services in the course of treatment of an illness or injury.'' We refer readers to § 410.27(a) of our regulations and to the Medicare Benefit Policy Manual, Pub. 100–2, Chapter 6, Section 20.5.1, for further description of hospital outpatient services incident to a physician's service. The Medicare Benefit Policy Manual also states in Chapter 6, Section 20.5.1, that services and supplies must be furnished on a physician's order and delivered under physician supervision. However, the manual indicates further that each occasion of a service by a nonphysician does not need to also be the occasion of the actual rendition of a personal professional service by the physician responsible for the care of the patient. Nevertheless, as stipulated in that same section of the manual ''during any course of treatment rendered by auxiliary personnel, the physician must personally see the patient periodically and sufficiently often enough to assess the course of treatment and the patient's progress and, where necessary, to change the treatment regimen.''

The expectation that a physician would always be nearby also dates back to a time when inpatient hospital services provided in a single hospital building represented the majority of hospital payments by Medicare. Since that time, advances in medical technology, changes in the patterns of health care delivery, and changes in the organizational structure of hospitals have led to the development of extensive hospital campuses, sometimes spanning several city blocks, as well as off-campus and satellite provider-based campuses at different locations. In the April 7, 2000 OPPS final rule with comment period (65 FR 18525), we described the focus of the direct physician supervision requirement on off-campus provider-based departments. We will continue to emphasize the physician supervision requirement for off-campus provider-based departments. However, we note that if there were problems with outpatient care in a hospital or in an on-campus provider-based department where direct supervision was not in place (that is, the expectation of direct physician supervision was not met), we would consider that to be a quality concern. We want to ensure that OPPS payment is made for high quality hospital outpatient services provided to beneficiaries in a safe and effective manner and consistent with Medicare requirements.

The definition of direct supervision in § 410.27(f) requires that the physician must be present and on the premises of the location and immediately available to furnish assistance and direction throughout the performance of the procedure. In the April 7, 2000 OPPS final rule with comment period (65 FR 18525), we define ''on the premises of the location'' by stating ''* * * a physician must be present on the premises of the entity accorded status as a department of the hospital and therefore, immediately available to furnish assistance and direction for as long as patients are being treated at the site.'' We also stated that this does not mean that the physician must be physically in the room where a procedure or service is furnished. Although we have not further defined the term ''immediately available'' for this specific context, the lack of timely physician response to a problem in the HOPD would represent a quality concern from our perspective that hospitals should consider in structuring their provision of services in ways that meet the direct physician supervision requirement for HOPD services.

*Comment:* Several commenters supported the clarification that was provided as a clear and warranted safeguard to individuals being served in on-campus and off-campus departments of hospitals. One commenter was concerned that the restatement and clarification of policy included in the proposed rule would interfere with its ability to provide services in PHP programs and rural CMHCs and stated that ''the current policy is appropriate.'' Another commenter stated that the clarification of policy would cause hospitals to incur significant costs and would result in physician contractual problems and suggested that CMS conduct a study to better understand outpatient settings and the physician supervision currently available to them.

*Response:* We agree with many of the commenters that appropriate supervision is a key aspect of the delivery of safe and high quality hospital outpatient services to Medicare beneficiaries. As for the concerns of commenters related to hospital staffing and costs, we note that the discussion in the CY 2009 OPPS proposed rule was not a proposed change in policy but was an intended clarification to assist providers who may have misunderstood the policy in the past.

*Comment:* One commenter requested clarification about whether a nonphysician practitioner can provide supervision of ''incident to'' services in the hospital outpatient setting when the ''incident to service'' is within the practitioner's scope of practice.

*Response:* According to section 1861(r) of the Act, ''[t]he term 'physician' '', when used in connection with the performance of any function or action, means (1) a doctor of medicine or osteopathy legally authorized to practice medicine and surgery by the State in which he performs such function or action * * *; (2) a doctor of dental surgery or of dental medicine * * *; (3) a doctor of podiatric medicine * * *; (4) a doctor of optometry * * *; or (5) a chiropractor. In addition, the conditions of participation for hospitals under § 482.12(c)(1)(i) through (c)(1)(vi) of our regulations require that every Medicare patient is under the care of a doctor of medicine or osteopathy, a doctor of dental surgery or dental medicine, a doctor of podiatric medicine, a doctor of optometry, a chiropractor, or a clinical psychologist; each practicing within the extent of the Act, the Code of Federal Regulations, and State law. Further, § 482.12(c)(4) of our regulations requires that a doctor of medicine or osteopathy must be responsible for the care of each Medicare patient with respect to any medical or psychiatric condition that is present on admission or develops during hospitalization and is not specifically within the scope of practice of one of the other practitioners listed in § 482.12(c)(1)(ii) through (c)(1)(vi). Also, section 1861(s)(2)(B) of the Act authorizes payment for hospital services ''incident to physicians' '' services rendered to outpatients.'' We have further defined the requirements for outpatient hospital therapeutic services and supplies ''incident to'' a physician's service in § 410.27 of our regulations. Section 410.27(a)(1)(ii) describes payment for hospital outpatient services when they are ''an integral though incidental part of a physician's services.'' Also, § 410.27(f) requires that hospital outpatient services provided in